1  Leslie A. Cohen, Esq. (SBN 93698)
   leslie@lesliecohenlaw.com
2  J'aime K Williams Esq.(SBN 261148)
   jaime@lesliecohenlaw.com
3  Leslie Cohen Law, P.C.
   506 Santa Monica Blvd. Ste 200
4  Santa Monica, CA 90401
   Telephone: 310.394-5900
5  Facsimile: 310.394-9280

6  Successor Attorneys
   for Debtor in Possession
7

8                  UNITED STATES BANKRUPTCY COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                      LOS ANGELES DIVISION

11                                    )
   In re                             )   Case No. 2:10-BK-30727-VZ
12                                    )
   FRANKLIN PACIFIC FINANCE, LLLP,    )   Chapter 11
13                                    )
            Debtor and                )
14          Debtor in Possession      )   DEBTORS DISCLOSURE STATEMENT AND
                                      )   PLAN  REORGANIZATION, AS AMENDED
15                                    )   JANUARY 28, 2011
                                      )
16                                    )
                                      )   Disclosure Hearing
17                                    )   Date: January 20, 2011
                                      )   Time: 1:30 p.m.
18                                    )   Courtroom: 1368
                                      )
19                                    )   Confirmation Hearing
                                      )   Date: April 7, 2011
20                                    )   Time: 1:30 p.m.
                                      )   Courtroom 1368
21  _____  )

22

23

24

25

26

27

28

                               1

DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION FOR
FRANKLIN PACIFIC FINANCE, LLLP, AS AMENDED

TABLE OF CONTENTS

TABLE OF CONTENTS............................................... 2

I.    INTRODUCTION.............................................. 3

II.   GENERAL DISCLAIMER AND VOTING PROCEDURE.................. 4

III.  WHO MAY OBJECT TO CONFIRMATION OF THE PLAN............... 6

IV.   WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN............... 6

V.    VOTES NECESSARY TO CONFIRM THE PLAN...................... 9

VI.   INFORMATION REGARDING VOTING IN THIS CASE............... 10

VII.  DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS
PRECIPITATING BANKRUPTCY FILING............................... 11

VIII. CRITICAL PLAN PROVISIONS ............................... 20

IX.   DESCRIPTION AND TREATMENT OF CLAIMS..................... 21

X.    SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS....... 48

XI.   FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED
PAYMENT IS FEASIBLE........................................... 54

XII.  ASSETS AND LIABILITIES OF THE ESTATE.................... 55

XIII. TREATMENT OF NONCONSENTING CLASSES..................... 56

XIV.  TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING
CLASS (CHAPTER 7 LIQUIDATION ANALYSIS)........................ 58

XV.   FUTURE DEBTOR........................................... 74

XVI.  SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND
LEASES; OTHER PROVISIONS...................................... 77

XVII. BANKRUPTCY PROCEEDINGS ................................. 79

XVIII. TAX CONSEQUENCES OF PLAN ............................. 81

XIX.  EFFECT OF CONFIRMATION OF PLAN......................... 81

XX.   DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN.. 84

2

## I.    INTRODUCTION

On May 24, 2010, Franklin Pacific Finance LLLP, ("Debtor") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code ("Code").  The document you are reading is <u>both</u> the Plan of Reorganization ("Plan") and the Disclosure Statement. Debtor ("Proponent") has proposed the Plan to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners and to reorganize the Debtor's business affairs.  A disclosure statement describes the assumptions that underlie the Plan and how the Plan will be executed.  The Bankruptcy Court ("Court") has approved the form of this document as an adequate disclosure statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone.

The Proponent has reserved April 7, 2011 at 1:30 p.m. in Courtroom 1368 for a hearing to determine whether the Court will confirm the Plan.

3

Any interested party desiring further information should contact Debtor's Counsel:

     Leslie Cohen Law, PC

     Attn: Jaime Williams

     506 Santa Monica Blvd., Suite 200

     Santa Monica, CA 90401

     Telephone: 310.394.5900

     leslie@lesliecohenlaw.com

     jaime@lesliecohenlaw.com

**II.  GENERAL DISCLAIMER AND VOTING PROCEDURE**

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN.  IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.  IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN BE CONFIRMED BY THE COURT.

THE SOURCES OF FINANCIAL DATA RELIED UPON IN FORMULATING THIS DOCUMENT ARE SET FORTH IN THE DECLARATION IN SECTION XX BELOW. ALL REPRESENTATIONS ARE TRUE TO THE PROPONENT'S BEST KNOWLEDGE.

NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT
WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE
EXTENT, IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

After carefully reviewing this document and the attached
exhibits, please vote on the enclosed ballot and return it in
the enclosed envelope.

The Proponent has reserved a hearing date for a hearing to
determine whether the Court will confirm the Plan.  Please refer
to Section I above for the specific hearing date.  If, after
receiving the ballots, it appears that the Proponent has the
requisite number of votes required by the Code, the Proponent
will file a motion for an order confirming the Plan.
The Motion shall at least be served on all impaired creditors
and partners or shareholders who reject the Plan and on the
Office of the United States Trustee.  Any opposition to the
Motion shall be filed and served on the Proponent no later than
fourteen days prior to the hearing date.  Failure to oppose the
confirmation of the Plan may be deemed consent to the Plan's
confirmation.

5

## III. WHO MAY OBJECT TO CONFIRMATION OF THE PLAN

Any party in interest may object to confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

## IV.  WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

It requires both an allowed and impaired claim or interest in order to vote either to accept or reject the Plan.  A claim is defined by the Code to include a right to payment from the Debtor.  An interest represents an ownership stake in the Debtor.

In order to vote a creditor or interest-holder must first have an allowed claim or interest. With the exceptions explained below, a claim is allowed if proof of the claim or interest is properly filed before any bar date and no party in interest has objected, or if the court has entered an order allowing the claim or interest.  Please refer to Section VI below for specific information regarding bar dates in this case.

Under certain circumstances a creditor may have an allowed claim even if a proof of claim was not filed and the bar date for filing a proof of claim has passed.  A claim is deemed allowed if the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated.  <u>Exhibit "A"</u> contains a list of claims that are not scheduled as disputed, contingent, or unliquidated.

Similarly, an interest is deemed allowed if it is shown on the list of equity security holders filed by the Debtor with the court and is not scheduled as disputed.

In order to vote, an allowed claim or interest must also be impaired by the Plan.

<u>Impaired creditors</u> include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the creditor.  A contract provision that entitles a creditor to accelerated payment upon default does not, however, necessarily render the claimant impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated payment.  The creditor is deemed

7

unimpaired so long as the Plan cures the default, reinstates the
maturity of such claim as it existed before default, compensates
for any damages incurred as a result of reasonable reliance upon
the acceleration clause, and (except for a default arising from
failure to operate a nonresidential lease subject to 11 U.S.C.A.
§ 365 (b)(1)(A) (West Supp. 2006)) compensates for any actual
pecuniary loss incurred as a result of any failure to perform a
non-monetary obligation.

Impaired interest-holders include those whose legal, equitable,
and contractual rights are altered by the Plan, even if the
alteration is beneficial to the interest holder.

There are also some types of claims that the Code requires be
treated a certain way.  For that reason they are considered
unimpaired and therefore holders of these claims cannot vote.

To summarize, there are two prerequisites to voting: a claim or
interest must be both allowed and impaired under the Plan.

If a creditor or interest-holder has an allowed and impaired
claim or interest, then he or she may vote either to accept or

8

reject the Plan (unimpaired claimants or interest-holders are deemed to have accepted the Plan).  Impaired claims or interests are placed in classes and it is the class that must accept the Plan.  Members of unimpaired classes do not vote, although as stated above, they may object to confirmation of the Plan.  Even if all classes do not vote in favor of the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code.  Please refer to Section VI below for information regarding impaired and unimpaired classes in this case.

Section IX sets forth which claims are in which class.  Secured claims are placed in separate classes from unsecured claims. Fed. R. Bankr. P. 3018(d) provides: "A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim shall be entitled to accept or reject a plan in both capacities."

## V.    VOTES NECESSARY TO CONFIRM THE PLAN

The Court may confirm the Plan if at least one noninsider impaired class of claims has accepted and certain statutory

requirements are met as to both nonconsenting members within a consenting class and as to dissenting classes.  A class of claims has accepted the Plan when more than one-half in number and at least two-thirds in amount of the allowed claims actually voting, vote in favor of the Plan.  A class of interests has accepted the Plan when at least two-thirds in amount of the allowed interests of such class actually voting have accepted it.  It is important to remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will not bind the parties unless and until the Court makes an independent determination that confirmation is appropriate. That is the subject of any upcoming confirmation hearing.

**VI.   INFORMATION REGARDING VOTING IN THIS CASE**

The bar date for filing a proof of claim in this case was October 29, 2010.

The bar date for objecting to claims was January 4, 2011. The last day for hearing on objections to claims was January 28, 2011.  The Debtor intends to file a motion to extend this deadline to 180 days after the Effective Date of this Plan.

10

In this case the Proponent believes that classes 1, 2, 3 and 4
are impaired and therefore entitled to vote.  There are no
unimpaired classes.  A party that disputes the Proponent's
characterization of its claim or interest as unimpaired may
request a finding of impairment from the Court in order to
obtain the right to vote.

Ballots must be received by the Proponent, addressed to Leslie
Cohen Law PC, Attn: Jaime Williams, 506 Santa Monica Blvd.,
Suite 200, Santa Monica, CA 90401 by March 7, 2011.

**VII. DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS
PRECIPITATING BANKRUPTCY FILING**

The Debtor is a Limited Liability Limited Partnership.

Debtor has conducted its business activity since 2005.
The Debtor is headquartered in Santa Monica, California. The
Debtor engages in the business of acquiring and operating real
estate assets and loans secured by real estate assets,
equipment, vehicles and business assets, and unsecured loans.
The Debtor acquires such assets and loans as portfolios or in

11

stand-alone transactions. As such, the Debtor maintains its

operations through the collection of principal and interest

payments from its notes receivables and receipt of lease

payments and sales proceeds from its real estate portfolio.


What follows is a brief summary of the dates and circumstances

that led Debtor to file bankruptcy.

The Debtor's financial issues leading to this chapter 11 case

were a result of the failed attempts to successfully modify and

extend loan terms with its principal secured creditor, Bank

Midwest.  The majority of the Debtor's loans with the secured

creditor matured in January 2010. The Debtor was expecting a

24-month extension at its current contract rate with the

additional provision to cross collateralize and cross default

its entire portfolio providing the creditor with additional

security. The Debtor would continue to make timely debt service

payments and payoff the entire principal balance of each loan

as each asset was resolved.


The Debtor and Creditor failed to agree to mutually acceptable

terms resulting in the Creditor defaulting the Debtor.  The

Creditor then commenced collection efforts which necessitated

12

the Debtor filing for chapter 11 bankruptcy protection.

What follows is a <u>brief</u> description of the Debtor's business
and future business plans.  Further details relating to the
Debtor's financial condition and post-confirmation operation of
the Debtor are found in sections X, XI, XII, XVI, and XV.
The Debtor is in the business of acquisition and management of
debt instruments purchased from the FDIC and other financial
institutions.  The Debtor restructures and remediates loans and
foreclosed assets into a diversified portfolio of loans and
income producing real estate for future dispositions.

The Debtor has ownership interests in the following real
property, which either currently generate income in the form of
rents or may generate such rents in the future:

     a.   <u>Shalamar Apartments</u>.  Shalamar Apartments is a 162
unit apartment complex located in San Marcos, TX (40
minutes south of Austin) that Debtor holds fee title
to.  Debtor has a loan with the Bank with an
outstanding principal balance of $3,525,000 as of May
20, 2010.  Debtor acquired the property on December
19, 2007 with a purchase price of $4,249,851.  The

13

value of the property is $6,300,000.  Therefore, an
equity cushion of $2,775,000 exists on the property.

Valuation:  While no current appraisal for the
property exists, there is ample information available
to support the Debtor's Chapter 11 value estimate of
$6,300,000. The property has exceeded its stabilized
occupancy projection of 95% and currently is 98%
occupied. October 2010's net operating income was
$60,000 – its highest level since acquired by the
Debtor.  CBRE, the court approved broker for the
property, is marketing the property for sale and has
sourced two letters of intent for $5,900,000 and
$5,750,000, respectively.

b.    The National.  The National is a single family home
owned by the Debtor that is located at 6789 National
Drive in Parkville, MO (Kansas City submarket).  The
Debtor has a loan with the Bank with an outstanding
principal balance of $660,000 which is secured by a
first priority lien in favor of the Bank.  Debtor

**14**

acquired the property on March 20, 2007 with a purchase price of $930,000.  The estimated fair market value of the property is $950,000.  Therefore, an equity cushion of $290,000 exists on the property. The National is currently occupied and is paying rents of $3,500 per month.

Valuation and Methodology:  Bank Midwest engaged IRR Residential Metro Real Estate Services (IRR) to appraise the property. On February 10, 2009. IRR reported a Value of the $880,000.

c.    The Villages.  The Villages at Pinnacle Peak is 4,224 sf single tenant retail building that the Debtor owns located in North Scottsdale, AZ.  The Debtor has a loan with the Bank with an outstanding principal balance of $800,000 which is secured by a first priority lien in favor of the Bank.  The Debtor acquired the property on May 12, 2005 with a purchase price of $1,200,000. The value of the property is currently $1,200,000.  The Villages is currently vacant.  The Debtor is in negotiation with

15

prospective tenants.

Valuation and Methodology - Bank Midwest engaged
Grumley Valuation and Consulting to appraise the
property in late 2009 which resulted in an "As Is
Value" of $600,000 in October of 2009.

In addition, the Debtor owns certain personal property, which
generates or which may generate income in the form of payments
and/or rents as follows:

a.   Metro Cinema.  The Debtor owns certain theater
     equipment which is leased to Metro Cinema located in
     a Cineplex in Colleyville, TX (Dallas submarket).
     The Debtor has a loan with the Bank with an
     outstanding principal balance of $167,089 which is
     secured by such theater equipment.  The Debtor
     acquired the property on September 28, 2007 with a
     purchase price of $207,829.  The estimated fair
     market value of the property is $500,000.  An equity
     cushion of $332,911 exists on the property.  The
     Debtor receives a payment of $7,000 per month from
     Metro Cineplex.

16

Valuation and Methodology:  Bank Midwest ordered an updated appraisal in October of 2009 which reported a revised as-is value of approximately $640,000.

b.  Sunset Crossing Note.  The Debtor held a promissory note in the original principal sum of $6,600,000 and with an outstanding balance thereon as of the Petition Date in the sum of $5,842,340. The obligor under the Sunset Crossing Note is Sunset Crossing L.P. and it is a performing loan secured by a first priority deed of trust on a 217,000 s.f. retail center located in San Angelo, TX.  The Bank has a security interest in the Sunset Crossing Note securing an obligation of the Debtor to the Bank with an outstanding principal balance of $3,807,368 as of the Petition Date.  Per the November 15, 2010 Order Granting Motion to Approve Compromise Re Sunset Crossing Note, the loan has been compromised and is scheduled to payoff in the amount of $5,500,000. Therefore, an equity cushion of $1,692,632 exists on this property.  The Debtor is currently receiving payments of $43,000 per month on the Sunset Crossing

17

Note. UPDATE:  This loan was paid off on December 23, 2010.  The proceeds of the note were used to pay off Bank Midwest approximately $4.0 million and the balance of $1.1 million was deposited into a segregated debtor-in-possession account.

c.    Drawbridge Note.  The Debtor holds a promissory note in the original principal sum of $9,363,434 and with an outstanding balance thereon as of the date of filing in the sum of $8,855,519.00.  The obligor under the Drawbridge Note is Drawbridge Inn, LLC, and it is a non-performing loan secured by a first priority deed of trust on a 382 room hotel located in Fort Mitchell, Kentucky.  The Bank has a security interest in the Promissory Note and Deed of Trust securing an obligation of the Debtor to the Bank with an outstanding principal balance of $5,226,090 as of the Petition Date.

18

As a result of the default by the obligor under the
Drawbridge Note, a foreclosure proceeding was
commenced by the Debtor, and ancillary thereto, the
Debtor obtained the appointment of a receiver over
the hotel on December 2, 2009.  The receiver is in
possession of, and operating the hotel pursuant to
that receivership.  The receiver is accepting all
receipts, paying all expenses of the operation
pending a resolution of the foreclosure currently
pending.  The Debtor is not receiving any funds from
the receiver, and has loaned the receiver, pre-
petition, the sum of $40,000.

Valuation and  Methodology:  In late 2009, Bank
Midwest engaged Hotel Leisure Advisors (HLA) to
appraise the Hotel. On October 9, 2009, HLA reported
an "As Is" Value of the property of $6,700,000. On
January 27, 2009, HLA reported as "As Is" value for
the Hotel of $8,300,000 and an "As Stabilized" Value
of $11,300,000.

19

VIII.    CRITICAL PLAN PROVISIONS

Listed below are the sources of money earmarked to pay
creditors and interest-holders.

a.    Future earnings from continued operations of the
      Debtor, including rental income, interest income,
      sales and/or refinances of properties, and note
      payments due to the Debtor. Cash flow generated from
      operations (net of operating expenses, property tax
      payments, capital expenditures, interest and
      principal payments to secured creditors) between
      November 1 and the proposed Effective Date of
      February 15, 2011 totals $1,358,684 (See Exhibit
      "C").

b.    Cash held in Debtor-in-Possession Accounts. As of
      October 31, 2010, such balances totaled $585,786 (See
      Exhibit "C").

Most likely, general unsecured creditors can expect payment:

a.    beginning 30 days after the Effective Date (as
defined below) of this Plan

b.    in the amount of 1/3 of each creditors' unsecured
claim plus 4% interest

c.    and continuing every month for 2 additional months.

20

IX.   DESCRIPTION AND TREATMENT OF CLAIMS

     a.   Overview of Plan Payments

Below is a summary of who gets paid what and when and from what

source.  The identity of members within a particular class is

explained beginning on the next page.  The second column lists

two amounts.  First, the amount of each payment, or if only one

is to be made, then that amount; second, the total amount that

will be paid.  The Proponent is usually not required by law to

pay an unsecured creditor or interest holder everything it would

otherwise be entitled to, had a bankruptcy case not commenced.

The "Payment Due Date" column states the frequency with which

payments will be made and the starting and ending dates.  Look

at the starting date to figure out who will be paid before and

after you and in what amount.  The "Source of Payment" column

describes the expected source of payment.  Further details

regarding the source of payment are found in sections X and XI.


The timing of payments to many creditors is determined by the

"Effective Date," which will be 14 days after entry of an order

confirming the plan.  Administrative claims, unless otherwise

stated, must be paid by the Effective Date.    In this case, the

projected Effective Date is May 1, 2011.

21

| Payment Recipient | Amount of each Payment (Total amount to be paid) | Payment Due Date | Source of Payment |
|---|---|---|---|
| Clerk's Office Fees | $0 (estimated) $0 (estimated) | Effective Date | |
| Office of the U.S. Trustee | $0 (estimated) $0 (estimated) | Effective Date | |
| Leslie Cohen Law PC | $0 - $65,000 above retainer $0 - $65,000 | Later of (i) Effective Date or (ii) entry of final order approving LCL's fees and expenses | Estate Funds |
| Michael Widener Bonnet, Fairbourn, Friedman & Balint | $10,000 (estimated) $10,000 (estimated) | Effective Date Pursuant to Fee Application | Estate Funds |
| Dennis Williams Adams, Stepner, Woltermann & Dusing PLLC | $10,000 (estimated) $10,000 (estimated) | Effective Date Pursuant to Fee Application | Estate Funds |
| Capstone Real Estate Services, Inc. | $0 (estimated) $0 (estimated) | Effective Date Paid current in accordance with management agreement dated July 28, 2008 | |
| Robert Wyndelts and Wyndelts & Gagnon PLC | $25,000 (estimated) $25,000 (estimated) | Effective Date pursuant to Fee Application | Estate Funds |
| Justin Enbody and Enbody, Inc. | $25,600 (estimated) $25,600 (estimated) | Effective Date pursuant to Fee Application | Estate Funds |
| Hagan & Associates | $35,297 (estimated) $35,297 (estimated) | Effective Date pursuant to Fee Application | Estate Funds |
| CB Richard Ellis | $0 $0 | Fees to be paid as commission directly from escrow upon sale of property and following Court order approving sale of property | Sale of Property |
| Century 21 All Pro | $0 $0 | Fees to be paid as commission directly from escrow upon sale of property and following Court | Sale of Property |

|  |  | order approving sale of property |  |
|---|---|---|---|
| CLASS 1A<br>Richardson ISD Tax Office and<br>Dallas County Tax Office | $127,546 | Paid in full upon sale of each unit at Oak Trail Villas Properly<br>Any unpaid taxes all due by 5/24/15[1] | Sale of Property |
| CLASS 1B<br>Kenton County and City of Fort Mitchell Kentucky<br>*Disputed* | $ 5% interest only on allowed claim<br>$147,534 or lesser allowed total claim | Monthly<br><br>All unpaid principal and interest due in full upon earlier of 12/31/12 or sale of property to third party | Post confirmation income<br><br>Post confirmation income or Sale of Property |
| CLASS 1C<br>Property Taxes<br> (Sunset Crossing, Shalamar,) | $0<br>$0 | These taxes are current. Will be paid as taxes come due; Any unpaid taxes paid in full upon sale of property | Post confirmation income or Sale of Property |
| CLASS 1D<br>Colette Franklin Tax Assessor<br>Metro Cinema | $35,653.41 | One  payment due on or before 12/31/11 – bearing interest at 4%<br>If property is sold before payment comes due, all taxes and accrued interest then due will be paid at closing. | Post confirmation income |
| CLASS 1E<br>Property Taxes on 2nd Street | $24,719.50 | One  payment due on or before 12/31/11 – bearing interest at 4%<br>If property is sold before payment comes due, all taxes and accrued interest then due will be paid at closing. | Post confirmation income |
| CLASS 1F<br>Property  Taxes on Villages | $ 11,853.02 | One payment due on or before 12/31/11, bearing interest at 4% | Post confirmation income |

1 FPF Oak Trails is a debtor in case# 2:10-34386 and the disposition of its assets and liabilities will be subject to court approval in that case.

| | | If property is sold before payment comes due, all taxes and accrued interest then due will be paid at closing. | |
|---|---|---|---|
| CLASS 1G<br>Property Taxes on National | $15,435 | One payment due on or before 12/31/11, bearing interest at 4%. If property is sold before payment comes due, all taxes and accrued interest then due will be paid at closing. | Post confirmation income |
| CLASS 1H<br>Property Taxes on Manhattan Chase (220 21st Place) | $19,041.04 | One payment due on or before 12/31/11, bearing interest at 4%. If property is sold before payment comes due, all taxes and accrued interest then due will be paid at closing. | Post confirmation income |
| CLASS 2A<br>Secured Claim of Washington Mutual Bank N.A. | $2,595.67<br><br>1st Trust Deed $1,039,416 on Manhattan Beach property, bearing interest at 4% | Monthly commencing Effective Date<br><br>Effective Date through the earlier of 4 years after Effective Date or Sale of Property | Post confirmation income<br><br>Post confirmation income or Sale of Property |
| CLASS 2B<br>Secured Claim of Washington Mutual Bank N.A. | $904.33<br><br>2nd Trust Deed $362,131 on Manhattan Beach property, bearing interest at 4%. | Monthly commencing Effective Date<br><br>Effective Date through the earlier of 4 years after Effective Date or Sale of Property | Post confirmation income<br><br>Post confirmation income or Sale of Property |
| CLASS 3<br>Secured Claim of Bank Midwest N.A. | $ Monthly Debt service varies as properties are sold and refinanced.<br><br>$20,440,560.00 + interest at | Monthly commencing 10th day of the fires month following Plan Confirmation. In addition there will be certain principal paydowns and waiver of default interest from default date | Post confirmation income from rents, refinances and/or sales of assets<br><br>Post confirmation income or |

24

—

| | 4.25% | through 3/31/10 and from 7/31/10 through confirmation, per the Stipulation and Order on file with the Court. All payments due Bank Midwest at and after confirmation are set forth on the attached cash flows.<br><br>Through earlier of Aril 1, 2012 or sale of property | proceeds from refinance and/or Sale of Property\ |
|---|---|---|---|
| CLASS 4<br>General Unsecured Claims | $26,752.96<br>$80,259.00 | Three monthly payments commencing 30 days after the Effective Date, bearing interest at 4%. | Estate Funds and post-confirmation income |
| CLASS 5<br>Insider claims | n/a | n/a | n/a |
| CLASS 6<br>Shareholder Interests | $0<br>$0 | Shareholders will retain their shares of stock in the Debtor | |

No claimant or interest holder is an affiliate of the Debtor.

On the Effective Date the Debtor, as the Disbursing Agent, will deposit into a segregated account ("Reserve Account") an amount of cash equal to 1/3 (one-third) of the aggregate amount of disputed unsecured claims. Cash together with interest accruing thereon will be held in trust for the benefit of holders of disputed claims.

When a disputed unsecured claim becomes allowed, the Disbursing

Agent will distribute to the holder thereof an amount equal to 1/3 (one-third) of its claim plus accrued interest thereon. Thereafter, payments to that creditor will continue in accordance with the terms of the Plan.  If a surplus arises from the fact that not all claims are allowed, then that money shall revert back to the Debtor.

Below is a detailed description and treatment of administrative expenses, claims and interests

     **b.**   **Administrative Expenses**

        1.   These include the "actual, necessary costs and expenses of preserving the estate" as determined by the Court after notice to creditors of a request for payment and after a hearing thereon.

        2.   The Code requires that allowed administrative expenses be paid on the Effective Date unless the party holding the administrative expense agrees otherwise.  The claimants have not agreed otherwise.

Administrative Expense #1.

Claimant:  Clerk's Office Fees

$ 0 Estimated subject to court approval.  To be paid
in full on Effective Date.


Administrative Expense # 2.

Claimant:  Office of the U.S. Trustee Fees

$  0, subject to court approval. To be paid in full on
Effective Date.


Administrative Expense # 3.

Claimant:  Leslie Cohen Law, PC

$ 0 - $65,000 (estimated net of retainer and amounts
paid upon interim fee application and such reimbursed
fees based on Principal's advance), subject to court
approval.  The balance awarded, if any, may be paid in
full upon the later of (i) the Effective Date, or (ii)
entry of a final order approving Cohen's fees and
expenses.


27

Administrative Expense # 4.

Claimant:  Michael Widener - Bonnett, Fairbourn,
Friedman & Balint, P.C.

$  10,000 (estimated), subject to court approval. To
be paid in full on the later of (1) the Effective Date
or (2) entry of final order approving his fees and
expenses pursuant to fee application.


Administrative Expense # 5.

Claimant:  Dennis Williams- Adams, Stepner, Woltermann
& Dusing PLLC

$  10,000 (estimated), subject to court approval. To
be paid in full on the later of (1) the Effective Date
or (2) entry of a final order approving his fees and
expenses pursuant to fee application.


Administrative Expense # 6.

Claimant:  Capstone Real Estate Services, Inc.

$ 0, subject to court approval. Paid current in
accordance with management agreement dated 7/28/08.

Administrative Expense # 7.

Claimant:  Robert Wyndelts and Wyndelts & Gagnon PLC

$ 25,000 (estimated), subject to court approval. To
be paid in full on or before the Effective Date
pursuant to fee application.


Administrative Expense # 8.

Claimant:  Justin Enbody and Enbody Inc.

$ 25,600 (estimated), subject to court approval. To
be paid in full on Effective Date pursuant to fee
application.


Administrative Expense # 9.

Claimant:  Hagan and Associates

$ 35,297 (estimated), subject to court approval. To
be paid in full on or before the Effective Date
pursuant to fee application.


Administrative Expense # 10.

Claimant:  CB Richard Ellis

$ 0, subject to court approval. Fees to be paid as
commission directly from escrow upon sale of property.

Administrative Expense # 11.

Claimant:  Century 21 All Pro

$ 0, subject to court approval. Fees to be paid as commission directly from escrow upon sale of property.

TOTAL $ 105,297 – 170,297 estimated

c.    **Unsecured Priority Tax Claims**

1.    These include certain types of property, sales, and income taxes.

2.    The Code requires that the holders of such claims receive regular installment payments in cash over a period ending not later than five years after the date of the order for relief, unless agreed otherwise.  The claimants have not agreed otherwise.  The total cash payments must have a present value equal to the amount of the allowed claim.  The treatment of this claim is in a manner not less favorable than the most favored nonpriority unsecured claim provided in this Plan (other than any cash payments to an administratively convenient class). The amount of

30

the allowed claim includes the amount of tax owed

plus interest of 4% or such other amount as is

ordered by the Court. The present value is

calculated as of the Effective Date.

3.    The Debtor does not have any unsecured priority

tax claims.


TOTAL UNSECURED PRIORITY TAX CLAIM(S) $ 0


d.    **CLASS ONE – SECURED PROPERTY TAX CLAIMS**

**1.**    CLASS 1(A)

Secured Claim of Richardson ISD Tax Office and Dallas

County Tax Office

Description of Collateral: Oak Trail Villas[2]


Total amount of allowed claim as of November 20, 2010:

$127,546

Total amount of payments (over time) to satisfy the

secured claim: Paid in full upon sale of each

unit at Oak Trail Villas Property, any unpaid

---

2  FPF Oak Trails is a debtor in case# 2:10-34386 and the disposition of its assets and

liabilities will be subject to court approval in that case.

31

taxes all due by 5/24/15

Interest rate (to compensate creditor because claim is

paid over time):4% or such other amount as is

ordered by the Court.

Impaired

First payment date: Sale of each unit

Amount of each installment: Payment in full on

respective unit including interest at 4%

Frequency of payments: Upon sale of each unit

Total yearly payments: Unknown

Final payment date: Not later than 5/24/15

Lien is not modified in any way by the Plan.


2.    CLASS 1(B)

Secured Claim of Kenton County and City of Fort

Mitchell Kentucky

***THIS CLAIM IS DISPUTED***

Description of Collateral: Drawbridge

Total amount of claim as of November 20, 2010:

$147,534

Total amount of payments (over time) to satisfy the

secured claim: If allowed, pay interest only

monthly;  All unpaid principal and interest due in full upon the earlier of 12/31/12 or sale of property to third party

Interest rate (to compensate creditor because claim is paid over time): Interest on allowed claim at 4%

Impaired

First payment date: 1st of month following Court's determination on allowance of claim.

Amount of each installment: Interest on allowed claim at 4%

Frequency of payments: Monthly

Total yearly payments: 12

Final payment date: All unpaid principal and interest due in full upon the earlier of 12/31/12 or sale of property to third party

Lien is not modified in any way by the Plan.

33

3.    CLASS 1(C)

Secured Property Taxes related to Sunset Crossing and

   Shalamar Properties

Description of Collateral: Sunset Crossing and

   Shalamar.

Total amount of claim as of November 20, 2010: $0

Total amount of payments (over time) to satisfy the

   secured claim: These taxes are current. Will

   be paid as taxes come due; Paid in full upon

   sale of property

Interest rate (to compensate creditor because claim is

   paid over time):

Unimpaired

First payment date: As due.

Amount of each installment: As due

Frequency of payments: As due

Total yearly payments: Unknown

Final payment date: Sale of related properties

34

4.    CLASS 1(D)

Secured Claim of Colette Franklin Tax Assessor

Description of Collateral: Metro Cinemas

Total amount of claim as of November 20, 2010:

$35,653.41

Total amount of payments (over time) to satisfy the

secured claim: $35,653.41 plus interest at 4%

Interest rate (to compensate creditor because claim is

paid over time): 4% or such other rate as

ordered by the Court.

Impaired

First payment date: 12/31/11.

Amount of each installment:

First and only payment on or before 12/31/11:

$35,653.41 plus accrued interest at 4%.


Frequency of payments: Single payment

Total payments: $35,653.41+ interest

Final payment date: On or before 12/31/11

35

5.    <u>CLASS 1(E)</u>

<u>Secured Property Taxes Related to 2nd Street Property</u>

Description of Collateral: 2nd Street

Total amount of claim as of November 20, 2010:

     $24,719.50

Total amount of payments (over time) to satisfy the

     secured claim:  $ 24,719.50 plus interest

Interest rate (to compensate creditor because claim is

     paid over time): 4% or such other rate as

     ordered by the Court.

Impaired

First payment date: 12/31/11.

Amount of each installment:

   First and only payment on or before 12/31/11:

     $24,719.50 plus accrued interest at 4%

Frequency of payments: Single payment

Total yearly payments: $24,719.50 + interest

Final payment date: On or before 12/31/11

6.   <u>CLASS 1(F)</u>

<u>Secured Property Taxes related to Villages property</u>

Description of Collateral: Villages

Total amount of claim as of 11/20/10:  $11,853.02

Total amount of payments (over time) to satisfy the

       secured claim: $11,853.02 plus interest

Interest rate (to compensate creditor because claim is

       paid over time): 4% or such other rate as

       ordered by the Court.

Impaired

First payment date: 12/31/11.

Amount of each installment:

    First and only payment on or before 12/31/11:

       $11,853.02 plus interest at 4%

Frequency of payments: Single payment

Total yearly payments: $11,853.02 + interest

Final payment date: On or before 12/31/11


7.   <u>CLASS 1(G)</u>

<u>Secured Property Taxes related to National Property</u>

Description of Collateral: National

Total amount of claim as of November 20, 2010: $15,435

37

Total amount of payments (over time) to satisfy the

    secured claim: $15,435 plus interest

Interest rate (to compensate creditor because claim is

    paid over time): 4% or such other rate as

    ordered by the Court.

Impaired

First payment date: 12/31/11.

Amount of each installment:

    First and only payment on or before 12/31/11:

        $15,435 plus interest

Frequency of payments: Single payment

Total yearly payments: $15,435 + interest

Final payment date: On or before 12/31/11

8.    CLASS 1(H)

Secured Property Taxes related to 220 21st Place

Description of Collateral: 220 21st Place

Total amount of claim as of November 20, 2010: $

    19,041.04

Total amount of payments (over time) to satisfy the

    secured claim: $19,041.04 plus interest at 4%

Interest rate (to compensate creditor because claim is

paid over time): 4% or such other rate as

ordered by the Court.

Impaired

First payment date: 12/31/11.

Amount of each installment:

First and only payment on or before 12/31/11:

$19,041.04 plus accrued interest at 4%

Frequency of payments: Single payment

Total yearly payments: $19,041.04 + interest

Final payment date: On or before 12/31/11


e.    **CLASS TWO**

Class 2A - Washington Mutual Bank N.A.

Description of Collateral: first mortgage on Manhattan

Beach property: 220-21st Place Manhattan Beach

Court

Total amount of allowed claim as of November 20, 2010:

$1,039,416 on the first mortgage

Total amount of payments (over time) to satisfy the

secured claim: Commencing on the Effective

Date, subject to a reduction in the interest

rate to 4%, the member of this class will be

39

paid interest at $2,595.67 per month; Member

will be paid principal and interest in full

upon the earlier of 4 years after Effective

Date or sale of property.

Interest rate (to compensate creditor because claim is

paid over time):4%

Impaired

First payment date: Effective Date

Amount of each installment: $2,595.67

Frequency of payments: Monthly

Total yearly payments: 12

Final payment date: Earlier of 4 years after Effective

Date or sale of property.

Lien is not modified in any way by the Plan.

Additional comments:


Class 2B - Washington Mutual Bank N.A.

Description of Collateral: second mortgage on

Manhattan Beach property: 220-21st Place

Manhattan Beach Court

Total amount of allowed claim as of November 20, 2010:

$362,131 on the second mortgage

40

Total amount of payments (over time) to satisfy the

> secured claim: Commencing on the Effective
>
> Date, subject to a reduction in the interest
>
> rate to 4%, the member of this class will be
>
> paid interest at $904.33 per month; Member
>
> will be paid principal and interest in full
>
> upon the earlier of 4 years after Effective
>
> Date or sale of property.

Interest rate (to compensate creditor because claim is

> paid over time):4%

Impaired

First payment date: Effective Date

Amount of each installment: $904.33

Frequency of payments: Monthly

Total yearly payments: 12

Final payment date: Earlier of 4 years after Effective

> Date or sale of property.

Lien is not modified in any way by the Plan.

Additional comments:

f.    **CLASS THREE**

Secured Claims of Bank Midwest N.A.

Description of Collateral: National Drive, Villages at

Pinnacle Peak, Shalamar Apartments,

Drawbridge Inn, Sunset Crossing, Oak Trail

Villas[3], Second Street property and equipment

lease to Metro Cinemas

Total amount of allowed claim:$20,440,560.00 as of

Petition Date (has been reduced by certain

post-petition payments)

Total amount of payments (over time) to satisfy the

secured claim: The member of this class will

be paid in accordance with the terms of the

Loan Modification Agreement entered into in

September 2010 and filed as an attachment to

the parties' Stipulation. Pursuant to the

Loan Modification Agreement, all loans by

member will be consolidated and cross-

collateralized, with payments to continue

through April 2012.

---

3 FPF Oak Trails is a debtor in case# 2:10-34386 and the disposition of its assets and

liabilities will be subject to court approval in that case.

42

Interest rate (to compensate creditor because claim is
          paid over time):4.25%.  If the Debtor
          confirms a consensual Plan on or before
          2/15/11 or such later date as agreed to
          accommodate scheduling issues, Bank Midwest
          will waive all late charges and that portion
          of default interest accruing from default
          date through 3/31/10 and default interest
          after 7/31/10

Impaired

First payment date: The 10th of the first month
          following Plan confirmation.

Amount of each installment:  Monthly debt service
          payment shall be made per each individual
          property with interest at 4.25% until such
          property is refinanced or sold.  All default
          interest not waived per the cash collateral
          stipulation and all allowed reasonable
          attorneys fees and costs shall be paid at
          Plan confirmation.

Additional/Other Payments:

Upon the closing of the payoff of the Sunset
Note as discounted pursuant to the
compromise, Bank Midwest will receive
immediately upon closing proceeds in the
amount of $4,019,325.53 plus applicable per
diems, as payoff in full of its secured
claim, consisting of principle in the amount
of $3,807,368, with the balance of proceeds
to be applied to default interest and
collection costs.  Of the remaining proceeds
from the Sunset Note Compromise, $ 5,139,947,
less the amount paid per above, will be
deposited into a separate Debtor In
Possession cash collateral account for the
sole purpose of applying those funds to pay
down the BMW debt, and released to BMW upon
confirmation of Debtor's Plan of
Reorganization; at that time, the Debtor will
receive a credit against principle on the BMW
loans in an amount corresponding to the
amount of default interest being waived as

44

described in the Stipulation.  The balance of

proceeds after the payment and reserves as

described in paragraphs 3a and b above shall

be property of the Debtor estate and

deposited in the DIP general operating

account.

Frequency of payments: Monthly

Total yearly payments: 12

Final payment date: Earlier of April 1, 2012 or sale

or refinance of property.

Lien is modified by the Plan in that it is now cross-

collateralized among all the property in

which Bank Midwest has a security interest.

Additional comments:

g.    **CLASS FOUR**

Unsecured Claims

See Exhibit "B" for list of claimants and amount owed

each.

Total amount of allowed claims: $80,258.89

Total amount of payments (over time) to satisfy

claims: Three installment payments of

$26,752.96 totaling $80,258.89.

Interest rate: 4%

Impaired

First payment date: 30 day after the Effective Date.

Amount of each installment: 1/3 of debt

Frequency of payments: 3 monthly payments

Total yearly payments: 3 payments total

Final payment date: 90 days after Effective Date

Additional comments:

In full and complete satisfaction of these

Unsecured Claims, each holder of an Allowed Class

3 Claim will be paid in full through 3 monthly

installments commencing 30 days after the

Effective Date with interest at 4%.

h.    **CLASS FIVE**

Insider Claims

1.    This is the claim of a person as defined in 11

U.S.C.A. ' 101(31) (West Supp. 2006).

Essentially, an insider is a person with a close

relationship with the debtor, other than a

creditor-debtor relationship.

Debtor does not have any insider claims.

TOTAL INSIDER CLAIMS $ 0

i.    **CLASS SIX**

Shareholders' Interests

1.    Under the Plan, shareholders simply retain their

shares of stock in the Debtor.

2.    The Debtor's Equity/Interest Holders are as

follows:

a. Stephen Collias – 49 ½ %

b. Gary Hall – 49 ½ %

c. Franklin Finance – 1%

47

**X.    SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS**

The Plan cannot be confirmed unless the Court finds that it is
"feasible," which means that the Proponent has timely submitted
evidence establishing that the Debtor will have sufficient funds
available to satisfy all expenses, including the scheduled
creditor payments discussed above.  What follows is a statement
of projected cash flow for the duration of the Plan.  The focus
is on projected cash receipts and cash disbursements.  All non-
cash items such as depreciation, amortization, gains and losses
are omitted.  A positive number reflects a source of cash; a
(negative number) reflects a use of cash.  A more detailed
statement of cash flow projections for the duration of Plan
payments is attached as Exhibit "C".

|  | At Proposed Effective Date<br>April 7, 2011 |
|---|---|
| **Sources** | |
| Cash in DIP Accounts [a] | $585,786 |
| Less Borrower Reserve and Escrow Accounts [b] | ($207,681) |
| Monthly Cashflow | $470,935 |
| Sales / Dispositions / Refinances* | $11,751,998 |
| **Total Cash Sources** | **$12,601,037** |
| | |
| **Uses** | |
| Default Interest (April 1, 2010 - July 31, 2010) [c] | ($343,515) |
| Estimated Collection Costs | ($250,000) |
| Payment of Unsecured Creditors (FPF) | $0 |
| Payment of Unsecured Creditors (FPF Oak Trails) | $0 |
| Administrative Fees | ($170,897) |
| BMW Debt Service | ($299,103) |
| Non-BMW Debt Service | ($58,500) |
| Operating Expenses | ($195,000) |
| BMW Principal Paydown [d] | ($9,971,221) |
| Non-BMW Principal Paydown | $0 |
| Total CapEx, Taxes, Etc. | ($492,435) |
| **Total Cash Uses** | **($11,780,671)** |
| | |
| **Net Cash Available at Effective Date** | **$820,366** |

**Notes:**

*\* Includes DIP cash collateral account from Sunset Note to be released to BMW at closing.*

*(a) Balances as of October 31, 2010. Includes FPF Oak Trails DIP account.*

*(b) Includes the Sunset Crossing Reserve Account and Shalamar Tax and Security Deposit Liabilities.*

*(c) Per the Stipulation, BMW shall waive all default interest and late fees prior to March 31, 2010 and after July 31,*

*(d) Reflects the paydown of $300,000 received in October from the sale of three Oak Trails Units.*

49

As depicted in the table above, on the Effective Date, cash held in Debtor-in-Possession bank accounts and net cash flow generated by operations will allow the Debtor sufficient cash available to pay the following: $105,297 - $170,297 in Administrative Claims, depending on Administrative Claims accrued as of Effective Date, default interest earned between April 1, 2010 and July 31, 2010 in the amount of $343,515 and estimated Collection Costs due to Bank Midwest in the amount of $250,000. The Debtor also projects paying down approximately $10 million of principal owed to Bank Midwest, reducing the principal balance by 49% prior to the Effective Date. The net cash flow generated from operations through the Effective Date described in the table above is derived from monthly recurring cash flow (loan payments, rental income, etc.) and sales / dispositions of assets (including loan payoffs). Monthly cashflow that is related to Bank Midwest's collateral (Drawbridge, National, Metro, Shalamar, Sunset Crossing, Villages, 2nd Street and Oak Trails) is projected to be $274,245. Monthly cashflow attributable to assets that are un-encumbered by Bank Midwest (Aviation Applications, Manhattan Beach, Southern Data, Marson, Park 3000, Motti and Kamp), is projected to be $196,690.

50

By the Effective Date, cashflow generated from sales /
dispositions of assets related to Bank Midwest's collateral
(Drawbridge, National, Metro, Shalamar, Sunset Crossing,
Villages, 2nd Street and Oak Trails) is projected to be
$11,751,998. There are no sales or disposition of assets un-
encumbered by Bank Midwest (Aviation Applications, Manhattan
Beach, Southern Data, Marson, Park 3000, Motti and Kamp), prior
to the projected Confirmation Date.


Please note that the Debtor in accordance with the Stipulation
has paid Bank Midwest its required Adequate Protection Payments
and is current through December 31, 2010.

|                                                              | At Loan Maturity<br>April 1, 2012 |
| ------------------------------------------------------------ | --------------------------------: |
| **Sources**                                                  |                                   |
| Cash in DIP Accounts [a]                                     | $585,786                          |
| Less Borrower Reserve and Escrow Accounts [b]                | ($207,681)                        |
| Monthly Cashflow                                             | $1,601,620                        |
| Sales / Dispositions / Refinances*                           | $40,439,832                       |
| **Total Cash Sources**                                       | **$42,419,556**                   |
| **Uses**                                                     |                                   |
| Default Interest (April 1, 2010 - July 31, 2010) [c]         | ($343,515)                        |
| Estimated Collection Costs                                   | ($250,000)                        |
| Payment of Unsecured Creditors (FPF)                         | ($80,259)                         |
| Payment of Unsecured Creditors (FPF Oak Trails)              | ($33,662)                         |
| Administrative Fees                                          | ($170,897)                        |
| BMW Debt Service                                             | ($623,283)                        |
| Non-BMW Debt Service                                         | ($189,000)                        |
| Operating Expenses                                           | ($776,268)                        |
| BMW Principal Paydown [d]                                    | ($20,388,323)                     |
| Non-BMW Principal Paydown                                    | ($5,326,072)                      |
| Total CapEx, Taxes, Etc.                                     | ($3,067,815)                      |
| **Total Cash Uses**                                          | **($31,249,094)**                 |
| **Net Cash Available at Loan Maturity**                      | **$11,170,462**                   |
| Plus 15 Units at OTV (owned free and clear)                  | $1,203,488                        |
| **Total**                                                    | **$12,373,951**                   |

**Notes:**

*\* Includes DIP cash collateral account from Sunset Note to be released to BMW at closing.*

*(a) Balances as of October 31, 2010. Includes FPF Oak Trails DIP account.*

*(b) Includes the Sunset Crossing Reserve Account and Shalamar Tax and Security Deposit Liabilities.*

*(c) Per the Stipulation, BMW shall waive all default interest and late fees prior to March 31, 2010 and after July 31, 2010.*

*(d) Refelects the paydown of $300,000 received in October from the sale of three Oak Trails Units.*

As depicted in the table above, on the Maturity Date referenced in the Stipulation and Loan Modification, through cash held in Debtor-in-Possession bank accounts and net cash flow generated by operations, the Debtor will have sufficient funds to pay all bankruptcy expenses, secured creditors, tax authorities and unsecured creditors in accordance with the terms of this Plan. Section XV(c) states the assumptions and details surrounding the statement of projected cash flow.

The net cash flow generated from operations through the Maturity Date described in the table above is derived from monthly recurring cash flow (loan payments, rental income, etc.) and sales / dispositions of assets (including loan payoffs). Monthly cashflow related to Bank Midwest's collateral (Drawbridge, National, Metro, Shalamar, Sunset Crossing, Villages, 2nd Street and Oak Trails) is projected to be $1,099,368. Monthly cashflow attributable to assets that are un-encumbered by Bank Midwest (Aviation Applications, Manhattan Beach, Southern Data, Marson, Park 3000, Motti and Kamp), is projected to be $502,252.

53

Through Loan Maturity, cashflow generated from sales /
dispositions of assets related to Bank Midwest's collateral
(Drawbridge, National, Metro, Shalamar, Sunset Crossing,
Villages, 2nd Street and Oak Trails) is projected to be
$29,523,332. Sales or disposition of assets un-encumbered by
Bank Midwest (Aviation Applications, Manhattan Beach, Southern
Data, Marson, Park 3000, Motti and Kamp), are expected to be
$10,961,500 through the projected Confirmation Date.
Please note that Southern Data, Marson, Motti and Kamp are owned
free and clear.  Aviation Applications, Manhattan Chase and Park
3000, with combined projected market values of $9,412,500 are
subject to loans totaling $5,326,072.


**XI.   FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED**

   **PAYMENT IS FEASIBLE**


Attached as Exhibit "D" are three types of consolidated
financial documents, including balance sheets, cash flow
statements and income and expense statements for the Debtor and
its related entities for the period including the most recent
twelve-month calendar year and all months subsequent thereto.


54

## XII. ASSETS AND LIABILITIES OF THE ESTATE

    a.   <u>Assets</u>

The identity and fair market value of the estate's assets are
listed in <u>Exhibit "E"</u> so that the reader can assess what assets
are at least theoretically available to satisfy claims and to
evaluate the overall worth of the bankruptcy estate.  The Debtor
has given their best estimate of fair market value based on
their knowledge and experience.  Appraised values are also shown
on this Exhibit and in some instances are less than Debtor's
estimated fair market value for such assets.  However for cash
flow purposes the Debtor's assumptions are based on the lower of
appraised values or Debtor's best estimate of fair market value.
Whether the Plan proposes to sell any of these assets is
discussed in section XVI.

    **b.**   <u>**Liabilities**</u>

<u>Exhibit "F"</u> shows the allowed claims against the estate, claims
whose treatment is explained in detail by section IX.

55

c.    **Summary**

The fair market value of all assets held in the Debtor's name
equals $35,505,855.  Total liabilities equal $22,605,233. Please
note that the Debtor receives income from related assets held in
entities separate of the Plan that total $9,854,000 with
liabilities totaling $4,002,622. These assets include Park 3000,
Aviation Applications, the assets of HC Finance: Motti, Kamp
Motor Speedway, Marson, and Southern Data Systems (FDIC). These
assets are listed in Exhibit "E".

## XIII.    TREATMENT OF NONCONSENTING CLASSES

As stated above, even if all classes do not consent to the
proposed treatment of their claims under the Plan, the Plan may
nonetheless be confirmed if the dissenting classes are treated
in a manner prescribed by the Code.  The process by which
dissenting classes are forced to abide by the terms of a plan is
commonly referred to as "cramdown."  The Code allows dissenting
classes to be crammed down if the Plan does not "discriminate
unfairly" and is "fair and equitable."  The Code does not define
discrimination, but it does provide a minimum definition of
"fair and equitable."  The term can mean that secured claimants

56

retain their liens and receive cash payments whose present value
equals the value of their security interest.  For example, if a
creditor lends the Debtor $100,000 and obtains a security
interest in property that is worth only $80,000, the "fair and
equitable" requirement means that the claimant is entitled to
cash payments whose present value equals $80,000 and not
$100,000.  The term means that unsecured claimants whose claims
are not fully satisfied at least know that no claim or interest
that is junior to theirs will receive anything under the Plan,
except where the Debtor is an individual, has elected to retain
property included in the Estate under 11 U.S.C.A. § 1115 (West
Supp. 2006) and has satisfied 11 U.S.C.A. § 1129(b)(2)(B)(ii)
(West Supp. 2006).  "Fair and equitable" means that each holder
of an interest must receive the value of such interest or else
no junior interest is entitled to receive anything.

Therefore, if a class of general unsecured claims votes against
the Plan, the Plan cannot be confirmed where the Debtor or a
class of interest holders (e.g. shareholders or partners) will
receive or retain any property under the Plan, unless the Plan
provides that the class of general unsecured claims shall be
paid in full with interest.  These are complex statutory

57

provisions and the preceding paragraphs do not purport to state or explain all of them.

## XIV. TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS (CHAPTER 7 LIQUIDATION ANALYSIS)

The Plan must provide that a nonconsenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the Debtor filed a Chapter 7 petition instead.

In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee.  Unsecured creditors generally share in the proceeds of sale only after secured creditors and administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured creditors do.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than under Chapter 11 for four reasons.

First, the liquidation value of the company's assets is estimated to be less than its fair market value if sold in a Chapter 7 Trustee liquidation process because a number of these assets are incomplete and thus require the Debtor's construction, leasing and management expertise to generate higher values.  Furthermore, there is $9,854,000 of related assets held in separate, affiliated entities entitled Aviation Applications, Park 3000 and HC Finance that are separate of the plan that provide additional source of funds for the success of the plan of reorganization.

Affiliates:  Aviation Applications is an LLC in which the Debtor is a member.  Under the Plan, income from Aviation Applications will be included in the source of funding for the Plan.  Park 3000 is an LLC that was previously owned by the Debtor and is contributing income to the plan because it is an available source for funding.  It was refinanced to pay off debt owing to Bank Midwest in December, 2009 and in connection

59

therewith, ownership was conveyed to a single purpose entity.
It holds property valued a $7.0 million based on capitalizing
2010 net operating income of $640,000 by an 8.5% cap rate.
Income from Park 3000 is included in the sources of funding for
the Plan.

HC Finance is a limited liability limited partnership that holds
assets described as the Kamp Motor Speedway, Motti, Marson and
Southern Data Systems, all of which are unencumbered
investments.

The ability to intensely manage and market each asset over
a 2-year period is essential to obtaining optimal market value
sale prices. Rents must be collected, properties must be
maintained, sales and refinances must be negotiated, properties
need to be listed and marketed at appropriate times, and all
assets must be constantly monitored to ensure maximum
performance and disposition.  Debtor's current management is
well suited to handle these matters based on their substantial
experience.

Second, in a chapter 7 case a trustee is appointed and is
entitled to compensation from the bankruptcy estate in an amount
no more than 25% of the first $5,000 of all moneys disbursed,
10% on any amounts over $5,000 and up to $50,000, 5% on all
amounts over $50,000 and up to $1,000,000, and such reasonable
compensation no more than 3% of moneys over $1,000,000. Also, a
chapter 7 trustee would have additional administrative expense,
such as professionals, which will increase cost.


Third, payment to unsecured creditors would be delayed under a
chapter 7 than in comparison withthe Debtor's Plan.  Here,
unsecured creditors will be paid in full within 90 days
following the Effective Date.  In a ch. 7, even if the trustee
could sell assets promptly, it would take at least that long to
close the asset sales and another estimated 12 months to get
approval of final report and distribution to creditors.

Finally, the Plan here is the result of negotiations with Bank
Midwest, which allow for a waiver of over $500,000 in default
interest.  It is unlikely that the bank would offer this same
deal to a ch. 7 trustee. Moreover, delays in payment in chapter
7 would further expose the estate to additional interest and
default interest.

|  | Chapter 7 | Chapter 11 |
|---|---|---|
| 1. Value of Assets | $24,035,000 | $45,359,855 (a) |
| 2. Administrative Expenses | $500,000 | $200,000 |
| Plus Ch 11 Expense | $200,000 | $0 |
| Total | $700,000 | $200,000 |
| 3. Secured Claims (including default interest) | $23,036,869 | $26,188,248 (b) |
| 4. Secured Taxes Claims (c) | $310,733 | $310,733 |
| 5. Chapter 7 Trustee Fee (3%) | $721,050 | NA |
| 6. Exemptions | NA | NA |
| Total Available for Distribution to General Unsecureds | ($733,653) | $18,660,873 |
|  | Unsecured creditors receive payment of 0% of total claims | Unsecured creditors receive payment of 100% plus interest of total allowed claims under Plan |

(a)  Includes related assets that are not a party to the FPF filing. See Exhibit E.

(b)  Includes liabilities of related assets that are not a party to the FPF filing.   Chapter 7 anlaysis assumes approximately $1.2 million of default interest is not waived.  See Exhibit F.

(c)  Includes delinquent taxes related to FPF Oak Trails, LP, a relted enitity. See Exhibit F.

63

Below is a description of how we arrived at each asset's
respective Chapter 7 and Chapter 11 values:

Drawbridge Inn:

Bank Midwest engaged Hotel Leisure Advisors (HLA) to appraise
the Hotel. On October 9, 2009, HLA reported an "As Is" Value of
the $6,700,000. On January 27, 2009, HLA reported as "As Is"
value for the Hotel of $8,300,000 and an "As Stabilized" Value
of $11,300,000.

The Debtor considered listing the property for sale in August of
2009.  It engaged Huff, Niehaus & Associates (HN), a boutique
hotel broker, to perform an Opinion of Value. HN's value range
was $8,000,000 to $10,000,000.

Applying conservatism to the range of values listed above to
account for a slightly weaker hotel market, FPF's pro forma
Chapter 11 value for the property is **$7,500,000.**

In determining the property's liquidation value, recent
conversations with HN reveal that in today's market, a property
similar to the Drawbridge Inn would in their opinion trade at

land value of approximately $250,000 per acre or 1 times gross

revenue. Being that the property is 16 acres and projected 2010

revenue is $4,000,000, the resulting value would be **$4,000,000.**

Without hands on asset management of the Debtor, the property

will fail to move the hotel towards greater profitability making

it a more attractive acquisition candidate for buyers.

**Sunset Crossing:**

This performing loan is scheduled to pay off at $5,500,000 as

described in the Sunset Compromise Motion which was entered on

November 15, 2010.  Therefore, in a Chapter 11 or Chapter 7

scenario, the applicable value is **$5,500,000**. UPDATE: This loan

was paid on December 23, 2010.

**Shalamar Apartments:**

While no current appraisal for the property exists, there is

ample information available to support the Debtor's Chapter 11

value estimate of $6,300,000. The property has exceeded its

stabilized occupancy projection of 95% and currently is 98%

occupied. October 2010's net operating income was $60,000 – its

highest level since acquired by the Debtor.  CBRE, the court

approved broker for the property, is marketing the property for

65

sale and has sourced two letters of intent for $5,900,000 and $5,750,000, respectively.  These offers are based on limited financial information – only one month of stabilized income has been made available to Buyers. It is the broker and Debtor's opinion that with additional months of historic performance, the property could be sold for as much as $6,300,000. A CBRE broker opinion of value dated September 2009 displayed a value of $5,975,000 but it was based on 95% occupancy and an 8.3% cap rate on projected net operating income of approximately $500,000. Debtor is continuing to manage and market this property with a view toward achieving maximum value.

If the property had to be sold under a chapter 7 plan immediately, the Debtor estimates that thea Trustee could sell it for a liquidated value of **$5,750,000,** the projected Chapter **7** value. This value is less than the Chapter 11 value because it fails to utilize the Debtor's ability to maintain the property's occupancy levels, generate net operating income and evidence for buyers over the coming months.

**Oak Trail Villas:**

Bank Midwest engaged Butler Burgher (BB) to appraise the property. On October 5, 2009, BB reported an "Aggregate Retail Value" of $8,877,600 based on 49 remaining units. It also reported a "Bulk (Wholesale)" as is value of $3,150,000.

The BB Aggregate Retail value used an assumed sale price per unit of $181,176 based on comparable sales available at the time.  The Debtor's projected market of **$6,000,000** assumes a per unit sales price of $185,000 less a cost to build of $58,000 per unit multiplied by 47, the number of units at the time of filing.  On or about September 30, 2010, three units closed with the Court's permission.  The three units had an average sales price of $185,700.  The Oak Trails project is still in construction and units are being sold as they are completed.

The Debtor's Chapter 7 liquidation value of **$3,150,000** is based on the appraised value discounted for the assumption of a bulk sale by the Trustee marketing the property in its current unfinished condition without the benefit of the Debtor's completing the construction and marketing which would unlock the property's maximum value for the estate.

67

**2nd Street:**

Bank Midwest engaged Grumley Valuation and Consulting to
appraise the property which resulted in an "As Is Value" of
$2,535,000 in October of 2009. This value was determined when
the building had no tenants or income after the construction of
the building. Since this time period, the Debtor has
successfully leased 3,500 square feet of the 6,500 square
building at the rate of $30 per square foot on a triple net
basis plus a 4% percentage lease factor which is estimated to
contribute an additional $10 per square foot of annual income.
Additionally, the lease grows by 3% per year until reaching $40
psf in year 10 or $50 psf including the percentage rent. The
tenant, a successful restaurant operator, has an estimated
budget of approximately $1,000,000 for the improvements of the
business including furnishings and equipment. The Debtor will
also provide $250,000 in additional tenant improvements. Due to
this leasing event, the Debtor projects leasing the balance of
the space of only 3,000 square feet over the next 12 months with
similar terms. The market value is determined by taking the
current rate plus the percentage rent to arrive at income of $40
per square foot multiplied by the size of building to arrive at
an income of $260,000 capitalized at 8% to arrive at a building

68

value of $3,250,000 plus the value of the lot which is the only undeveloped corner lot in "Old Town Scottsdale" at $2,000,000 or $140 per square foot with similar comps at $200. A Chapter 11 market value of **$5,250,000** is achieved by combining the value of the building when fully stabilized plus the value of the land.

If a Trustee were to liquidate the Property on an "As Is" basis, the Trustee could possibly achieve a sales price of **$2,535,000**, the value referenced in the appraisal above.    The valuation is lower in chapter 7 because a trustee would lack the ability to complete the development to achieve maximum value.

**Villages:**

Bank Midwest engaged Grumley Valuation and Consulting to appraise the property which resulted in an "As Is Value" of $600,000 in October of 2009.   The Debtor projects leasing the building for $25 psf on a net basis in 2011 with yearly increases of 3% per annum.   This lease in year two would result in net operating income of approximately $108,665 which when capped at 9.0% results in an estimated value of **$1,200,000**.

69

If a Trustee were to liquidate the Property on an "As Is" basis, it could possibly achieve a sales price of **$600,000** based on the appraised value above.


**3789 National Drive:**

Bank Midwest engaged IRR Residential Metro Real Estate Services (IRR) to appraise the property. On February 10, 2009, IRR reported a Value of the $880,000.  At that point in time, the property was unoccupied and listed for sale.  The Debtor has since been able to find a tenant to lease and stage the property while paying for landscaping and other services. The tenant pays rent of $3,250 per month. Because the home is occupied and well presented, the Debtor believes that with time and market improvement it can find a buyer at **$950,000,** its proposed Chapter 11 value. The home sold previously for $1,200,000.


If a Trustee were appointed, the property would lose the tenant and its condition would deteriorate eventually resulting in a sale  in the current distressed market at a distressed / foreclosure value of **$700,000.**

70

**Metro Cinema**

Universal Cinema Services conducted an equipment valuation for
the movie theatre equipment leased to Colleyville Cinema Grill
in 2008 which estimated the current value at $792,107.  Bank
Midwest ordered and updated appraisal in October of 2009 which
reported a revised value of approximately $640,000.  The Debtor
projects selling the equipment the cinema operators for
**$500,000,** the Chapter 11 value of the collateral.


If a Trustee were to liquidate the equipment, the projected
liquidation sale price is estimated to be **$250,000** by Universal
Cinema Services.

**220 21st Place:**

The last appraisal performed by Hooks and Associates is dated
April 21, 2005 and reports a $1,600,000 value. The Debtor
identified a tenant who is leasing the property for $6,000 per
month. The best indicator of value is the sale of its twin unit
in May 2010 for $1,700,000. According to Shorewood Realtors, two
sales of slightly inferior properties closed recently including

71

203 20th Place for approximately $1,525,000 and 125 20th Place for $1,749,000. Based on this information, the Debtor's estimated Chapter 11 value is **$1,700,000.**

If the property were to be liquidated by a Trustee, it would lose the tenant and its condition would deteriorate causing it to sell for a distressed value of **$1,500,000.**

The following group of assets only applies in the event the Plan is approved. Their estimated fair markets are highlighted below.

**Park 3000:**

While no appraisal exists for the property, CBRE has been retained to market the property for sale on behalf of the principals of the Debtor. The property currently has a trailing 12 month net operating income of approximately $630,000. In an opinion of value based on projected 2011 net operating income of $609,674 and in place cap rate of 8.5%, CBRE projects the property to sell for $7,135,000. The Debtor assumes a Chapter 11 value of $**7,000,000.**

**Aviation Applications, LLC**

This entity is a single asset LLC secured by a Lear 35 aircraft with an estimate value of **$750,000** acquired in a foreclosure of a note held by Aviation Securitization.  The equipment is currently financed by PNC Bank in the amount of $625,000 with a note that matures December 31, 2011.  Payments are current.

**HC Finance, LLLP**

This entity is comprised of  loans owned free and clear.    HC Finance assets include  a loan to Kamp Motorspeedway in the principal amount $980,000 with collateral including a race track facility, Kmotion Racing, and a commercial building in Layfayette, Indiana.  In addition, HC Finance has a lending relationship with Motti in the principal amount of $504,000 for the restaurant equipment of Giafranco's Restaurant in North Scottsdale, Arizona.  This loan is a performing loan with a maturity scheduled for December 31, 2011.

73

**XV.   FUTURE DEBTOR**

    a.   <u>Management of Debtor</u>

        1.   Names of persons who will manage the Debtor's business affairs: Stephen Collias & Marc Heenan

        2.   Proposed compensation to persons listed above: Collias: $150,000 annually;  Heenan $125,000 annually

        3.   Qualifications: See resumes attached as <u>Exhibit "G"</u>

        4.   Affiliation of persons to Debtor: Collias: 49 ½ shareholder;  Heenan: none

        5.   Job description: Management of Assets


    b.   <u>Disbursing Agent</u>

    Debtor is responsible for collecting money intended for distribution to claimants and transmitting it to them.  The disbursing agent's address and telephone number are:

        429 Santa Monica Blvd., Suite 625

        Santa Monica, CA 90401

        Telephone: 310.587.0037

**74**

1.   Proposed compensation to person listed above: See
     above.

2.   Qualifications: See above.

3.   Affiliation of person to Debtor: See above.

4.   Job description: See above.


c.   Future Financial Outlook

The Proponent believes that the Debtor's economic health
will improve from its prebankruptcy state for the following
reasons. First, market conditions are improving.  Second, the
Chapter 11 has afforded the Debtor additional time to allow for
optimal marketing and sale of assets for a more favorable
economic return on sale and/or refinance.  Third, Debtor has
additional time due to the extended terms with Bank Midwest per
the Loan Modification Agreement, as well as a partial waiver of
default interest by Bank Midwest.


Section X provides a summary of the projected cash flow of
the Debtor for the duration of the Plan.  The following
assumptions underlie the projections: Continued operations and
cash flow per Exhibit "C".  As previously stated, Plan payments

75

will come from the continued operation of the Debtor's business,
including rental income, refinance and sale proceeds.  If the
business generates insufficient funds to provide all of the Plan
payments, then the Proponent will make up the shortfall under
the following conditions and subject to the following terms:
Sale and refinance of assets.  The Proponent's financial
solvency, which is relevant to its ability to honor its
commitment to make up any shortfall, is demonstrated by the
following facts: values exceed liabilities per the financial
statements at Exhibit "D".  Also, Debtor has a current cash
investment balance of $ 11,780,118 and the investors have shown
their capability and willingness to invest additional monies
necessary to meet obligations as was evidence by the additional
cash infusion in 2009 of $842,000.

**XVI. SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND**

   **LEASES; OTHER PROVISIONS**

The Plan provides for the following:

   a.   <u>The Assumption of Contracts</u>

   Effective as of, and conditioned on, the occurrence of the
Effective Date, the Debtor will assume all of the executory
contracts and unexpired leases set forth in <u>Exhibit "H</u>."  The
Debtor may amend <u>Exhibit "H"</u> to add thereto any executory
contract or unexpired leases, or to delete therefrom any
executory contract or lease, up to and including the
Confirmation Date.  However, if any amendments are made to
<u>Exhibit "H"</u> less than twenty-four (24) days before the
Confirmation Date, the affected contract or lease parties shall
have fifteen (15) days from the date of service of notice of
such amendments within which to serve on the Debtor a written
objection to the same.  Upon receipt of any such objection, the
Debtor shall promptly set a hearing on the same, and the
assumption or rejection of the affected contract or lease shall
be delayed until the Bankruptcy Court makes a determination on
this issue (such determination may be made after the
Confirmation Date, without delaying the confirmation of the
Plan).

Payment of Allowed Cure Claims, if any, shall be paid over a period not to exceed thirty-six (36) months, in equal monthly installments commencing on the Effective Date.

    b.    The Rejection of Contracts

At present, the Debtor does not anticipate rejecting any executory contracts.  The Debtor reserves the right to amend this section of the Plan to add thereto any executory contracts or leases, or to delete therefrom any executory contract or unexpired lease, up to and including the Confirmation Date.  However, if any amendments are made to this section of the Plan later than twenty-four (24) days before the Confirmation Date, the affected contract or lease parties shall have fifteen (15) days from the date of service of notice of such amendments within which to serve on the Debtor a written objection to the same.  Upon receipt of any such objection, the Debtor shall promptly set a hearing on the same, and the rejection of the affected contract or lease shall be delayed until the Bankruptcy Court makes a determination on this issue (such determination may be made after the Confirmation Date, without delaying the confirmation of the Plan).  To the extent that an executory contract or unexpired lease has been rejected by the Debtor

prior to the Confirmation Date pursuant to an order of the

Bankruptcy Court, such rejection shall not be affected by the

Plan


The Court must make certain findings of fact before approving

the aforementioned provisions as part of the Plan.  The

Proponent will request that the Court make the appropriate

findings at the confirmation hearing, based upon evidence

submitted in support of the confirmation motion.


**XVII.    BANKRUPTCY PROCEEDINGS**

This case was commenced on May 24, 2010.  On June 14, 2010,

Bank Midwest N.A. filed its Motion for Relief from Stay and its

Motion to Appoint Chapter 11 Trustee.  By stipulation, these

matters are still pending before the Court, with hearings set

for October 12, 2010.

The Notice of Claims Bar Date was served on July 14, 2010.

On July 20, 2010, Debtor substituted Leslie Cohen Law PC as

its Bankruptcy Counsel.  The order approving the employment of

Leslie Cohen Law PC was entered on August 3, 2010.

79

On July 20, 2010, Debtor filed its Motion to Use Cash Collateral pertaining to the Shalamar Property.  There were no opposition to this Motion, and the Court's order approving it is pending.

As of the filing of this Amended Disclosure Statement and Plan, Debtor has filed Applications to Employ all of its Professionals in this case, as listed under the Administrative Claims section of this Plan.  Orders have been entered approving the employment of all professionals.

On September 7, 2010, Debtor filed its stipulation with Bank Midwest N.A. concerning use of cash collateral.  There were no objections to this stipulation, and the  Court approved the stipulation.

On November 15,2010, the Court granted the Order Motion to Compromise Re Sunset Crossing Note Pursuant to Federal Rule of Bankruptcy Proceedure 9019.

To reflect the Sunset Crossing compromise, the Debtor and Bank Midwest N.A. are amending the September 7, 2010 Stipulation concerning use of cash collateral.  This amended stipulation will be filed concurrently with this Amended Disclosure Statement and Plan.

XVIII.    TAX CONSEQUENCES OF PLAN


All required tax reporting has been done on a timely basis,
including recent tax obligations for 2009 which were just
completed on September 15.  Proceeding forward, all taxes will
be maintained current except as referenced in the schedule of
priority claims for real estate taxes for 3 of the Debtor's
assets.  The accelerated debt reduction requirement by Bank
Midwest may create tax consequences for the Debtor, but is not
expected to affect creditors.  Parties in interest should
contact their own tax advisors to determine any tax
implications.


XIX. EFFECT OF CONFIRMATION OF PLAN

    a.    General comments

The provisions of a confirmed Plan bind the Debtor, any entity
acquiring property under the Plan, and any creditor, interest
holder, or general partner of the Debtor, even those who do not
vote to accept the Plan.

81

The confirmation of the Plan vests all property of the estate in the Debtor.

The automatic stay is lifted upon confirmation as to property of the estate.  However, the stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or the Debtor's property until the date the Debtor receives a discharge, if any.  If the Debtor does not seek a discharge, the discharge is deemed denied, and the stay as to the Debtor and the Debtor's property terminates upon entry of the order confirming the Plan.

    b.   Discharge of liability for payment of debts; status of liens; equity security holders

Unless the Debtor is not entitled to receive a discharge pursuant to 11 U.S.C.A. 1141(d)(3) (West 2004), the debtor may obtain a discharge only upon specific order of the Court.

    c.   Modification of the Plan

The Proponent may modify the Plan pursuant to 11 U.S.C.A. § 1127 (West 2004 & Supp. 2006).

    d.   <u>Post-Confirmation Causes of Action</u>

To the best knowledge of the Proponent, the estate has the following causes of action: a) tax disputes, b) ongoing collection actions against various borrowers which may have arisen or may arise in the future , c) other actions, if any, which are currently being evaluated, including, without limitation, avoidance actions, if any.

The Reorganized Debtor is designated as representative of the estate under 11 U.S.C.A. § 1123(b)(3) (West 2004) and shall have the right to assert any or all of the above causes of action post-confirmation in accordance with applicable law.

    e.  <u>Final Decree</u>

Once the Plan has been consummated, a final decree may be entered upon motion of the Proponent.  The effect of the final decree is to close the bankruptcy case.  After such closure, a party seeking any type of relief relating to a Plan provision can seek such relief in a state court of general jurisdiction.

**XX.   DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN**

I, Stephen Collias, declare under penalty of perjury under the laws of the United States of America that the following statements are true and based upon personal knowledge.

1.    Marc Heenan and I, together with counsel, are the individuals who prepared this document.

2.    The source of all financial data is Debtor's books and records.

3.    All facts and representations in the Plan and Disclosure Statement are true to the best of my knowledge.

4.    No fact material to a claimant or equity security holder in voting to accept or reject the proposed Plan has been omitted.

5.    The name of the person(s) who prepared the cash flow projections and the other financial documents is Marc Heenan, and such person was acting within the capacity of his position as Senior Vice President for the Debtor.

6.    The accounting method used to prepare the cash flow

projections and the other financial documents is cash.


Date: 1/28/11

Stephen Collias

**BALLOT FOR ACCEPTING OR REJECTING PLAN**

Franklin Pacific Finance, LLLP filed a Plan of Reorganization on September 21, 2010.  By this ballot you will decide whether to accept or reject this Plan.

The Plan referred to in this ballot can be confirmed by the Court and thereby bind you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the Plan.

If the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of 11 U.S.C.A. § 1129(b) (West 2004 & Supp. 2006).

Check the appropriate line below, which describes your interest:

_____ The undersigned, a creditor with an allowed claim in the amount of $_____:

_____ The undersigned, a holder of a bond in the amount of $_____, with a stated maturity date of _____, registered in the name of _____, and bearing serial number(s)_____:

_____ The undersigned, the holder of _____ shares of _____ (explain type of stock) stock, with a certificate(s) No. _____:

[ ]  Accepts the Plan

[ ]  Rejects the Plan

Print or type name: _____

State which class you are a member of:
_____

Signed:            _____

If appropriate, by: _____  as _____

Address:

**Return this ballot on or before March 7, 2011 by 5 p.m. PST  to:**

      **Leslie Cohen Law PC**
      **Attn: Jaime Williams**
      **506 Santa Monica Blvd.**
      **Suite 200**
      **Santa Monica, CA 90401**
      Facsimile:(310) 394-9280
      jaime@lesliecohenlaw.com

# EXHIBIT A

B6D (Official Form 6D) (12/07)

In re    **Franklin Pacific Finance, LLLP**                                      Case No.    **LA 2:10-30727 VZ**
                                    _____
                                              Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. xxxxxx8858 <br><br> **Bank Midwest, N.A.** <br> **100 Main** <br> **Kansas City, MO 64196-6458** | X | - | 6-20-06 <br><br> UCC-1 <br><br> Theater Equipment leased to Metro Cinemas <br> Colleyville, TX | | | | | |
| | | | Value $              639,555.00 | | | | 167,089.00 | 0.00 |
| Account No. xxxxxx7530 <br><br> **Bank Midwest, N.A.** <br> **100 Main** <br> **Kansas City, MO 64196-6458** | | - | 3-20-07 <br><br> Deed of Trust <br><br> sfr <br> 6789 N. National Drive <br> Parkville, MO 61452 <br> Platte County | | | | | |
| | | | Value $              950,000.00 | | | | 660,000.00 | 0.00 |
| Account No. xxxxx6081 <br><br> **Bank Midwest, N.A.** <br> **100 Main** <br> **Kansas City, MO 64196-6458** | | - | 5-12-05 <br><br> Deed of Trust <br><br> Retail Property <br> Villages at Pinnacle Peak, Building 5 <br> 10452 East Jomax Road <br> Scottsdale, AZ 85262 | | | | | |
| | | | Value $            1,200,000.00 | | | | 800,000.00 | 0.00 |
| Account No. xxxxx9210 <br><br> **Bank Midwest, N.A.** <br> **100 Main** <br> **Kansas City, MO 64196-6458** | | - | 12-19-07 <br><br> Deed of Trust <br><br> Shalamar Apartments (162 Units) <br> 1640 Aquarena Springs Drive <br> San Marcos, TX 78866 <br> Hays County | | | | | |
| | | | Value $            6,300,000.00 | | | | 3,525,000.00 | 0.00 |

__1__    continuation sheets attached

Subtotal                      5,152,089.00                0.00
(Total of this page)

Case 2:10-bk-30727-VZ    Doc 13    Filed 06/07/10    Entered 06/07/10 18:16:58    Desc
Main Document    Page 15 of 42

B6D (Official Form 6D) (12/07) - Cont.

In re   **Franklin Pacific Finance, LLLP**                                    Case No.   LA 2:10-30727 VZ
_____
                                    Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br><br>Bank Midwest, N.A.<br>100 Main<br>Kansas City, MO 64196-6458 | | | Note Receivable from Drawbridge Inn LLC<br>secured by Drawbridge Inn hotel<br>Fort Mitchell, KY<br><br>Value $          8,429,826.00 | | | | 5,226,090.00 | 0.00 |
| Account No.<br><br>Bank Midwest, N.A.<br>100 Main<br>Kansas City, MO 64196-6458 | | | Note Receivable from Sunset Crossing secured by Sunset Crossing Retail Center<br>San Angelo, TX<br><br>Value $          6,842,340.00 | | | | 3,807,388.00 | 0.00 |
| Account No. xxxx7421<br><br>Colette Franklin Tax Assessor<br>3076 Mustang Dr.<br>Grapevine, TX 76051 | | | various<br><br>personal property taxes<br><br>Theater Equipment leased to Metro Cinemas<br>Colleyville, TX<br>Value $          639,555.00 | | | | 79,632.00 | 0.00 |
| Account No. xxxxxx1388<br><br>Washington Mutual Bank, NA (Chase)<br>POBox 78148<br>Phoenix, AZ 85062-8148 | | | 1-26-08<br>First Mortgage<br>sfr<br>220 21st Place<br>Manhattan Beach, CA  90266<br>Los Angeles County<br>Value $          1,650,000.00 | | | | 1,045,922.00 | 0.00 |
| Account No. xxxxxx3763<br><br>Washington Mutual Bank, NA (Chase)<br>POBox 78148<br>Phoenix, AZ 85062-8148 | | | 1-26-08<br>Second Mortgage<br>sfr<br>220 21st Place<br>Manhattan Beach, CA  90266<br>Los Angeles County<br>Value $          1,650,000.00 | | | | 360,000.00 | 0.00 |

Sheet __1__ of __1__ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal (Total of this page)    10,519,012.00    0.00

Total (Report on Summary of Schedules)    16,671,101.00    0.00

B6F (Official Form 6F) (12/07)

In re    **Franklin Pacific Finance, LLLP**                                            Case No.    **LA 2:10-30727 VZ**
_____
Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. Shalamar<br><br>A & M Cleaning<br>193 Valero Drive<br>San Marcos, TX 78666 | | - | | Trade debt | | | | 405.94 |
| Account No.<br><br>Bonnett, Fairbourn, Freedman etc.<br>2901 N. Central Ave<br>Suite 1000<br>Phoenix, AZ 85012 | | - | | various<br>legal services | | | | 8,500.00 |
| Account No. Shalamar<br><br>C&J Painting & Carpet Cleaning<br>PO Box 200573<br>Austin, TX 78720 | | - | | Trade debt | | | | 3,949.74 |
| Account No. xx1664<br><br>Classified Ventures<br>2563 Collections Center Drive<br>Chicago, IL 60693 | | - | | Trade debt | | | | 528.00 |
| __4__    continuation sheets attached | | | | | Subtotal<br>(Total of this page) | | | 13,383.68 |

B6F (Official Form 6F) (12/07) - Cont.

In re __Franklin Pacific Finance, LLLP__    Case No. __LA 2:10-30727 VZ__

                                Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. Shalamar<br><br>Cleaning Network<br>POBox 41975<br>Austin, TX 78704 | | - | Trade debt | | | | 952.00 |
| Account No. Shalamar<br><br>Cowboys Painting<br>15405 Connie Street, #B<br>Austin, TX 78728 | | - | Trade debt | | | | 4,697.29 |
| Account No. Shalamar<br><br>CSN Support Services<br>262 McGarity<br>Kyle, TX 78840 | | - | Trade debt | | | | 276.04 |
| Account No.<br><br>Enbody, Inc.<br>14431 Ventura Blvd<br>Suite 269<br>Sherman Oaks, CA 91423 | | - | various<br>Consulting Services | | | | 3,000.00 |
| Account No. Shalamar<br><br>Frank's Painting<br>110 N 1H 35<br>Suite 315-189<br>Round Rock, TX 78664 | | - | Trade debt | | | | 3,537.40 |

Sheet no. _1_ of _4_ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    | 12,462.73

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com    Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re    **Franklin Pacific Finance, LLLP**                                    Case No.    **LA 2:10-30727 VZ**
                                                                                              Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. Shalamar<br><br>Green Grass<br>5333 Randolph Blvd.<br>San Antonio, TX 78233 | | - | Trade debt | | | | 1,198.90 |
| Account No. Shalamar<br><br>Greensheet<br>PO Box 140721<br>Austin, TX 78704 | | - | Trade debt | | | | 560.00 |
| Account No. xxx6493<br><br>HD Supply Facilities Maint. Group<br>10841 Scripps Summit Court<br>San Diego, CA 92131 | | | Trade debt | | | | 4,285.44 |
| Account No. Shalamar<br><br>J4 Development<br>2808 Longhorn Blvd., Suite 306<br>Austin, TX 78758 | | - | Trade debt | | | | 757.12 |
| Account No. x3827<br><br>Premium Cuts Lawn Svc & Maint.<br>PO Box 820108<br>Austin, TX 78708 | | - | Trade debt | | | | 3,957.88 |
| Sheet no. _2_ of _4_ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims | | | | | Subtotal<br>(Total of this page) | | 10,757.34 |

B6F (Official Form 6F) (12/07) - Cont.

In re    **Franklin Pacific Finance, LLLP**                                    Case No.    **LA 2:10-30727 VZ**
                                                    Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. Shalamar<br><br>Rasa Floors<br>POBox 619130<br>Dallas, TX 75261 | | - | Trade debt | | | | 26,799.50 |
| Account No.<br><br>SAA Architects<br>6083 Bristol Parkway<br>Culver City, CA 90230 | | | various architectural services | | | | 3,600.00 |
| Account No. Shalamar<br><br>South Central Texas Apt. Blue Book<br>112 West Hopkins Street<br>San Marcos, TX 78666 | | - | Trade debt | | | | 2,405.00 |
| Account No. Shalamar<br><br>Sunset Carpet Care<br>POBox 142342<br>Austin, TX 78714 | | - | Trade debt | | | | 97.38 |
| Account No. xx9488<br><br>Wilmar<br>POBox 404284<br>Atlanta, GA 30384 | | - | Trade debt | | | | 1,504.73 |

Sheet no.  **3**   of  **4**   sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                **34,306.61**

B6F (Official Form 6F) (12/07) - Cont.

In re    **Franklin Pacific Finance, LLLP**                                Case No.   **LA 2:10-30727 VZ**
_____                                _____
                              Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. xxxxx2868 | | | | Trade debt | | | | |
| **Worldwide Pest Control** **6808 1H 10 West** **San Antonio, TX 78201** | | - | | | | | | 181.11 |
| Account No. | | | | various accounting services | | | | |
| **Wyndells & Gagnon** **4800 N. Scottsdale Rd.** **Suite 1400** **Scottsdale, AZ 85251** | | - | | | | | | 9,197.42 |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |

Sheet no. __4__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

|  | Subtotal (Total of this page) | 9,358.53 |
|---|---|---|
|  | Total (Report on Summary of Schedules) | 80,258.89 |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

# EXHIBIT B

B6F (Official Form 6F) (12/07)

In re __Franklin Pacific Finance, LLLP__        Case No. __LA 2:10-30727 VZ__

_____
Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. Shalamar<br><br>A & M Cleaning<br>193 Valero Drive<br>San Marcos, TX 78666 | | | Trade debt | | | | 405.94 |
| Account No.<br><br>Bonnett, Fairbourn, Freedman etc.<br>2901 N. Central Ave<br>Suite 1000<br>Phoenix, AZ 85012 | | | various<br>legal services | | | | 8,500.00 |
| Account No. Shalamar<br><br>C&J Painting & Carpet Cleaning<br>POBox 200573<br>Austin, TX 78720 | | | Trade debt | | | | 3,949.74 |
| Account No. xx1664<br><br>Classified Ventures<br>2563 Collections Center Drive<br>Chicago, IL 60693 | | | Trade debt | | | | 528.00 |

__4__  continuation sheets attached             Subtotal
(Total of this page)     13,383.68

B6F (Official Form 6F) (12/07) - Cont.

In re    **Franklin Pacific Finance, LLLP**                                     Case No.    **LA 2:10-30727 VZ**
                                        Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | H W J C | | | | | | |
| Account No. Shalamar<br><br>Cleaning Network<br>POBox 41975<br>Austin, TX 78704 | | - | | Trade debt | | | | 952.00 |
| Account No. Shalamar<br><br>Cowboys Painting<br>15405 Connie Street, #B<br>Austin, TX 78728 | | - | | Trade debt | | | | 4,687.29 |
| Account No. Shalamar<br><br>CSN Support Services<br>262 McGarity<br>Kyle, TX 78640 | | - | | Trade debt | | | | 276.04 |
| Account No.<br><br>Enbody, Inc.<br>14431 Ventura Blvd<br>Suite 269<br>Sherman Oaks, CA 91423 | | - | | various<br>Consulting Services | | | | 3,000.00 |
| Account No. Shalamar<br><br>Frank's Painting<br>110 N 1H 35<br>Suite 315-189<br>Round Rock, TX 78664 | | - | | Trade debt | | | | 3,537.40 |

Sheet no. __1__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)        **12,452.73**

Case 2:10-bk-30727-VZ    Doc 13    Filed 06/07/10    Entered 06/07/10 18:16:58    Desc
Main Document    Page 19 of 42

B6F (Official Form 6F) (12/07) - Cont.

In re    **Franklin Pacific Finance, LLLP**                                           Case No.    **LA 2:10-30727 VZ**
                                                    _____
                                                              Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q I D A T E D | D I S U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **Shalamar**<br><br>**Green Grass**<br>**5333 Randolph Blvd.**<br>**San Antonio, TX 78233** | - | | Trade debt | | | | 1,195.90 |
| Account No. **Shalamar**<br><br>**Greensheet**<br>**POBox 140721**<br>**Austin, TX 78704** | - | | Trade debt | | | | 560.00 |
| Account No. xxx6493<br><br>**HD Supply Facilities Maint. Group**<br>**10641 Scripps Summit Court**<br>**San Diego, CA 92131** | - | | Trade debt | | | | 4,285.44 |
| Account No. **Shalamar**<br><br>**J4 Development**<br>**2808 Longhorn Blvd., Suite 306**<br>**Austin, TX 78758** | - | | Trade debt | | | | 757.12 |
| Account No. x3827<br><br>**Premium Cuts Lawn Svc & Maint.**<br>**POBox 820108**<br>**Austin, TX 78708** | - | | Trade debt | | | | 3,957.88 |

Sheet no. __2__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    | 10,757.34 |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re    **Franklin Pacific Finance, LLLP**                                Case No.    **LA 2:10-30727 VZ**
_____          _____
                                    Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. Shalamar<br><br>Rasa Floors<br>PO Box 619130<br>Dallas, TX 75261 | | - | Trade debt | | | | 26,799.50 |
| Account No.<br><br>SAA Architects<br>6083 Bristol Parkway<br>Culver City, CA 90230 | | - | various architectural services | | | | 3,500.00 |
| Account No. Shalamar<br><br>South Central Texas Apt. Blue Book<br>112 West Hopkins Street<br>San Marcos, TX 78666 | | - | Trade debt | | | | 2,405.00 |
| Account No. Shalamar<br><br>Sunset Carpet Care<br>PO Box 142342<br>Austin, TX 78714 | | - | Trade debt | | | | 97.38 |
| Account No. xx9488<br><br>Witmar<br>PO Box 404284<br>Atlanta, GA 30384 | | - | Trade debt | | | | 1,504.73 |

Sheet no. __3__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                          34,306.61

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re    **Franklin Pacific Finance, LLLP**                                      Case No.   **LA 2:10-30727 VZ**
                                    Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxxxx8868<br><br>**Worldwide Pest Control**<br>**6808 1H 10 West**<br>**San Antonio, TX 78201** | | - | Trade debt | | | | 161.11 |
| Account No.<br><br>**Wyndells & Gagnon**<br>**4800 N. Scottsdale Rd.**<br>**Suite 1400**<br>**Scottsdale, AZ 85251** | | - | various<br>accounting services | | | | 9,197.42 |
| Account No. | | | | | | | |
| Account No. | | | | | | | |
| Account No. | | | | | | | |

Sheet no. __4__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal<br>(Total of this page) | 9,358.53 |
| Total<br>(Report on Summary of Schedules) | 80,258.89 |

# EXHIBIT C

# Franklin Pacific Finance

1/21/2011

## Projected Cashflow Statement
### At Projected Court Confirmation Date of April 7, 2011

|  | Nov. 2010 -<br>Mar. 2011 |
|---|---|
| **Sources** | |
| Cash in DIP Accounts [a] | $585,786 |
| Less Borrower Reserve and Escrow Accounts [b] | ($207,681) |
| Monthly Cashflow | $470,935 |
| Sales / Dispositions / Refinances* | $11,751,998 |
| **Total Cash Sources** | **$12,601,037** |
| | |
| **Uses** | |
| Default Interest (April 1, 2010 - July 31, 2010) [c] | ($343,515) |
| Estimated Collection Costs | ($250,000) |
| Payment of Unsecured Creditors (FPF) | $0 |
| Payment of Unsecured Creditors (FPF Oak Trails) | $0 |
| Administrative Fees | ($170,897) |
| BMW Debt Service | ($299,103) |
| Non-BMW Debt Service | ($58,500) |
| Operating Expenses | ($195,000) |
| BMW Principal Paydown [d] | ($9,971,221) |
| Non-BMW Principal Paydown | $0 |
| Total CapEx, Taxes, Etc. | ($492,435) |
| **Total Cash Uses** | **($11,780,671)** |
| | |
| **Net Cash Available at Effective Date** | **$820,366** |

**Notes:**

* Includes DIP cash collateral account from Sunset Note to be released to BMW at closing.

(a) Balances as of October 31, 2010. Includes FPF Oak Trails DIP account.

(b) Includes the Sunset Crossing Reserve Account and Shalamar Tax and Security Deposit Liabilities.

(c) Per the Stipulation, BMW shall waive all default interest and late fees prior to March 31, 2010 and after July 31, 2010.

(d) Refelects the paydown of $300,000 received in October from the sale of three Oak Trails Units.

# Franklin Pacific Finance

1/26/2011

## *Projected Cashflow Statement*
### *At End of Loan Maturity of April 1, 2012*

|  | Sept 2010 –<br>Apr. 2012 |
|---|---|
| **Sources** | |
| Cash in DIP Accounts [(a)] | $585,786 |
| Less Borrower Reserve and Escrow Accounts [(b)] | ($207,681) |
| Monthly Cashflow | $1,601,620 |
| Sales / Dispositions / Refinances* | $40,439,832 |
| **Total Cash Sources** | **$42,419,556** |
| **Uses** | |
| Default Interest (April 1, 2010 - July 31, 2010) [(c)] | ($343,515) |
| Estimated Collection Costs | ($250,000) |
| Payment of Unsecured Creditors (FPF) | ($80,259) |
| Payment of Unsecured Creditors (FPF Oak Trails) | ($33,662) |
| Administrative Fees | ($170,897) |
| BMW Debt Service | ($623,283) |
| Non-BMW Debt Service | ($189,000) |
| Operating Expenses | ($776,268) |
| BMW Principal Paydown [(d)] | ($20,388,323) |
| Non-BMW Principal Paydown | ($5,326,072) |
| Total CapEx, Taxes, Etc. | ($3,067,815) |
| **Total Cash Uses** | **($31,249,094)** |
| **Net Cash Available at Loan Maturity** | **$11,170,462** |
| Plus 15 Units at OTV (owned free and clear) | $1,203,488 |
| **Total** | **$12,373,951** |

**Notes:**

*\* Includes DIP cash collateral account from Sunset Note to be released to BMW at closing.*

*(a) Balances as of October 31, 2010. Includes FPF Oak Trails DIP account.*

*(b) Includes the Sunset Crossing Reserve Account and Shalamar Tax and Security Deposit Liabilities.*

*(c) Per the Stipulation, BMW shall waive all default interest and late fees prior to March 31, 2010 and after July 31, 2010.*

*(d) Refelects the paydown of $300,000 received in October from the sale of three Oak Trails Units.*

| | Nov 2010 - Mar. 2011 | GRAND TOTAL |
|---|---|---|
| **RECURRING CASH SOURCES** | | |
| *Rents, Principal & Interest* | | |
| BMW Cash Collateral Subtotal | 274,245 | 1,099,368 |
| Unrestricted Cashflow Subtotal | 196,690 | 502,252 |
| *Total Recurring Sources* | 470,935 | 1,601,620 |
| **NON-RECURRING CASH SOURCES** | | |
| *Disposition/Refinances* | | |
| Bank Midwest Portfolio | 11,751,998 | 29,523,332 |
| Non-Bank Midwest Portfolio | - | 10,916,500 |
| *Total Sales/Refinances* | 11,751,998 | 40,439,832 |
| **TOTAL SOURCES** | 12,222,932 | 42,041,452 |
| **RECURRING CASH USES** | | |
| *Interest* | | |
| BMW P&I | (299,103) | (623,283) |
| Non- Bank Midwest P&I | (58,500) | (189,000) |
| *Total Interest* | (357,603) | (812,283) |
| *Asset Outflows - CapEx, TIs, Taxes, Insurance, Etc.* | | |
| Bank Midwest Portfolio | (471,602) | (2,953,972) |
| Non-Bank Midwest Portfolio | - | (38,844) |
| Legal | (20,833) | (75,000) |
| *Total* | (492,435) | (3,067,815) |
| *FPF Operations* | | |
| Payroll | (160,835) | (579,006) |
| General & Administrative | (34,165) | (197,262) |
| *Total FPF Operations* | (195,000) | (776,268) |
| **NON-RECURRING CASH USES** | | |
| *Paydown/Retirement of Debt* | | |
| Bank Midwest Portfolio | (9,971,221) | (20,388,323) |
| Non-Bank Midwest Portfolio | - | (5,326,072) |
| *Total Debt Paydown* | (9,971,221) | (25,714,394) |
| **TOTAL CASH USES** | (11,016,259) | (30,370,761) |
| *NET CASH SURPLUS / (DEFICIT)* | 1,206,673 | 11,670,691 |

**Franklin Pacific Finance**

*Cashflow Projections*

| | Nov-10 | Dec-10 | TOTAL 2010 |
|---|---|---|---|
| **RECURRING CASH SOURCES** | | | |
| *Rents, Principal & Interest* | | | |
| Drawbridge | - | - | - |
| National | 3,250 | 3,250 | 6,500 |
| Metro | 7,000 | 7,000 | 14,000 |
| Shalamar | 30,000 | 30,000 | 60,000 |
| Sunset Crossing | 42,031 | 42,031 | 84,062 |
| Villages | - | - | |
| BMW Cash Collateral Subtotal | 82,281 | 82,281 | 164,562 |
| | | | |
| 2nd Street (BMW) | - | - | - |
| Oak Trail Villas (BMW) | - | - | - |
| Aviation Application (1st Source) | - | - | - |
| Manhattan Beach (Chase) | 6,000 | 6,000 | 12,000 |
| Southern Data | 3,400 | 3,400 | 6,800 |
| Marson | - | - | - |
| Park 3000 (Net after Debt Service | 25,000 | 25,000 | 50,000 |
| HC Finance - Motti | 5,000 | 5,000 | 10,000 |
| HC Finance - Kamp | 618 | 618 | 1,236 |
| Unrestricted Cashflow Subtotal | 40,018 | 40,018 | 80,036 |
| | | | |
| *Total Recurring Sources* | 122,299 | 122,299 | 244,598 |
| **NON-RECURRING CASH SOURCES** | | | |
| *Disposition/Refinances* | | | |
| 2nd Street | - | - | - |
| Drawbridge | - | - | - |
| National | - | - | - |
| Metro | - | - | - |
| Oak Trail Villas (BMW) | - | - | - |
| Shalamar | - | - | - |
| Sunset Crossing | - | 5,500,000 | 5,500,000 |
| Villages | - | - | - |
| Park 3000 | - | - | - |
| Aviation Application (1st Source) | - | - | - |
| Manhattan Beach (Chase) | - | - | - |
| Marson | - | - | - |
| HC Finance - Motti | - | - | - |
| HC Finance - Kamp | - | - | - |
| | | | |
| *Total Sales/Refinances* | - | 5,500,000 | 5,500,000 |
| **TOTAL SOURCES** | 122,299 | 5,622,299 | 5,744,598 |

**Franklin Pacific Finance**    1/01/2011

*Cashflow Projections*

| | Nov-10 | Dec-10 | TOTAL 2010 |
|---|---|---|---|
| **RECURRING CASH USES** | | | |
| *Interest* | | | |
| BMW P&I | (80,040) | (63,576) | (143,617) |
| Aviation Application (1st Source) | (4,000) | (4,000) | (8,000) |
| Manhattan Beach (Chase) | (3,500) | (3,500) | (7,000) |
| *Total Interest* | (87,540) | (71,076) | (158,617) |
| | | | |
| *Asset Outflows - CapEx, Taxes, Insurance, Etc.* | | | |
| 2nd Street | | (50,000) | (50,000) |
| Drawbridge | | | - |
| National | (125) | (125) | (250) |
| Metro | - | | - |
| Oak Trail Villas (BMW) | (8,441) | (8,441) | (16,882) |
| Shalamar | - | - | - |
| Sunset Crossing | | | - |
| Villages | - | (3,000) | (3,000) |
| Aviation Application (1st Source) | | | - |
| Manhattan Beach (Chase) | | | - |
| LEGAL | (4,167) | (4,167) | (8,333) |
| *Total* | (12,733) | (65,733) | (78,466) |
| | | | |
| *FPF Operations* | | | |
| Payroll | (32,167) | (32,167) | (64,334) |
| General & Administrative | (5,233) | (5,233) | (10,466) |
| *Total FPF Operations* | (37,400) | (37,400) | (74,800) |
| | | | |
| **NON-RECURRING CASH USES** | | | |
| *Paydown/Retirement of Debt/Renewal Fees* | | | |
| 2nd Street | - | - | - |
| Drawbridge | - | - | - |
| National | - | - | - |
| Metro | - | - | - |
| Oak Trail Villas (BMW) | - | - | - |
| Shalamar | - | - | - |
| Sunset Crossing | - | (3,807,368) | (3,807,368) |
| Villages | - | - | - |
| Park 3000 | - | - | - |
| Aviation Application (1st Source) | | | - |
| Manhattan Beach (Chase) | | | - |
| *Total Debt Paydown* | - | (3,807,368) | (3,807,368) |
| | | | |
| **TOTAL CASH USES** | (137,673) | (3,981,577) | (4,119,250) |
| | | | |
| **Surplus/ (Deficit)** | (15,374) | 1,640,722 | 1,625,348 |

**Franklin Pacific Fina**

## Cashflow Projections

| | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECURRING CASH SOURCES** | | | | | | | | | | | | |
| *Rents, Principal & Interest* | | | | | | | | | | | | |
| Drawbridge | (26,567) | (17,078) | 32,578 | 43,463 | 60,617 | 17,049 | 89,436 | 34,090 | 57,237 | 122,526 | (25,877) | (18,711) |
| National | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 |
| Metro | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| Shalamar | 30,000 | 30,000 | 30,000 | - | - | - | - | - | - | - | - | - |
| Sunset Crossing | | | | | | | | | | | | |
| Villages | | | | | 9,143 | 9,143 | 9,143 | 9,143 | 9,143 | 9,143 | 9,143 | 9,143 |
| BMW Cash Collateral Subtotal | 13,683 | 23,172 | 72,828 | 53,713 | 80,011 | 36,443 | 108,829 | 53,484 | 76,631 | 141,919 | (6,484) | 682 |
| | | | | | | | | | | | | |
| 2nd Street (BMW) | - | - | - | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 22,500 | 22,500 |
| Oak Trail Villas (BMW) | - | - | - | - | - | - | - | - | - | - | - | - |
| Aviation Application (1st Source | - | - | - | - | - | - | - | - | - | - | - | - |
| Manhattan Beach (Chase) | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | - | - | - | - |
| Southern Data | 3,400 | 3,400 | | | | | | | | | | |
| Marson | - | - | - | - | - | - | | | | | | |
| Park 3000 (Net after Debt Servi | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| HC Finance - Motti | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| HC Finance - Kamp | 618 | 618 | 618 | 618 | 618 | 618 | 618 | 618 | 618 | 618 | 618 | 618 |
| Unrestricted Cashflow Subtotal | 40,018 | 40,018 | 36,618 | 51,618 | 51,618 | 51,618 | 51,618 | 51,618 | 45,618 | 53,118 | 53,118 | 53,118 |
| | | | | | | | | | | | | |
| *Total Recurring Sources* | 53,701 | 63,190 | 109,446 | 105,331 | 131,629 | 88,061 | 160,447 | 105,102 | 122,249 | 195,037 | 46,634 | 53,800 |
| **NON-RECURRING CASH SOU** | | | | | | | | | | | | |
| *Disposition/Refinances* | | | | | | | | | | | | |
| 2nd Street | - | - | - | - | - | - | - | - | - | - | - | 1,800,000 |
| Drawbridge | - | - | - | - | - | - | - | - | - | - | - | 950,000 |
| National | - | - | - | - | - | - | - | - | - | - | - | 500,000 |
| Metro | - | - | - | - | - | - | - | - | - | - | - | 500,000 |
| Oak Trail Villas (BMW) | - | 167,333 | 334,665 | 334,665 | 334,665 | 334,665 | 334,665 | 334,665 | 334,665 | 334,665 | 334,665 | 334,665 |
| Shalamar | - | - | 5,750,000 | - | - | - | - | - | - | - | - | - |
| Sunset Crossing | | | | | | | | | | | | |
| Villages | - | - | - | - | - | - | - | - | - | - | - | 1,100,000 |
| Park 3000 | - | - | - | - | - | - | - | - | - | - | - | 7,000,000 |
| Aviation Application (1st Source | - | - | - | - | - | - | - | - | - | - | - | 712,500 |
| Manhattan Beach (Chase) | - | - | - | - | - | - | - | 1,700,000 | - | - | - | - |
| Marson | - | - | - | - | - | 125,000 | - | - | - | - | - | - |
| HC Finance - Motti | - | - | - | - | - | - | - | - | - | - | - | - |
| HC Finance - Kamp | - | - | - | - | - | - | - | 250,000 | - | - | - | 500,000 |
| *Total Sales/Refinances* | - | 167,333 | 6,084,665 | 334,665 | 334,665 | 459,665 | 334,665 | 2,284,665 | 334,665 | 334,665 | 334,665 | 12,897,165 |
| **TOTAL SOURCES** | 53,701 | 230,523 | 6,194,111 | 439,996 | 466,294 | 547,726 | 495,112 | 2,389,767 | 456,914 | 529,702 | 381,299 | 12,950,965 |

**Franklin Pacific Fina**

*Cashflow Projections*

| | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECURRING CASH USES** | | | | | | | | | | | | |
| *Interest* | | | | | | | | | | | | |
| BMW P&I | (61,249) | (57,856) | (36,380) | (35,672) | (34,964) | (34,255) | (33,547) | (32,839) | (32,130) | (31,422) | (30,714) | (15,851) |
| Aviation Application (1st Source) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) | (11,000) |
| Manhattan Beach (Chase) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) | (3,500) |
| *Total Interest* | (75,749) | (72,356) | (50,880) | (50,172) | (49,464) | (48,755) | (48,047) | (47,339) | (46,630) | (45,922) | (45,214) | (30,351) |
| *Asset Outflows - CapEx, Taxes, .* | | | | | | | | | | | | |
| 2nd Street | | (50,000) | (50,000) | (50,000) | (38,000) | | (50,000) | (50,000) | (50,000) | (50,000) | | (50,428) |
| Drawbridge | | | (1,054) | (1,054) | (1,054) | (1,054) | (1,054) | (1,054) | (1,054) | (1,054) | (1,054) | (1,054) |
| National | (125) | (125) | (125) | (125) | (125) | (125) | (125) | (125) | (125) | (125) | (125) | (31,612) |
| Metro | - | | - | | - | | - | | - | | - | (37,080) |
| Oak Trail Villas (BMW) | (3,441) | (65,564) | (128,035) | (128,313) | (128,591) | (128,869) | (129,148) | (129,426) | (129,704) | (129,982) | (130,260) | (130,538) |
| Shalamar | - | | - | | - | | - | | - | | - | - |
| Sunset Crossing | | | | | | | | | | | | |
| Villages | - | | (103,000) | | | (3,000) | - | | (3,000) | | | (27,480) |
| Aviation Application (1st Source) | | | | | | | | | | | | |
| Manhattan Beach (Chase) | | | | | | | | | | | | (38,844) |
| LEGAL | (4,167) | (4,167) | (4,167) | (4,167) | (4,167) | (4,167) | (4,167) | (4,167) | (4,167) | (4,167) | (4,167) | (4,167) |
| *Total* | (7,733) | (119,856) | (286,381) | (183,659) | (171,937) | (137,215) | (184,493) | (184,772) | (188,050) | (185,328) | (135,606) | (321,202) |
| *FPF Operations* | | | | | | | | | | | | |
| Payroll | (32,167) | (32,167) | (32,167) | (32,167) | (32,167) | (32,167) | (32,167) | (32,167) | (32,167) | (32,167) | (32,167) | (32,167) |
| General & Administrative | (5,233) | (9,233) | (9,233) | (9,233) | (9,233) | (9,233) | (9,233) | (9,233) | (9,233) | (9,233) | (9,233) | (9,233) |
| *Total FPF Operations* | (37,400) | (41,400) | (41,400) | (41,400) | (41,400) | (41,400) | (41,400) | (41,400) | (41,400) | (41,400) | (41,400) | (41,400) |
| **NON-RECURRING CASH USE** | | | | | | | | | | | | |
| *Paydown/Retirement of Debt/Re.* | | | | | | | | | | | | |
| 2nd Street | - | - | - | - | - | - | - | - | - | - | - | (1,800,000) |
| Drawbridge | - | - | (1,105,103) | - | - | - | - | - | - | - | - | - |
| National | - | - | - | - | - | - | - | - | - | - | - | (891,000) |
| Metro | - | - | - | - | - | - | - | - | - | - | - | (225,570) |
| Oak Trail Villas (BMW) | - | (100,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) |
| Shalamar | - | - | (4,758,750) | - | - | - | - | - | - | - | - | - |
| Sunset Crossing | - | - | - | - | - | - | - | - | - | - | - | - |
| Villages | - | - | - | - | - | - | - | - | - | - | - | (1,080,000) |
| Park 3000 | - | - | - | - | - | - | - | - | - | - | - | (3,365,622) |
| Aviation Application (1st Source) | | | | | | | | | | | | (543,450) |
| Manhattan Beach (Chase) | | | | | | | | (1,417,000) | | | | - |
| *Total Debt Paydown* | - | (100,000) | (6,063,853) | (200,000) | (200,000) | (200,000) | (200,000) | (1,617,000) | (200,000) | (200,000) | (200,000) | (8,105,642) |
| **TOTAL CASH USES** | (120,882) | (333,612) | (6,442,515) | (475,231) | (462,801) | (427,371) | (473,940) | (1,890,510) | (476,080) | (472,650) | (422,219) | (8,498,595) |
| *Surplus/ (Deficit)* | (67,181) | (103,090) | (248,404) | (35,235) | 3,493 | 120,355 | 21,172 | 499,256 | (19,166) | 57,053 | (40,920) | 4,452,370 |

**Franklin Pacific Fina**

*Cashflow Projections*

| | TOTAL 2011 |
|---|---|
| **RECURRING CASH SOURCES** | |
| *Rents, Principal & Interest* | |
| Drawbridge | 368,763 |
| National | 39,000 |
| Metro | 84,000 |
| Shalamar | 90,000 |
| Sunset Crossing | - |
| Villages | 73,147 |
| **BMW Cash Collateral Subtotal** | **654,910** |
| | |
| 2nd Street (BMW) | 157,500 |
| Oak Trail Villas (BMW) | - |
| Aviation Application (1st Sourc | - |
| Manhattan Beach (Chase) | 48,000 |
| Southern Data | 6,800 |
| Marson | - |
| Park 3000 (Net after Debt Serv | 300,000 |
| HC Finance - Motti | 60,000 |
| HC Finance - Kamp | 7,416 |
| **Unrestricted Cashflow Subtotal** | **579,716** |
| | |
| *Total Recurring Sources* | **1,234,626** |
| **NON-RECURRING CASH SOU** | |
| *Disposition/Refinances* | |
| 2nd Street | 1,800,000 |
| Drawbridge | - |
| National | 950,000 |
| Metro | 500,000 |
| Oak Trail Villas (BMW) | 3,513,983 |
| Shalamar | 5,750,000 |
| Sunset Crossing | - |
| Villages | 1,100,000 |
| Park 3000 | 7,000,000 |
| Aviation Application (1st Sourc | 712,500 |
| Manhattan Beach (Chase) | 1,700,000 |
| Marson | 125,000 |
| HC Finance - Motti | - |
| HC Finance - Kamp | 750,000 |
| *Total Sales/Refinances* | **23,901,483** |
| **TOTAL SOURCES** | **25,136,108** |

**Franklin Pacific Fina**

*Cashflow Projections*

| | TOTAL 2011 |
|---|---|
| **RECURRING CASH USES** | |
| *Interest* | |
| BMW P&I | (436,878) |
| Aviation Application (1st Sourc | (132,000) |
| Manhattan Beach (Chase) | (42,000) |
| *Total Interest* | **(610,878)** |
| | |
| *Asset Outflows - CapEx, Taxes,* | |
| 2nd Street | (438,428) |
| Drawbridge | (10,542) |
| National | (32,987) |
| Metro | (37,080) |
| Oak Trail Villas (BMW) | (1,361,872) |
| Shalamar | - |
| Sunset Crossing | |
| Villages | (136,480) |
| Aviation Application (1st Sourc | |
| Manhattan Beach (Chase) | (38,844) |
| LEGAL | (50,000) |
| *Total* | **(2,106,232)** |
| | |
| *FPF Operations* | |
| Payroll | (386,004) |
| General & Administrative | (106,796) |
| *Total FPF Operations* | **(492,800)** |
| **NON-RECURRING CASH USE** | |
| *Paydown/Retirement of Debt/Re* | |
| 2nd Street | (1,800,000) |
| Drawbridge | (1,105,103) |
| National | (891,000) |
| Metro | (225,570) |
| Oak Trail Villas (BMW) | (2,100,000) |
| Shalamar | (4,758,750) |
| Sunset Crossing | - |
| Villages | (1,080,000) |
| Park 3000 | (3,365,622) |
| Aviation Application (1st Sourc | (543,450) |
| Manhattan Beach (Chase) | (1,417,000) |
| *Total Debt Paydown* | **(17,286,495)** |
| | |
| **TOTAL CASH USES** | **(20,496,406)** |
| | |
| **Surplus/ (Deficit)** | **4,639,702** |

**Franklin Pacific Fina**

*Cashflow Projections*

| | Jan-12 | Feb-12 | Mar-12 | Apr-12 | TOTAL 2012 | GRAND TOTAL |
|---|---|---|---|---|---|---|
| **RECURRING CASH SOURCES** | | | | | | |
| *Rents, Principal & Interest* | | | | | | |
| Drawbridge | (26,567) | (17,078) | 32,578 | 43,463 | 32,396 | 401,159 |
| National | - | - | - | - | - | 45,500 |
| Metro | | | | | - | 98,000 |
| Shalamar | - | - | - | - | - | 150,000 |
| Sunset Crossing | | | | | - | 84,062 |
| Villages | | | | | - | 73,147 |
| BMW Cash Collateral Subtotal | (26,567) | (17,078) | 32,578 | 43,463 | 32,396 | 851,868 |
| | | | | | | |
| 2nd Street (BMW) | 22,500 | 22,500 | 22,500 | 22,500 | 90,000 | 247,500 |
| Oak Trail Villas (BMW) | - | - | - | - | - | - |
| Aviation Application (1st Sourc | - | - | - | - | - | - |
| Manhattan Beach (Chase) | | | | | - | 60,000 |
| Southern Data | | | | | - | 13,600 |
| Marson | - | - | - | - | - | - |
| Park 3000 (Net after Debt Servi | | | | | - | 350,000 |
| HC Finance - Motti | | | | | - | 70,000 |
| HC Finance - Kamp | | | | | - | 8,652 |
| Unrestricted Cashflow Subtotal | 22,500 | 22,500 | 22,500 | 22,500 | 90,000 | 659,752 |
| | | | | | | |
| *Total Recurring Sources* | (4,067) | 5,422 | 55,078 | 65,963 | 122,396 | 1,511,620 |
| **NON-RECURRING CASH SOU** | | | | | | |
| *Disposition/Refinances* | | | | | | |
| 2nd Street | - | - | - | 2,500,000 | 2,500,000 | 4,300,000 |
| Drawbridge | - | - | - | 6,570,689 | 6,570,689 | 6,570,689 |
| National | - | - | - | - | - | 950,000 |
| Metro | - | - | - | - | - | 500,000 |
| Oak Trail Villas (BMW) | 334,665 | 334,665 | 334,665 | 334,665 | 1,338,660 | 4,852,643 |
| Shalamar | - | - | - | - | - | 5,750,000 |
| Sunset Crossing | - | - | - | - | - | 5,500,000 |
| Villages | - | - | - | - | - | 1,100,000 |
| Park 3000 | - | - | - | - | - | 7,000,000 |
| Aviation Application (1st Sourc | - | - | - | - | - | 712,500 |
| Manhattan Beach (Chase) | - | - | - | - | - | 1,700,000 |
| Marson | - | 125,000 | - | - | 125,000 | 250,000 |
| HC Finance - Motti | - | - | - | 504,000 | 504,000 | 504,000 |
| HC Finance - Kamp | - | - | - | - | - | 750,000 |
| *Total Sales/Refinances* | 334,665 | 459,665 | 334,665 | 9,909,354 | 11,038,349 | 40,439,832 |
| **TOTAL SOURCES** | 330,598 | 465,087 | 389,743 | 9,975,317 | 11,160,745 | 41,951,452 |

**Franklin Pacific Fina**

*Cashflow Projections*

| | Jan-12 | Feb-12 | Mar-12 | Apr-12 | TOTAL 2012 | GRAND TOTAL |
|---|---|---|---|---|---|---|
| **RECURRING CASH USES** | | | | | | |
| *Interest* | | | | | | |
| BMW P&I | (15,142) | (14,434) | (13,726) | 514 | (42,788) | (623,283) |
| Aviation Application (1st Source | | | | | - | (140,000) |
| Manhattan Beach (Chase) | | | | | - | (49,000) |
| *Total Interest* | (15,142) | (14,434) | (13,726) | 514 | (42,788) | (812,283) |
| | | | | | | |
| *Asset Outflows - CapEx, Taxes, .* | | | | | | |
| 2nd Street | | | | (5,000) | (5,000) | (493,428) |
| Drawbridge | (1,379) | (1,379) | (1,379) | (332,379) | (336,517) | (347,058) |
| National | | | | | - | (33,237) |
| Metro | - | - | - | - | - | (37,080) |
| Oak Trail Villas (BMW) | (130,816) | (131,094) | (131,373) | (131,651) | (524,934) | (1,903,689) |
| Shalamar | - | - | - | - | - | - |
| Sunset Crossing | | | | | | - |
| Villages | | | | | - | (139,480) |
| Aviation Application (1st Source | | | | | | - |
| Manhattan Beach (Chase) | | | | | | (38,844) |
| LEGAL | (4,167) | (4,167) | (4,167) | (4,167) | (16,667) | (75,000) |
| *Total* | (136,362) | (136,640) | (136,918) | (473,197) | (883,118) | (3,067,815) |
| | | | | | | |
| *FPF Operations* | | | | | | |
| Payroll | (32,167) | (32,167) | (32,167) | (32,167) | (128,668) | (579,006) |
| General & Administrative | (20,000) | (20,000) | (20,000) | (20,000) | (80,000) | (197,262) |
| *Total FPF Operations* | (52,167) | (52,167) | (52,167) | (52,167) | (208,668) | (776,268) |
| | | | | | | |
| **NON-RECURRING CASH USE** | | | | | | |
| *Paydown/Retirement of Debt/Re.* | | | | | | |
| 2nd Street | - | - | - | (1,906,322) | (1,906,322) | (3,706,322) |
| Drawbridge | - | - | - | (1,969,167) | (1,969,167) | (3,074,270) |
| National | - | - | - | - | - | (891,000) |
| Metro | - | - | - | - | - | (225,570) |
| Oak Trail Villas (BMW) | (200,000) | (200,000) | (200,000) | (145,043) | (745,043) | (2,845,043) |
| Shalamar | - | - | - | - | - | (4,758,750) |
| Sunset Crossing | - | - | - | - | - | (3,807,368) |
| Villages | - | - | - | - | - | (1,080,000) |
| Park 3000 | - | - | - | - | - | (3,365,622) |
| Aviation Application (1st Source | - | - | - | - | - | (543,450) |
| Manhattan Beach (Chase) | - | - | - | - | - | (1,417,000) |
| *Total Debt Paydown* | (200,000) | (200,000) | (200,000) | (4,020,531) | (4,620,531) | (25,714,394) |
| | | | | | | |
| **TOTAL CASH USES** | (403,672) | (403,241) | (402,811) | (4,545,381) | (5,755,105) | (30,370,761) |
| | | | | | | |
| *Surplus/ (Deficit)* | (73,074) | 61,846 | (13,068) | 5,429,936 | 5,405,640 | 11,580,691 |

# EXHIBIT D

### Franklin Pacific Finance, LLLP
### Consolidated Balance Sheet
#### As of December 31, 2009

|  |  | Total |
|---|---|---|
| **Assets** |  |  |
| Cash and restricted cash |  | $638,762 |
| Accounts receivable |  | 62,869 |
| Notes receivable |  | 15,366,212 |
| Investments in real estate |  | 22,452,881 |
| Investment in businesses |  | 345,675 |
| Equipment |  | 249,341 |
| Other assets |  | 168,809 |
|  | Total assets | $39,284,548 |
| **Liabilities** |  |  |
| Accounts payable |  | 270,205 |
| Liability related to restricted cash |  | 490,547 |
| Other liabilities |  | 312,779 |
| **Notes payable** |  |  |
| Notes payable on notes receivable |  | 9,046,730 |
| Notes payable on real estate |  | 16,092,310 |
| Note payable on businesses |  | 701,698 |
| Note payable on equipment |  | 167,089 |
| **Subtotal Notes Payable** |  | 26,007,827 |
|  | Total liabilities | 27,081,359 |
| **Equity** |  |  |
| Opening contributions |  | 350,813 |
| Additional paid in capital |  | 12,115,034 |
| Preferred return paid |  | (2,174,400) |
| Retained earnings |  | 4,423,182 |
| Distributions retained earnings |  | (2,619,591) |
| Net Income |  | 124,896 |
| Noncontrolling interests |  | (16,744) |
|  | Total Equity | 12,203,190 |
|  | Total Liabilities and equity | $39,284,549 |

# Franklin Pacific Finance, LLLP
## Consolidated Profit & Loss
### January – December 2009

|  | Total |
|---|---|
| **Revenue** | |
| Rental and lease income | $2,196,848 |
| Sale of condominium units | 933,984 |
| Interest income | 773,171 |
| Other income | 38,526 |
| **Total Revenue** | $3,942,529 |
| **Operating Expenses** | |
| Commerical asset operating expenses | 1,403,174 |
| Cost of Condominium sales | 706,483 |
| Payroll | 328,448 |
| Interest expense on performing notes | 283,953 |
| Office, rent and parking | 143,076 |
| Legal | 85,118 |
| Accounting and tax | 86,722 |
| Contract Labor | 44,341 |
| Insurance | 42,783 |
| Storage | 26,896 |
| License, Permits & Fees | 22,773 |
| HOA fees on condominium units | 10,964 |
| **Total Operating Expenses** | 3,184,730 |
| **Net Operating Income** | $757,799 |
| **Non-Operating Expenses** | |
| Interest expense on real estate and equipment | 364,143 |
| Leasing commissions | 38,384 |
| **Total Non-Operating Expenses** | 402,527 |
| **Net Income before Depreciation** | 355,272 |
| **Other Expenses** | |
| Depreciation | 230,376 |
| **Net Income** | 124,896 |

### Franklin Pacific Finance, LLLP
### Consolidated Statement of Cash Flows
### January - December 2009

|  | Total |
|---|---|
| **Operating activities** | |
| Net Income | 124,896 |
| | |
| **Adjustments to reconcile Net Income to Net Cash provided by operations:** | |
| Depreciation | 230,376 |
| Accounts receivable | (44,671) |
| Other assets | (88,867) |
| Accounts payable | 45,504 |
| Other liabilties | 166,767 |
| Liabilities related to restricted cash | 108,845 |
| Other | 3,929 |
| Net cash provided by operating activities | $546,779 |
| **Investing activities** | |
| Purchases and additions to real estate | (828,160) |
| Capitalized costs on non-performing loans | (255,768) |
| Principal payments on notes receivable | 109,348 |
| Net cash provided by investing activities | ($974,580) |
| | |
| **Financing activities** | |
| Principal additions to notes payable | 289,438 |
| Principal reductions to notes payable | (833,672) |
| Additional capital contribtions by members | 886,726 |
| Net cash provided by financing activities | $342,492 |
| | |
| | |
| Net cash increase for period | (85,309) |
| Cash at beginning of period | 724,071 |
| Cash at end of period* | $638,762 |
| | |
| * Restricted Portion | 523,035 |

# Franklin Pacific Finance, LLLP
## Consolidated Balance Sheet
### As of June 30, 2010

|  |  | Total |
|---|---|---:|
| **Assets** | | |
| Cash | | $1,239,879 |
| Restricted cash | | 605,760 |
| Accounts receivable | | 84,417 |
| Notes receivable | | 14,963,629 |
| Investments in real estate | | 22,672,894 |
| Investment in Aviation Application | | 1,106,111 |
| Depreciation | | (866,052) |
| Net Investment in Aviation Application | | 240,059 |
| Equipment | | 249,341 |
| Other assets | | 103,147 |
| | **Total assets** | **$40,159,124** |
| **Liabilities** | | |
| Accounts payable | | 222,848 |
| Liability related to restricted cash | | 625,198 |
| Other liabilities | | 156,527 |
| **Notes payable** | | |
| Notes payable on notes receivable | | 9,033,458 |
| Notes payable on real estate | | 15,973,846 |
| Note payable on businesses | | 655,066 |
| Note payable on equipment | | 167,089 |
| **Subtotal Notes Payable** | | **$25,829,459** |
| | **Total liabilities** | **$26,834,031** |
| **Equity** | | |
| Opening contributions | | 350,813 |
| Additional paid in capital | | 11,791,735 |
| Preferred return paid | | (2,174,400) |
| Retained earnings | | 4,546,323 |
| Distributions retained earnings | | (2,619,591) |
| Net Income | | 1,445,478 |
| Noncontrolling interests | | (15,266) |
| | **Total Equity** | **$13,325,093** |
| | **Total Liabilities and equity** | **$40,159,124** |

# Franklin Pacific Finance, LLLP
## Consolidated Profit & Loss
### January - June 2010

|  |  | Total |
|---|---|---|
| **Revenue** |  |  |
| Rental and lease income |  | $1,224,592 |
| Sale of condominium units |  | 193,500 |
| Interest income |  | 1,273,139 |
| Other income |  | 122,588 |
|  | **Total Revenue** | **$2,813,819** |
| **Operating Expenses** |  |  |
| Commerical asset operating expenses |  | 611,071 |
| Cost of condominium sales |  | 164,086 |
| Payroll |  | 178,559 |
| Interest expense on performing notes |  | 15,389 * |
| Office, rent and parking |  | 67,183 |
| Legal |  | 54,095 |
| Accounting and tax |  | 16,439 |
| Contract Labor |  | 8,150 |
| Insurance |  | 19,933 |
|  | **Total Operating Expenses** | **$1,139,144** |
|  | **Net Operating Income** | **$1,674,675** |
| **Non-Operating Income (Expenses)** |  |  |
| HOA fees on condominium units |  | 135 |
| Interest expense on real estate and equipment |  | (116,617) |
|  | **Total Non-Operating Expenses** | **($116,482)** |
|  | **Net Operating Income** | **$1,558,193** |
| Depreciation |  | 112,715 ** |
|  | **Net Income before Depreciation** | **$1,445,478** |

*\* - Interest expense is only reflected for the month of January 2010 for BMW & First Source assets. As the amount of the expense and probability of the timing of the payments is uncertain, we have not accrued amounts for February - June 2010. In addition, it is the companies policy to capitalize interest on non-performing assets. All interest paid related to those assets is capitalized to the basis of the assets and will be reflected in the gain upon exit.*

*\*\*Depreciation on some assets is booked at year end in conjunction with preparing tax returns.*

# **EXHIBIT E**

# Franklin Pacific Finance Portfolio
## *Basis and Value per Most Recent Appraisals*

| Asset Name | Fair Mkt. Value |
|---|---|
| **Bank Midwest** | |
| Drawbridge Inn | $7,500,000 |
| Sunset Crossing | $5,500,000 |
| Shalamar Apartments | $6,300,000 |
| Oak Trail Villas | $6,000,000 |
| 2nd Street | $5,250,000 |
| Villages | $1,200,000 |
| 3789 National | $950,000 |
| Metro Cinema | $500,000 |
| Total BMW Portfolio | $33,200,000 |
| | |
| 220 21st Place (WaMu Chase) | $1,700,000 |
| | |
| Bank Accounts as of Oct. 31, 2010 | $585,786 |
| Office Furniture | $20,069 |
| | |
| **Total Debtor Held Assets** | **$35,505,855** |
| | |
| **Non-Estate Assets:** | |
| Park 3000 (Wells Fargo) | $7,000,000 |
| Aviation Applications (1st Source) | $750,000 |
| Other Secured Assets | $7,750,000 |
| | |
| **HC Finance Portfolio** | |
| Kamp Motor Speedway | $1,150,000 |
| Motti Loan | $504,000 |
| Marson Loan | $300,000 |
| FDIC / Wells Loans | $150,000 |
| Total HC Finance | $2,104,000 |
| | |
| | |
| **Total Assets Outside of Ch. 11 Filings** | **$9,854,000** |
| | |
| **Consolidated FPF / HC Portfolio** | **$45,359,855** |

**EXHIBIT F**

# Franklin Pacific Finance Portfolio

*1/21/2011*

## *Liabilities*

### *As of Filing Date*

|  | Total |
|---|---|
| **Debtor and FPF Oak Trails Liabilities** |  |
| Bank Midwest Principal | $20,440,564 |
| Bank Midwest Default Interest [a] | $343,515 |
| Washington Mutual | $1,401,547 |
| Richardson ISD and Dallas County Tax Office [b] | $127,546 |
| Colette Franklin Tax Assessor | $35,653 |
| Kenton County and City of Fort Mitchell | $147,534 |
| Unsecured Claims (See Attached) | $80,259 |
| Unsecured Claims - FPF Oak Trails [b] | $28,615 |
| **Debtor and FPF Oak Trails Liabilities** | **$22,605,233** |
|  |  |
| **Non- Estate Liabilities** |  |
| Wells Fargo (Park 3000) | $3,365,622 |
| 1st Source (Aviation Applications) | $637,000 |
| **Total Related Liabilities** | **$4,002,622** |
|  |  |
| **Total Liabilities** | **$26,607,855** |

---

*(a) Assumes default interest is waived per the terms of the Stip.*

*(b) FPF Oak Trails is a debtor in case # 2:10-34386 and the disposition of its assets and
liabilities will be subject to court approval in that case.*

Case 2:10-bk-30727-VZ   Doc 13   Filed 06/07/10   Entered 06/07/10 18:16:58   Desc
Main Document   Page 17 of 42

B6F (Official Form 6F) (12/07)

In re   **Franklin Pacific Finance, LLLP**                                      Case No.   **LA 2:10-30727 VZ**
                                                    Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| Account No. Shalamar<br><br>A & M Cleaning<br>193 Valero Drive<br>San Marcos, TX 78666 | | | | Trade debt | | | | 405.94 |
| Account No.<br><br>Bonnett, Fairbourn, Freedman etc.<br>2901 N. Central Ave<br>Suite 1000<br>Phoenix, AZ 85012 | | | | various<br>legal services | | | | 8,500.00 |
| Account No. Shalamar<br><br>C&J Painting & Carpet Cleaning<br>POBox 200573<br>Austin, TX 78720 | | | | Trade debt | | | | 3,949.74 |
| Account No. xx1664<br><br>Classified Ventures<br>2583 Collections Center Drive<br>Chicago, IL 60693 | | | | Trade debt | | | | 528.00 |

|  | | | | | Subtotal<br>(Total of this page) | | | | 13,383.68 |

___4___  continuation sheets attached

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                      S/N:35655-100407   Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re    **Franklin Pacific Finance, LLLP**                                    Case No.   **LA 2:10-30727 VZ**
                                                Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. Shalamar<br><br>Cleaning Network<br>POBox 41975<br>Austin, TX 78704 | | - | Trade debt | | | | 952.00 |
| Account No. Shalamar<br><br>Cowboys Painting<br>15405 Connie Street, #B<br>Austin, TX 78728 | | - | Trade debt | | | | 4,687.29 |
| Account No. Shalamar<br><br>CSN Support Services<br>252 McGarity<br>Kyle, TX 78640 | | - | Trade debt | | | | 276.04 |
| Account No.<br><br>Enbody, Inc.<br>14431 Ventura Blvd<br>Suite 269<br>Sherman Oaks, CA 91423 | | - | various<br>Consulting Services | | | | 3,000.00 |
| Account No. Shalamar<br><br>Frank's Painting<br>110 N 1H 35<br>Suite 315-189<br>Round Rock, TX 78664 | | - | Trade debt | | | | 3,537.40 |

Sheet no. _1_ of _4_ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)     12,452.73

B6F (Official Form 6F) (12/07) - Cont.

In re    **Franklin Pacific Finance, LLLP**                                    Case No.  **LA 2:10-30727 VZ**
                                                    Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. Shalamar<br><br>Green Grass<br>5333 Randolph Blvd.<br>San Antonio, TX 78233 | | - | | | Trade debt | | | | 1,196.90 |
| Account No. Shalamar<br><br>Greensheet<br>POBox 140721<br>Austin, TX 78704 | | - | | | Trade debt | | | | 560.00 |
| Account No. xxx8493<br><br>HD Supply Facilities Maint. Group<br>10841 Scripps Summit Court<br>San Diego, CA 92131 | | - | | | Trade debt | | | | 4,285.44 |
| Account No. Shalamar<br><br>J4 Development<br>2808 Longhorn Blvd., Suite 306<br>Austin, TX 78758 | | - | | | Trade debt | | | | 757.12 |
| Account No. x3827<br><br>Premium Cuts Lawn Svc & Maint.<br>POBox 820108<br>Austin, TX 78708 | | - | | | Trade debt | | | | 3,957.88 |

Sheet no. __2__ of __4__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    10,757.34

B6F (Official Form 6F) (12/07) - Cont.

In re    __Franklin Pacific Finance, LLLP_____    Case No. __LA 2:10-30727 VZ___
                                                    Debtor

## SCHEDULE F – CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. Shalamar<br><br>Rasa Floors<br>POBox 619130<br>Dallas, TX 75261 | | - | Trade debt | | | | 26,799.50 |
| Account No.<br><br>SAA Architects<br>6083 Bristol Parkway<br>Culver City, CA 90230 | | - | various architectural services | | | | 3,500.00 |
| Account No. Shalamar<br><br>South Central Texas Apt. Blue Book<br>112 West Hopkins Street<br>San Marcos, TX 78666 | | - | Trade debt | | | | 2,405.00 |
| Account No. Shalamar<br><br>Sunset Carpet Care<br>POBox 142342<br>Austin, TX 78714 | | - | Trade debt | | | | 97.38 |
| Account No. xx9488<br><br>Wilmar<br>POBox 404284<br>Atlanta, GA 30384 | | - | Trade debt | | | | 1,504.73 |

Sheet no. _3_ of _4_ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    34,306.61

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

BSF (Official Form 6F) (12/07) - Cont.

In re   **Franklin Pacific Finance, LLLP**                                    Case No.   **LA 2:10-30727 VZ**
                                          Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxxxx8888<br><br>**Worldwide Pest Control**<br>**5808 1H 10 West**<br>**San Antonio, TX 78201** | | - | Trade debt | | | | 161.11 |
| Account No.<br><br>**Wyndeite & Gagnon**<br>**4800 N. Scottsdale Rd.**<br>**Suite 1400**<br>**Scottsdale, AZ 85251** | | - | various<br>accounting services | | | | 9,197.42 |
| Account No.<br><br><br> | | | | | | | |
| Account No.<br><br><br> | | | | | | | |
| Account No.<br><br><br> | | | | | | | |

Sheet no. _4_ of _4_ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal<br>(Total of this page) | 9,358.53 |
| Total<br>(Report on Summary of Schedules) | 80,258.89 |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

# EXHIBIT G

**FPF Unique Qualifications**

FPF is uniquely qualified to manage the portfolio based upon the successful track record of the firm and its key officers and its intimate familiarity with the specific assets and the issues related to them. FPF has owned and managed the assets within the portfolio since 2005. In regards to real property, FPF has become an expert in the specific product types, the geographic submarkets and the most capable third-parties (brokers and property mangers) of each property. In regards to loans and leases, FPF has built strong relationships with its Borrowers and Tenants that make it the best manager of such property. Its understanding of the tenants their issues are critical to keeping a current payment stream.

Commencing in 1994 with KWP Financial and currently at Franklin Pacific Finance, Mr. Collias as manager has never posted a loss on an annual basis. FPF acquires distressed commercial real estate loans from financial institutions and the Federal Government. The challenges of this business usually include the foreclosure of real estate, the curing of problems including but not limited to completion of construction, environmental remediation, leasing and marketing and ultimately the successful sale of the asset.

A bio of the officers of FPF is found below:

**Stephen J. Collias, President**

Mr. Collias founded Franklin Pacific Finance in November of 2004. Previously, he founded KWP Financial in 1994 to capitalize on the failed S&Ls of late 1980's. As President, he grew the company's portfolio to over $135MM in debt obligations. Prior to KWP, Mr. Collias served as VP-Development for Pacific West and as President of S.J. Collias Co., his own industrial development firm. Previously, Mr. Collias served as Project Manager of Emkay Development based in Phoenix, a Morrison Knudsen subsidiary. Mr. Collias received his BA in Finance from Boise State University.

**Marc P. Heenan, Senior Vice President**

Mr. Heenan joined FPF in 2005 and has worked with Mr. Collias since 1999. Mr. Heenan's primary responsibilities include new deal sourcing, underwriting, bank reporting, loan servicing, asset management (loans and REO) and closings. At KWP Financial (1999-2004), Mr. Heenan helped purchase and manage over $45MM of loans (principal balance). Prior to KWP, he served as a financial analyst for global investment banking firm Merrill Lynch. Mr. Heenan holds an MBA from the Anderson School of Business at UCLA and a BA from UCLA.

If you need more FPF see below:

FPF was co-founded in 2004 as a Nevada Limited Liability Limited Partnership (LLLP) between Gary L. Hall and Stephen J. Collias.

- Mr. Collias, President of FPF developed a 20-year track record of success with the first 10-years devoted to Arizona real estate development and the second phase as President of KWP Financial, a Kennedy Wilson subsidiary.

- At KWP, Mr. Collias was directly responsible for the acquisition and recovery of $135MM of note obligations purchased for $66MM. This portfolio generated revenues of $30MM and net profit of $17MM.

- At KWP, Mr. Collias was able to secure a $30MM Senior Credit facility from Wells Fargo Foothill.

- FPF has invested $38.0MM in its first 26 months, purchasing 40 loans, originating four loans and directly investing in five real estate investments.

- To date, FPF has collected $22.0MM with Expected Remaining Collections (ERC) of $37.3MM

**EXHIBIT H**

B6G (Official Form 6G) (12/07)

In re    **Franklin Pacific Finance, LLLP**                                      Case No.   **LA 2:10-30727 VZ**
_____
                                   Debtor

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| **ANB Special Assets LLC** **102 W. Moore Ave.** **Terrell, TX 75160** | **Lease for Theater Equipment** **UCC-1** **Colleyville, TX** |
| **CA-429 Santa Monica Limited Partnership** **DE** | **Landlord of 429 Santa Monica Blvd.** **(5-1-10) 9-1-10 to 8-31-15** |
| **Capstone Management** **210 Barton Springs Rd.** **Suite 300** **Austin, TX 78704** | **Real Estate Managment** **Shalamar Apartments** |
| **Century 21 All-Pro** **6789 N. National Dr.** **Kansas City, MO 64152** | **broker listing agreement** **sfr @ 6789 N. National Dr.** **Kansas City, MO** |
| **Integrated Data** **220 21st Place** **Manhattan Beach, CA 90266** | **lease of sfr** **220 21st Place** **Manhattan Beach, CA** |
| **Sandra Green** **6789 N. National Dr.** **Kansas City, MO 64152** | **real property lease** **sfr 6789 N. National Dr.** **Parkville, MO** |

0
_____ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                   Best Case Bankruptcy

| In re:<br><br>FRANKLIN PACIFIC FINANCE, LLLP<br><br>Debtor(s). | CHAPTER  11<br><br>CASE NUMBER  2:10-bk-30727-VZ |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

506 Santa Monica Blvd., Suite 200, Santa Monica, CA 90401

A true and correct copy of the foregoing document described  **DEBTORS PROPOSED DISCLOSURE STATEMENT AND PLAN REORGANIZATION, AS AMENDED JANUARY 28, 2011** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  1/28/11 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

    Leslie A Cohen  leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com
    Sheri Kanesaka   kanesaka@gmail.com
    Dare Law    dare.law@usdoj.gov
    William D May   dp@srwadelaw.com
    Hal M Mersel    mark.mersel@bryancave.com
    United States Trustee (LA)   ustpregion16.la.ecf@usdoj.gov
    Stephen R Wade   dp@srwadelaw.com

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On  1/28/11    I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 1/28/11 | Brian Link | /s/ Brian Link |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

| In re:<br><br>FRANKLIN PACIFIC FINANCE, LLLP<br><br><br><br>Debtor(s). | |
|---|---|
| | CHAPTER: 11 |
| | CASE NUMBER: 2:10-bk-30727-VZ |

## Served By Overnight Service:

Hon. Vincent Zurzolo
US Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

## Served By U.S. Mail:

<u>Debtor</u>
Franklin Pacific Finance, LLLP
429 Santa Monica Blvd., Suite 625
Santa Monica, CA 90401

<u>U.S. Trustee</u>
Dare Law
Office of United States Trustee
725 S Figueroa Street, 26th Floor
Los Angeles, CA 90017

Securities Exchange Commission
450 5th Street, NW
Washington, DC 20549

Securities Exchange Commission
5670 Wilshire Blvd, 11th Floor
Los Angeles, CA 90036

<u>Special Notice:</u>
City of Colleyville, Grapevine-Colleyville ISD
c/o Elizabeth Banda Calvo
Perdue, Brandon, Fielder, Collins & Mott
P O Box 13430
Arlington TX 76094-0430

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                          **F 9021-1.1**