Leslie A. Cohen, Esq. (SBN: 93698)
leslie@lesliecohenlaw.com
J'aime K. Williams Esq. (SBN 261148)
jaime@lesliecohenlaw.com
LESLIE COHEN LAW, PC
506 Santa Monica Blvd., Suite 200
Santa Monica, CA 90401
Telephone: (310) 394-5900
Facsimile: (310) 394-9280

Attorneys for Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>FRANKLIN PACIFIC FINANCE, LLLP<br><br><br>Debtor and<br>Debtor in Possession | Case No. 2:10-bk-30727-VZ<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR CONFIRMATION OF THE CHAPTER 11 PLAN, AS AMENDED DATED FEBRUARY 11, 2011; DECLARATION OF STEPHEN COLLIAS IN SUPPORT THEREOF; DECLARATION OF J'AIME WILLIAMS AND BALLOT TABULATION**<br><br><u>Confirmation Hearing</u>:<br>Date:    April 7, 2011<br>Time:    1:30 p.m.<br>Place:    Courtroom "1368" |

## TABLE OF CONTENTS

NOTICE ............................................................................................................................................i

MOTION

    I.   INTRODUCTION ................................................................................................1

    II.  THE PLAN COMPLIES WITH ALL OF THE APPLICABLE PROVISIONS OF BANKRUPTCY CODE § 1129(A) AND (D) ..................................................................1

        A.  The Plan Complies with Bankruptcy Code § 1129(a)(1) ................................................1

            i.   The Plan Properly Classifies Claims and Interests – Bankruptcy Code§ 1122........2

            ii.  The Plan Includes Mandatory Provisions Consistent with Bankruptcy Code § 1123 ...................................................................................................................3

           iii.  The Plan Includes Permissive Provisions Consistent with Bankruptcy Code § 1123 ...................................................................................................................4

        B.  The Proponents Have Complied with the Applicable Provisions of Bankruptcy Code § 1129(a)(2) ..................................................................................................................6

        C.  The Plan is Proposed in Good Faith - Bankruptcy Code § 1129(a)(3)............................ 7

        D.  Any and All Compensation of Professionals Will Be Made Pursuant to Court Supervision as Required by Bankruptcy Code § 1129(a)(4) ..................................................................8

        E.  The Post-Confirmation Management Was Fully Disclosed and Is in the Best Interest of the Estate as Required by Bankruptcy Code § 1129(a)(5) .................................................. 8

        F.  The Plan Does Not Require Approval of Any Regulatory Commission -Bankruptcy Code § 1129(a)(6) .................................................................................................................. 9

        G.  The Plan Meets the "Best Interest of Creditors" Test - Bankruptcy Code § 1129(a)(7) ................................................................................................................................... 9

        H.  Acceptance of the Plan - Bankruptcy Code § 1129(a)(8) .......................................... 11

        I.   Administrative Expenses and Priority Claimants Are Treated Appropriately Under the Plan - Bankruptcy Code § 1129(a)(9) ............................................................................... 12

        J.   The Plan Has Been Accepted by at Least One Impaired Class – Bankruptcy Code § 1129(a)(10) ................................................................................................................ 12

        K.  The Plan Is Feasible - Bankruptcy Code § 1129(a)(11) ............................................. 12

        L.   All Bankruptcy Fees Will Have Been Paid by Confirmation – Bankruptcy Code § 1129(a)(12) ................................................................................................................ 13

        M.  The Debtor Has No Retirement Benefits - Bankruptcy Code § 1129(a)(13) .................... 13

        N.  The Plan Satisfies the Cram-Down Requirements of Bankruptcy Code §1129(b)(2)(A) .... 13

        O.  The Principal Purpose of the Plan is Not Avoidance of Tax or Securities Act Obligations— Bankruptcy Code § 1129(d)....................................................................................16

    III.  CONCLUSION.................................................................................................16

DECLARATION OF STEPHEN COLLIAS.................................................................................17

DECLARATION OF J'AIME WILLIAMS AND BALLOT TABULATION.................................................26

1

# TABLE OF AUTHORITIES

**CASES**

2

*Andrew v. Coopersmith*
*(In re Downtown Inv. Club III),*

3

89 B.R. 59, 65 (9th Cir. B.A.P. 1988) ................................................................. 6

4

*Idaho Dep't of Lands v. Arnold (In re Arnold),*
806 F.2d 937, 940 (9th Cir. 1986) ............................................................. 10,12

5

*In re Butler,*
42 B.R. 777, 782 (Bankr. E.D. Ark. 1984) ....................................................... 6

6

*In re Club Assocs.,*
107 B.R. 385, 400 (Bankr. N.D. Ga. 1989) ..................................................... 14

7

*In re Crowthers McCall Pattern, Inc.,*
120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990).................................................... 9

8

*In re Economy Cast Stone Co.,*
16 B.R. 647, 652 (Bankr. E.D. Va. 1981).................................................... 14

9

*In re Guilford Telecasters, Inc.,*
128 B.R. 622, 628 (Bankr. M.D. N.C. 1991) .............................................. 14

10

*In re Hoff,*
54 B.R. 746, 750-51 (Bankr. D.N.D. 1985)................................................. 6

11

*In re Jartran, Inc.,*
44 B.R. 331, 383 (Bankr. N.D. Ill. 1984) .................................................. 14

12

*In re Mason & Dixon Lines, Inc.,*
63 B.R. at 176, 183 (Bankr. M.D.N.C. 1986).............................................. 9

13

*In re Pine Lake Village Apartment Co.,*
19 B.R. 819, 831 (Bankr. S.D.N.Y. 1982)................................................. 14

14

*In re Texaco, Inc.,*
84 B.R. 893, 906-07 (Bankr. S.D.N.Y 1988)................................................. 8

15

*In re Toy & Sports Warehouse, Inc.,*
37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984)................................................. 2

16

*In re U.S. Truck Co., Inc.,*
47 B.R. 932, 940 (E.D. Mich. 1985)........................................................ 14

17

*In re Victory Constr. Co., Inc.,*
42 B.R. 145, 151 (Bankr. C.D. Cal. 1984).............................................. 9

18

*Jasik v. Conrad (In re Jasik),*
727 F.2d 1379, 1383 (5th Cir. 1984) ...................................................... 7

19

*Kane v. Johns-Manville Corp.,*
843 F.2d 636, 648-49 (2d Cir. 1988) .................................................. 1,7

20

*New York Life Ins. Co. v. Chase Manhattan Bank, N.A. (In re Texaco Inc.),*
85 B.R. 934, 939 (Bankr. S.D.N.Y. 1988).............................................. 6

21

*Ryan v. Louis (In re Corey),*
892 F.2d 829, 835 (9th Cir. 1989) ....................................................... 7

22

*Stolrow v. Stolrow's, Inc. (In re Stolrow's Inc.),*
84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) ........................................ 7

23

*Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.),*
779 F.2d 1456, 1460 (10th Cir. 1985) ............................................. 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATUTES

11 U.S.C. §§ 101 ........................................................................................................ 1,12
1123 ........................................................................................................................... passim
Bankruptcy Code section 1126(c) ........................................................................... 12
Bankruptcy Code section 1129(a) and (d) .............................................................. passim
Bankruptcy Code section 365 ................................................................................. 9
Bankruptcy Code sections 1122 ............................................................................. passim
section 1114 of this title .......................................................................................... 13
section 1125 of the Bankruptcy Code ..................................................................... 6,7
section 502 ............................................................................................................... 11
section 507(a) of the Bankruptcy Code .................................................................. 3

## OTHER AUTHORITIES

5 *Collier on Bankruptcy*
¶ 1129.03, at 1129-50 (15th ed. rev'd) .................................................................... 14
7 Collier on Bankruptcy,
1129.03[1] (15th ed. rev.) ....................................................................................... 2,6
H.R. Rep. No. 95-595,
95th Cong., 1st Sess. 412 (1977) ............................................................................ 1,6
S. Rep. No. 95-989,
9th Cong., 2d Sess. 126 (1978) ............................................................................... 1,6

## RULES

Bankruptcy Rule 3020(b)(2) .................................................................................... 7

TO THE HONORABLE VINCENT ZURZOLO, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL ENTITIES ENTITLED TO SPECIAL NOTICE:

PLEASE TAKE NOTICE that a hearing will be held on April 7, 2011 at 1:30 p.m., before the Honorable Vincent P. Zurzolo, United States Bankruptcy Judge, in Courtroom 1368 at 255 E. Temple Street, Los Angeles, California, to consider the motion ("Motion") of Franklin Pacific Finance, LLLP ("Debtor"), the debtor and debtor in possession in the above-captioned bankruptcy case, for an order confirming its Chapter 11 Plan, As Amended January 28, 2011 (the "Plan")

PLEASE TAKE FURTHER NOTICE that the Motion is based on the attached Memorandum of Points and Authorities and the Declarations thereto, all other matters of which this Court may properly take judicial notice, and such further evidence and argument that may be presented to the Court at or before a hearing on this matter.

PLEASE TAKE FURTHER NOTICE THAT pursuant to the Court's order, this Motion is being served only on 1) those parties who voted on the Plan, 2) those parties who filed an objection to the Plan, 3) counsel for Bank Midwest N.A., 4) the United States Trustee and 5) the Honorable Vincent Zurzolo.

WHEREFORE, the Debtor requests that this Court enter an Order confirming its Plan and for such other and further relief as may be just and proper.

Dated: March 14, 2011

LESLIE COHEN LAW PC


By      /s/ Leslie A. Cohen
                        Leslie A. Cohen
                        Attorneys for Debtor and Debtor in Possession

i.

I.      INTRODUCTION

Franklin Pacific Finance, LLP, debtor and debtor in possession in the above-captioned case ("Debtor"), hereby moves (the "Motion") the Court for an order confirming its Chapter 11 Plan, As Amended January 28, 2011 (the "Plan"). As described in Debtor's Disclosure Statement, As Amended January 28, 2011 ("Disclosure Statement"), the Plan provides for Debtor's reorganization through restructuring of its debts and continued operations.

As demonstrated by the Ballot Summary Declaration of J'aime Williams attached hereto, all ballots received have been in favor of the Plan.  The Debtor did receive one objection to confirmation of the Plan from Deutsche Bank on behalf of Washington Mutual ("Wamu");  however, this creditor did not oppose the Plan.  Further, the Debtor believes it will resolve the issues related to this objection prior to confirmation, and that Wamu will withdraw its objection.

This Motion, supported by the Declaration of Stephen Collias attached hereto, and the Ballot Summary Declaration, present grounds for confirmation of the Plan.  Together, these documents demonstrate that the Plan complies with the applicable provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and the applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and provide the legal and evidentiary basis necessary for this Court to confirm the Plan pursuant to Bankruptcy Code § 1129.

II.      THE PLAN COMPLIES WITH ALL OF THE APPLICABLE PROVISIONS OF BANKRUPTCY CODE § 1129(A) AND (D)

A.      The Plan Complies with Bankruptcy code § 1129(a)(1)

Bankruptcy Code § 1129(a) provides that a court may confirm a plan only if all requirements of section 1129 are met, including that "[t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). The legislative history of section 1129(a)(1) explains that this provision incorporates the requirements of Bankruptcy Code sections 1122 and 1123, which govern classifications of claims and interests and the contents of a plan of reorganization. H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 95-989, 9th Cong., 2d Sess. 126 (1978). See Kane v. Johns-Manville Corp., 843 F.2d

636, 648-49 (2d Cir. 1988); In re Toy & Sports Warehouse, Inc., 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984); 7

Collier on Bankruptcy, 1129.03[1] (15th ed. rev.). The Plan satisfies these requirements.

1.    *The Plan Properly Classifies Claims and Interests – Bankruptcy Code § 1122*

Bankruptcy Code § 1122(a) requires that a plan "place a claim or an interest in a particular class

only if such claim or interest is substantially similar to other claims or interests of such class." The Plan

contains 5 classes of Claims and one class of Interests. As discussed below, the Debtor submits that the

Plan's classification of Claims and Interests is appropriate under the Bankruptcy Code.

a.    Class 1 consists of 8 sub-classes (Classes 1A – 1H) of secured real property tax
claims.  These claims are not similar to the secured claims of Debtor's lenders, and are
therefore in a separate class from the lenders.  As each claim is related to a different
real property asset, the claims have been divided into sub-classes 1A – 1H. [1]

b.    Class 2 consists of the two secured claims of Washington Mutual Bank N.A. ("Wamu"),
one of Debtor's prepetition secured lenders, on Debtor's Manhattan Beach property.
Sub-class 2A consists of Wamu's first trust deed and Sub-class 2B consists of Wamu's
second trust deed.  The secured claims of Wamu are  different and in a separate class
from Debtor's other secured lender, Bank Midwest.

c.    Class 3 consists of the secured claim of Bank Midwest N.A., Debtor's other prepetition
secured lender.   Bank Midwest's claim is secured by several of Debtor's real property
assets, other than the Manhattan Beach property, and pursuant to the court-approved
stipulation, Bank Midwest's claims on the properties have been settled and will be
cross-collateralized under the terms of the settlement and the Plan.

d.    Class 4 consists of all General Unsecured Claims.  Each of the General Unsecured
Claims is substantially similar to one another for classification purposes.

e.    Class 5 consists of Insider Claims.  The Debtor does not have any insider claims.

---

[1] Sub-class 1A consists of the secured real property taxes on Oak Trail Villas, which is an asset of FPF Oak
Trails.  FPF Oak Trails is a debtor in case # 2:10-bk-34386 and the disposition of its assets and liabilities will
be subject to court approval in that case.

f.   Class 6 consists of Shareholder Interests, each of which are held by Stephen Collias, Gary Hall and Franklin Finance and all of which are substantially similar.

2.   *The Plan Includes Mandatory and Permissive Provisions Consistent with Bankruptcy Code § 1123*

Bankruptcy Code section 1123(a) sets forth certain provisions that a corporate debtor's plan must contain, as follows:

a.   Paragraph (1) of section 1123(a) requires that a plan designate classes of claims other than claims of a priority specified in paragraphs 2, 3, and 8 of section 507(a) of the Bankruptcy Code. Article IX sections (d)-(i) of the Plan satisfy this requirement by designating all Classes of Claims other than the specified claims, which are identified in the Plan as Administrative Claims and Priority Tax Claims in Article IX sections (b)-(c).

b.   Paragraph (2) of section 1123(a) requires that a plan specify those classes of claims or interests that are not impaired. All classes of creditors are impaired under the Plan ther than Class 5, which has no members.

c.   Paragraph (3) of section 1123(a) requires that a plan specify the treatment of any class of claims or interests that is impaired under the plan. Article IX sections (d)-(g) of the Plan specifies the treatment of Classes 1, 2, 3 and 4, which are impaired under the Plan.

d.   Paragraph (4) of section 1123(a) requires that a plan provide the same treatment for each claim or interest of a particular class, unless the holder agrees to a less favorable treatment of such particular claim or interest. As shown by IX sections (d)-(g), the Plan provides for the same treatment of claims and interests within each Class and Sub-Class.

e.   Paragraph (5) of section 1123(a) requires that a plan provide adequate means for its implementation. Articles X - XV of the Plan, as well as Exhibit C to the Plan, describe the means for the Plan's implementation. Among other things, the Plan contains a full analysis of the Debtor's assets, and discloses the sources of the payments required under the Plan. The Plan further provides information on the post-petition management of the Debtor and establishes the Debtor as the Disbursing Agent for distributions under

the Plan.    Wamu has filed an objection to the Plan, claiming that the Plan fails to comply with section 1123(a) (5) of the Bankruptcy Code because it does not discuss how Debtor will pay Wamu's claim as described. This allegation is unfounded and without merit as is demonstrated by the ample financial information incorporated into the Plan.

f.  Paragraph (6) of section 1123(a) requires that a plan provide for the inclusion in the charter of a corporate debtor a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes. Any order confirming the Plan will contain such a provisions and the Reorganized Debtor's charter will be amended to so state.

g.  Paragraph (7) of section 1123(a) requires that a plan contain only provisions that are consistent with the interests of creditors, equity security holders and public policy with respect to the manner of selection of any officer, director or trustee under the plan and any successor thereto. The Debtor asserts that the Plan fulfills this requirement. Stephen Collias and Gary Hill, who are the Debtor's current officers and directors, have owned and operated the Debtor from the time of its formation. Mr. Collias and Mr. Hill are well-qualified and the best choice to serve as the Reorganized Debtor's officers and directors. Each has an extensive knowledge of the Debtor's business, and in particular, Mr. Collias has guided the Debtor through its reorganization, restructured the Debtor's business and, through his efforts, have improved the Debtor's financial condition and operating performance in order to enable the Debtor to propose the Plan. Mr. Collias' experience with the Debtor and its restructuring make his continued involvement with the Reorganized Debtor invaluable and in the best interest of Creditors and other parties in interest.

h.  Paragraph (8) of section 1123(a) applies to cases involving individuals and, therefore, is not applicable to this Case.

3.    *The Plan Contains Permissive Provisions Consistent with Bankruptcy Code § 1123(b)*

Bankruptcy Code section 1123(b) specifies certain permissive provisions that may appear in a plan:

a.    Paragraph (1) of section 1123(b) provides that a plan may impair or leave unimpaired any class of claims, whether secured or unsecured. Article IX of the Plan specifies the treatment of each Class under the Plan.

b.    Paragraph (2) of section 1123(b) specifies that, subject to Bankruptcy Code section 365, a plan may provide for the assumption, rejection or assignment of any executory contract or unexpired lease not previously rejected. Article XVI of the Plan contains such provisions.

c.    Paragraph (3) of section 1123(b) specifies that a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate" or "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." Article XIX section (d) of the Plan contains such provisions.

d.    Paragraph (4) of section 1123(b) specifies that a plan may provide for the sale of all or substantially all of the property of the estates, and the distribution of the proceeds of such sale among holders of claims or interests. This provision is not applicable to this reorganization Plan.

e.    Paragraph (5) of section 1123(b) allows a plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." Article IX sections (c)-(g) of the Plan contains provisions which permissibly modify the rights of holders of secured and unsecured claims. Wamu has filed an objection to the Plan, asserting that the Plan fails to comply with section 1123(b)(5) of the Bankruptcy Code because it does not provide evidence in support of the Debtor's valuations of the Manhattan Beach property. This allegation is unfounded and without merit as Article XIV at page 71 describes in detail the source and comparables for Debtor's valuation of this property.  Moreover, Wamu is

1    incorrect in its assertion that the Debtor sought to reduce the principal on its loan under

2    the Plan.

3        f.    Paragraph (6) of section 1123(b) specifies that a plan may include any other provisions

4    not inconsistent with the applicable provisions of the Bankruptcy Code. The Plan

5    contains many such provisions which are standard in chapter 11 plans. The Plan

6    contains various definitions consistent with the purposes of the Bankruptcy Code.

7    Based upon the foregoing, the Debtor respectfully submits that the Plan complies with the provisions of

8    Bankruptcy Code sections 1122 and 1123 and, therefore, complies with Bankruptcy Code section

9    1129(a)(1).

10   B.    **The Proponents Have Complied with the Applicable Provisions of Bankruptcy Code §**
         **1129(a)(2)**

11

12        Section 1129(a)(2) of the Bankruptcy Code provides that a court may confirm a plan only if "[t]he

13   proponent of the plan complies with the applicable provisions of this title." The principal purpose of this

     subsection is to assure that the plan proponent has complied with the requirements of section 1125 of the

14   Bankruptcy Code in the solicitation of acceptances to the plan. In re Texaco, Inc., 84 B.R. 893, 906-07

15   (Bankr. S.D.N.Y 1988); In re Hoff, 54 B.R. 746, 750-51 (Bankr. D.N.D. 1985); In re Butler, 42 B.R. 777, 782

16   (Bankr. E.D. Ark. 1984); see also, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 95-

17   989, 95th Cong. 2d Sess. 126 (1978); 7 Collier on Bankruptcy, 1129.03[2] (15th ed. rev.); Andrew v.

18   Coopersmith (In re Downtown Inv. Club III), 89 B.R. 59, 65 (9th Cir. B.A.P. 1988). Bankruptcy Code section

19   1125(b) provides, in relevant part, that:

20

21        An acceptance or rejection of a plan may not be solicited after the commencement
         of the case under this title from a holder of a claim or interest with respect to such
22        claim or interest, unless, at that time of or before such solicitation, there is
         transmitted to such holder the plan or a summary of the plan, and a written
23        disclosure statement approved, after notice and hearing, by the court as
         containing adequate information
24        11 U.S.C. § 1125(b).

25        On February 1, 2011, the Court entered its order approving the Disclosure Statement (the

26   Disclosure Statement Order") (Docket No. 169) filed in support of the Plan. Pursuant to the Disclosure

27   Statement Order, the Court determined that the Disclosure Statement contained "adequate information" as

28   that term is defined in section 1125 of the Bankruptcy Code. Also pursuant to the Disclosure Statement

6

Order, the Court approved solicitation, notice and voting procedures with respect to the solicitation of acceptances of the Plan (the "Solicitation Procedures"). Pursuant to the Solicitation Procedures, the Court required the Debtor to serve a copy of the Disclosure Statement and Plan, together with the Notice and the Ballot (the "Solicitation Package"), on all holders of Claims and on all interested parties. The Debtor complied with the Solicitation Procedures as evidenced by the proofs of service on file with the Court. No solicitation of acceptances of the Plan occurred before the Debtor mailed these documents. Therefore, any and all solicitations by the Debtor of acceptances of the Plan were in accordance with the provisions of Bankruptcy Code section 1125.

C.    **The Plan is Proposed in Good Faith - Bankruptcy Code § 1129(a)(3)**

Bankruptcy Code section 1129(a)(3) requires that a plan be proposed "in good faith and not by any means forbidden by law." Bankruptcy Rule 3020(b)(2) provides that the Court need not require evidence that a plan has been proposed in good faith if no objection has been filed challenging the proponent's good faith.

The good faith standard requires that there be a reasonable likelihood that a plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. Ryan v. Louis (In re Corey), 892 F.2d 829, 835 (9th Cir. 1989); Stolrow v. Stolrow's, Inc. (In re Stolrow's Inc.), 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988). The good faith standard requires a showing that the plan was proposed with "honesty and good intentions." Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988). A chapter 11 plan is filed in good faith if the plan proponent has exhibited "a fundamental fairness in dealing with one's creditors." Stolrow's, 84 B.R. at 172. Good faith is viewed under the totality of the circumstances. Jasik v. Conrad (In re Jasik), 727 F.2d 1379, 1383 (5th Cir. 1984).

Only Wamu has challenged the Debtor's good faith in proposing the Plan in its Objection to the Plan based on the Plan allegedly lacking adequate information on how the Debtor will fund the Plan.  To the contrary, Article X and Exhibit C to the Plan provide extensive financial information on how the Plan will be funded, and the Court has found this information adequate pursuant to the Disclosure Statement Order.

In this case, the circumstances show that the Debtor has proposed the Plan in good faith. The Debtor has worked diligently to continue its business, maximizing the total possible return under the circumstances and far exceeding the dividends available to unsecured creditors in a chapter 7 liquidation. The Plan deals fairly with all Creditors. All negotiations regarding the provisions of the Plan and the

1 treatment of holders of Claims and Interests were at arms' length and the Plan provisions reflect the result of

2 those negotiations.

3      Thus, the Debtor has exhibited the "fundamental fairness in dealing with creditors" required by

4 section 1129(a)(3) of the Bankruptcy Code, while arms' length negotiations among the parties have ensured

5 that the Plan "will achieve a result consistent with the objectives and purposes of the Code." Accordingly, the

6 requirements of section 1129(a)(3) of the Bankruptcy Code have been satisfied.

7 **D.**     **Any and All Compensation of Professionals Will Be Made Pursuant to Court Supervision as**
    **Required by Bankruptcy Code § 1129(a)(4)**

8

9      Bankruptcy Code section 1129(a)(4) provides that the Court shall confirm a plan only if "[a]ny

10 payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring

11 property under the plan, for services or for costs and expenses in or in connection with the case, or in

12 connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the

13 court as reasonable." Section 1129(a)(4) mandates full disclosure of all payments or promises of payment

14 for services, costs, and expenses in connection with the case and subjects the reasonableness of such

15 payments to the scrutiny and approval of the court. Collier on Bankruptcy, 1129.03[4] (15th ed. rev.); New

16 York Life Ins. Co. v. Chase Manhattan Bank, N.A. (In re Texaco Inc.), 85 B.R. 934, 939 (Bankr. S.D.N.Y.

17 1988).

18      As provided in Article XV section (a) of the Plan, the Stephen Collias, who is to receive 49.5% of the

19 stock of the Reorganized Debtor, will be paid $150,000 in annual compensation.

20      As provided in Article IX of the Plan, the Debtor's Professionals are to be paid on the Effective Date,

21 subject to the review and approval of the Court and no Professional will be paid by the Debtor or the

22 Reorganized Debtor without the prior approval of the Court.

23      Accordingly, the Plan complies with the requirements of Bankruptcy Code section 1129(a)(4).

24 **E.**     **The Post-Confirmation Management Was Fully Disclosed and Is in the Best Interest of the**
    **Estate as Required by Bankruptcy Code § 1129(a)(5)**

25      Bankruptcy Code section 1129(a)(5)(A)(i) provides that a court may confirm a plan only if the plan

26 proponent discloses "the identity and affiliations of any individual proposed to serve, after confirmation of the

27 plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan

28 with the debtor, or a successor to the debtor under the plan." Bankruptcy Code section 1129(a)(5)(A)(ii)

requires that the appointment to or continuance in such office of such party be "consistent with the interests of creditors and equity security holders and with public policy." Similarly, Bankruptcy Code section 1129(a)(5)(B) requires that a plan disclose the identity of any "insider" to be employed or retained by the reorganized debtor and the "nature of any compensation" for such insider.

In Article XV section (a), the Plan states that the management of the reorganized Debtor will be Stephen Collias and Marc Heenan[2], who managed the Debtor throughout the bankruptcy case, and includes their qualifications and affiliation with the Debtor. The continued service of the Debtor's current managers is in the best interest of the Reorganized Debtor and is consistent with the interests of creditors, equity security holders and public policy because Mr. Collias is the party most familiar with and capable of handling the operations of the Reorganized Debtor.

Based upon the foregoing, the Plan complies with the requirements set forth in Bankruptcy Code section 1129(a)(5).

F.    The Plan Does Not Require Approval of Any Regulatory Commission – Bankruptcy Code § 1129(a)(6)

Bankruptcy Code section 1129(a)(6) requires that, after confirmation of a plan, any governmental regulatory commission with jurisdiction "over the rates of the debtor has approved any rate change provided for in the plan." This section is inapplicable because no regulatory commission consents are necessary.

G.    The Plan Meets the "Best Interest of Creditors" Test - Bankruptcy Code § 1129(a)(7)

Bankruptcy Code section 1129(a)(7) provides that a court may confirm a plan only if the plan meets the "best interest of creditors" test. Under the "best interest of creditors" test, each holder of a claim or interest in an impaired class must either accept the plan or receive or retain property of a value, as of the effective date of the plan, that is not less than the amount such holder would receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date. See Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.), 779 F.2d 1456, 1460 (10th Cir. 1985); In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990); In re Mason & Dixon Lines, Inc., 63 B.R. at 176, 183 (Bankr. M.D.N.C. 1986); In re Victory Constr. Co., Inc., 42 B.R. 145, 151 (Bankr. C.D. Cal. 1984).

_____

[2] Mr. Heenan is no longer employed by the Debtor.

9

Article XIV Plan discusses the liquidation analysis of the Debtor in a chapter 7 case. The best interest of creditors test is met in this Case for the following reasons. First, the liquidation value of the company's assets is estimated to be less than its fair market value if sold in a Chapter 7 Trustee liquidation process because a number of these assets are incomplete and thus require the Debtor's construction, leasing and management expertise to generate higher values.  Furthermore, there is $9,854,000 of related assets held in separate, affiliated entities entitled Aviation Applications, Park 3000 and HC Finance that are separate of the plan that provide additional source of funds for the success of the plan of reorganization.

Second, in a chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all moneys disbursed, 10% on any amounts over $5,000 and up to $50,000, 5% on all amounts over $50,000 and up to $1,000,000, and such reasonable compensation no more than 3% of moneys over $1,000,000. Also, a chapter 7 trustee would have additional administrative expense, such as professionals, which will increase cost. The cost of a trustee and its professionals would far exceed the amounts payable to Mr. Collias and the Debtor's bankruptcy counsel under the terms of the Plan.

Third, payment to unsecured creditors would be delayed under a chapter 7 than in comparison with the Debtor's Plan.  Here, unsecured creditors will be paid in full within 90 days following the Effective Date. In a ch. 7, even if the trustee could sell assets promptly, it would take at least that long to close the asset sales and another estimated 12 months to get approval of final report and distribution to creditors.

Finally, the Plan here is the result of negotiations with Bank Midwest, which allow for a waiver of over $500,000 in default interest.  It is unlikely that the bank would offer this same deal to a ch. 7 trustee. Moreover, delays in payment in chapter 7 would further expose the estate to additional interest and default interest

Confirmation of the Plan, therefore, will result in a greater distribution to creditors than a liquidation under chapter 7. Based on the foregoing, the Plan complies with the best interest of creditors test set forth in Bankruptcy Code section 1129(a)(7).

**H.**     Acceptance of the Plan - Bankruptcy Code § 1129(a)(8)

Bankruptcy Code section 1129(a)(8) provides that a Court may confirm a plan only if, with respect to each class of claims and interests, such class has accepted the plan or such class is not impaired under the plan. See Idaho Dep't of Lands v. Arnold (In re Arnold), 806 F.2d 937, 940 (9th Cir. 1986). Section 1126(a) states "[t]he holder of a claim or interest allowed under section 502 of this title may accept or reject a plan." Bankruptcy Code section 1126(c) provides that:

> [a] class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan.

As set forth more fully in the Ballot Summary, the following is a summary of how holders of Claims and Interests originally voted on the Plan:

| Class | % Accepted in Number | % Accepted in Amount | % Rejected in Number | % Rejected in Amount | Accept/ Reject |
|---|---|---|---|---|---|
| Class 1 – Secured Property Tax Claims | 0% | 0% | 0% | 0% | |
| Class 2 – Secured Claims of Wamu | 0% | 0% | 0% | 0% | |
| Class 3 – Secured Claim of Bank Midwest | 100% | 100% | 0% | 0% | Accept |
| Class 4 – General Unsecured Claims | 5% | 11.5% | 0% | 0% | Accept |
| Class 5 – Insider Claims | n/a | n/a | n/a | n/a | n/a |
| Class 6 – Shareholder Interests | n/a | n/a | n/a | n/a | n/a |

Although Class 2 has objected to the Plan, it did not submit a ballot rejecting the Plan.  No ballots were received for Classes 1, 2 or 6.

The Plan, therefore, complies with the requirement of section 1129(a)(8) of the Bankruptcy Code that all impaired classes accept the Plan

I.      **Administrative Expenses and Priority Claimants Are Treated Appropriately Under the Plan - Bankruptcy Code § 1129(a)(9)**

Pursuant to Articles IX sections (b) and (c),  Allowed Administrative Claims will be paid in full, without interest, on the Effective Date.   Payment of Professional Fee Claims shall be subject to the approval of the Court, and paid on the later of the Effective Date or the entry of a final order approving fees.

Pursuant to Article IX (c) of the Plan, there are no holders of Allowed Priority Tax Claims.

Accordingly, the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

J.      **The Plan Has Been Accepted by at Least One Impaired Class - Bankruptcy Code § 1129(a)(10)**

Bankruptcy Code section 1129(a)(10) provides that a Court may confirm a plan only if "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." See Arnold, 806 F.2d at 940 n.2 (at least one class of impaired claimants must accept plan). Class 3 has voted to accept the Plan, excluding the acceptance of any insider as defined in 11 U.S.C. § 101(31). Consequently, the Plan complies with the provisions of section 1129(a)(10) of the Bankruptcy Code.

K.      **The Plan Is Feasible - Bankruptcy Code § 1129(a)(11)**

Bankruptcy Code section 1129(a)(11) provides that a Court may confirm a plan only if:

> [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

There are at least two important aspects of a feasibility analysis. Adopting the particulars of this case, the first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Debtor maintains that this aspect of feasibility is satisfied. The Debtor anticipates that the amount of cash the Debtor will have

1  on hand from on the Effective Date will be approximately $820, 366 and the amount of Effective Date

2  payments will be between $105,297-$170-297.

3      The second aspect of feasibility requires a determination that confirmation of the Plan is not likely to

4  be followed by the liquidation, or the need for further financial reorganization of the Debtor. The Debtor has

5  successfully used the chapter 11 process to reorganize its secured debt with Bank Midwest, sell property

6  and position itself to maintain strong, profitable operations going forward.

7      Wamu has objected to the Plan, asserting Debtor's inability to satisfy §1129(a)(11) based on lack of

8  evidence of feasibility.  However, the projected cash flow statements attached to the Plan as Exhibit C

9  clearly demonstrate that the Debtor will have sufficient funds to pay its ongoing obligations under the Plan,

10  satisfy its ordinary operating expenses, and maintain a solid financial footing.

11      For all the foregoing reasons, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

12  **L.**    **All Bankruptcy Fees Will Have Been Paid by Confirmation - Bankruptcy Code § 1129(a)(12)**

13      Section 1129(a)(12) provides that a Court may confirm a plan only if "[a]ll fees payable under section

14  1930 of title 28, as determined by the court at the Confirmation Hearing, have been paid or the plan provides

15  for the payment of all such fees on the effective date of the plan." All fees payable to the Office of the United

16  States Trustee will be paid prior to the Effective Date of the Plan.

17  **M.**    **The Debtor Has No Retirement Benefits - Bankruptcy Code § 1129(a)(13)**

18      Section 1129(a)(13) of the Bankruptcy Code provides that a Court may confirm a plan only if "[t]he

19  plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is

20  defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section

21  1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has

22  obligated itself to provide such benefits." 11 U.S.C. § 1129(a)(13). The Debtor does not have any "retirees"

23  entitled to benefits. Accordingly, this requirement is inapplicable.

24  **N.**    **The Plan Satisfies the Cram-Down Requirements of Bankruptcy Code § 1129(b)(2)(A)**

25      Bankruptcy Code section 1129(b)(1) provides that, if all of the requirements of section 1129(a) are

26  met other than paragraph (8), which involves acceptance of the plan by all classes, the Court may

27  nonetheless confirm a plan if (a) the plan does not discriminate unfairly, and (b) the plan is fair and equitable

28

1  with respect to each class of claims or interests that is impaired under, and has not accepted, the plan. 11

2  U.S.C. § 1129(b)(1).

3  As set forth in section 1129(b)(1) of the Bankruptcy Code, the requirement that a plan must not

4  discriminate unfairly and must be fair and equitable with respect to each class is applicable only with respect

5  to a class of claims or interest holders that is impaired under the Plan and that has not accepted the Plan. In

6  re Guilford Telecasters, Inc., 128 B.R. 622, 628 (Bankr. M.D. N.C. 1991) (holding that "[s]ince all classes of

7  unsecured claims have accepted the plan, 'cram-down' as to these classes is not required, thereby foregoing

8  any discussion of the 'absolute priority rule.' The absolute priority rule is not applicable with respect to an

9  impaired class of unsecured claims that has accepted the plan."); In re Club Assocs., 107 B.R. 385, 400

10  (Bankr. N.D. Ga. 1989); (reasoning that since general unsecured creditors, although impaired, had accepted

11  the Plan, section 1129(b) did not apply to such Class).

12  The Debtor submits that no ballots were submitted for Classes 1 and 2, however Class 2 creditor

13  Wamu has filed an objection to the Plan.  Therefore, the Debtor will demonstrate that the Plan meets the

14  requirements of section 1129(b)(2)(A) of the Bankruptcy Code as to Classes 1 and 2.

15  a.  The Plan Does Not Discriminate Unfairly Against Class 1 and 2

16  The Bankruptcy Code does not articulate any guidelines for determining whether a plan

17  "discriminates unfairly" with respect to a dissenting class within the meaning of section 1129(b)(1) of the

18  Bankruptcy Code. The unfair discrimination provision requires that a plan "allocate value to the class in a

19  manner consistent with the treatment afforded to other classes with similar legal claims against the debtor." 5

20  Collier on Bankruptcy ¶ 1129.03, at 1129-50 (15th ed. rev'd).

21  Hence, a plan may not treat a class in a manner inferior to that afforded a separate class with equal

22  rights to the debtor's assets, unless the class being treated in an inferior manner has accepted such inferior

23  treatment. See, e.g., In re U.S. Truck Co., Inc., 47 B.R. 932, 940 (E.D. Mich. 1985), aff'd, 800 F.2d 581 (6th

24  Cir. 1986); In re Economy Cast Stone Co., 16 B.R. 647, 652 (Bankr. E.D. Va. 1981). This requirement that

25  equal claims be treated equally generally arises in the context of separate classification under section

26  1122(a). See In re Jartran, Inc., 44 B.R. 331, 383 (Bankr. N.D. Ill. 1984); In re Pine Lake Village Apartment

27  Co., 19 B.R. 819, 831 (Bankr. S.D.N.Y. 1982), reh'g denied, 21 B.R. 478 (Bankr. S.D.N.Y. 1982).

28

1　　　　In this instance, Class 1 Claims will be paid in the full amount of their allowed claim on the Effective

2　Date with 4% interest.   Further, Class 2 Claims will be paid in full at a market rate of interest monthly at 4%,

3　with principal and interest to be paid in full upon the earlier of 4 years after the Effective Date or sale of the

4　property. The only other Secured (Non-Tax) Claim is the Bank Midwest Secured Class 3 Claim, the Debtor's

5　other prepetition lender.  Bank Midwest's claim is being treated pursuant to the court approved stipulation,

6　and will receive 4.25% interest.  Class 4 (General Unsecured) receive 4% interest on their claims under the

7　Plan, which falls in line with the treatment of Classes 1 and 2.  The Plan does not, therefore, discriminate

8　unfairly against claims in Classes 1 and 2 considering the nature of the claims, the fact that the claims are

9　allowed and paid in full with market rate interest, and their unaltered rights to the Debtor's assets.

10　　　　　　　　　b.　The Debtor May Cram Down Class 4

11　　　　Section 1129(b)(2)(A) of the Bankruptcy Code provides that, with respect to a nonconsenting class

12　of secured claims, the plan may be "crammed down" on such class if the plan provides:

13　　　　　　　(i) (I) that the holders of such claims retain the liens securing such claims, whether
　　　　　　　the property subject to such liens is retained by the debtor or transferred to
14　　　　　　　another entity, to the extent of the allowed amount of such claim; and (II) that each
　　　　　　　holder of a claim of such class receive on account of such claim deferred cash
15　　　　　　　payments totaling at least the allowed amount of such claim, of a value, as of the
　　　　　　　effective date of the plan, of at least the value of such holder's interest in the
16　　　　　　　estate's interest in such property;
　　　　　　　(ii) for the sale … of any property that is subject to the liens securing such claims,
17　　　　　　　free and clear of such liens, with such liens to attach to the proceeds of such sale,
　　　　　　　and the treatment of such liens on proceeds under clause (i) or (iii) of this
18　　　　　　　subparagraph, or
　　　　　　　(iii) for the realization by such holders of the indubitable equivalent of such claims.
19
20　　　　　　　11 U.S.C. § 1129(b)(2)(A).

21　　　　The treatment of Classes 1 and 2, as set forth in the plan, clearly meets the cram-down

22　requirements for a secured claim. The Debtor has, in effect, elected the treatment provided under option (iii)

23　as it will pay Class 1 and 2 claims in full, based the present value of the claims, with market rate interest at

24　4%.  Additionally, for Class 2 claims, the full amount of principal and interest will be paid in full upon the

25　earlier of 4 years after the Effective Date or sale of the property, and the liens securing such claims will not

26　be affected by the Plan.

27　　　　Although Classes 1 and 2 have not rejected the Plan, to the extent that the Court may determine

28　that Classes 1 and 2 did not accept the Plan, the Debtor requests Confirmation of the Plan pursuant to

1  section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not

2  discriminate unfairly as to Classes 1 and 2 and meets the requirements of cram-down for Classes 1 and 2.

3  O.    **The Principal Purpose of the Plan is Not Avoidance of Tax or Securities Act Obligations—**
       **Bankruptcy Code § 1129(d).**

4

5  Section 1129(d) provides that:

6  [O]n request of a party in interest that is a governmental unit, the court may not
   confirm a plan if the principal purpose of the plan is the avoidance of taxes or the

7  avoidance of section 5 of the Securities Act of 1933 . . .

8  No governmental party in interest has requested the denial of confirmation on any of the foregoing

9  grounds, and they are not applicable here. As shown above in the "good faith" analysis, the principal

10 purpose of this Plan is to pay creditor claims -- the paramount chapter 11 goal. Consequently, this

11 requirement has been satisfied.

12                          III.        CONCLUSION.

13 Based on the foregoing, the Plan meets each and every requirement for confirmation pursuant to 11

14 U.S.C. section 1129. Accordingly, the Debtor request that the Court enter an order confirming the Plan and

15 granting such other and further relief as is just and proper under the circumstances.

16 Dated:  March 14, 2011

17                          LESLIE COHEN LAW PC

18

19                          By      _/s/ Leslie A. Cohen_
                                           Leslie A. Cohen
20                                  *Attorneys for* Debtor and Debtor in Possession

21

22

23

24

25

26

27

28

<u>DECLARATION OF STEPHEN COLLIAS</u>

I, Stephen Collias, declare as follows:

1.     I am the President of Franklin Finance, Inc., the General Partner of Franklin Pacific Finance, LLLP (the "Debtor"), the debtor and debtor-in-possession in the above-captioned bankruptcy case.  Unless otherwise stated, I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto.  Where facts are alleged upon information and belief, I believe them to be true and correct.

2.     As demonstrated by the Ballot Summary Declaration of J'aime Williams attached hereto, all ballots received have been in favor of the Plan.  The Debtor did receive one objection to confirmation of the Plan from Deutsche Bank on behalf of Washington Mutual ("Wamu");  however, this creditor did not oppose the Plan.  Further, the Debtor believes it will resolve the issues related to this objection prior to confirmation, and that Wamu will withdraw its objection.

3.     The Plan contains 5 classes of Claims and one class of Interests as follows:

      a.   Class 1 consists of 8 sub-classes (Classes 1A – 1H) of secured real property tax claims. These claims are not similar to the secured claims of Debtor's lenders, and are therefore in a separate class from the lenders.  As each claim is related to a different real property asset, the claims have been divided into sub-classes 1A – 1H. [3]

      b.   Class 2 consists of the two secured claims of Washington Mutual Bank N.A. ("Wamu"), one of Debtor's prepetition secured lenders, on Debtor's Manhattan Beach property. Sub-class 2A consists of Wamu's first trust deed and Sub-class 2B consists of Wamu's second trust deed.  The secured claims of Wamu are  different and in a separate class from Debtor's other secured lender, Bank Midwest.

      c.   Class 3 consists of the secured claim of Bank Midwest N.A., Debtor's other prepetition secured lender.   Bank Midwest's claim is secured by several of Debtor's real property assets, other than the Manhattan Beach property, and pursuant to the court-approved

---

[3] Sub-class 1A consists of the secured real property taxes on Oak Trail Villas, which is an asset of FPF Oak Trails.  FPF Oak Trails is a debtor in case # 2:10-bk-34386 and the disposition of its assets and liabilities will be subject to court approval in that case.

stipulation, Bank Midwest's claims on the properties have been settled and will be cross-collateralized under the terms of the settlement and the Plan.

d.    Class 4 consists of all General Unsecured Claims.   Each of the General Unsecured Claims is substantially similar to one another for classification purposes.

e.    Class 5 consists of Insider Claims.  The Debtor does not have any insider claims.

f.    Class 6 consists of Shareholder Interests, each of which are held by myself, Gary Hall and Franklin Finance and all of which are substantially similar.

4.    I am informed and believe that the Plan complies with the mandatory provisions of Bankruptcy Code section 1123(a) as follows:

a.    Paragraph (1) of section 1123(a) requires that a plan designate classes of claims other than claims of a priority specified in paragraphs 2, 3, and 8 of section 507(a) of the Bankruptcy Code. Article IX sections (d)-(i) of the Plan satisfy this requirement by designating all Classes of Claims other than the specified claims, which are identified in the Plan as Administrative Claims and Priority Tax Claims in Article IX sections (b)-(c).

b.    Paragraph (2) of section 1123(a) requires that a plan specify those classes of claims or interests that are not impaired. All classes of creditors are impaired under the Plan other than Class 5, which has no members.

c.    Paragraph (3) of section 1123(a) requires that a plan specify the treatment of any class of claims or interests that is impaired under the plan. Article IX sections (d)-(g) of the Plan specifies the treatment of Classes 1, 2, 3 and 4, which are impaired under the Plan.

d.    Paragraph (4) of section 1123(a) requires that a plan provide the same treatment for each claim or interest of a particular class, unless the holder agrees to a less favorable treatment of such particular claim or interest. As shown by IX sections (d)-(g), the Plan provides for the same treatment of claims and interests within each Class and Sub-Class.

e.    Paragraph (5) of section 1123(a) requires that a plan provide adequate means for its implementation. Articles X - XV of the Plan, as well as Exhibit C to the Plan, describe the means for the Plan's implementation. Among other things, the Plan contains a full analysis of the Debtor's assets, and discloses the sources of the payments required

under the Plan. The Plan further provides information on the post-petition management of the Debtor and establishes the Debtor as the Disbursing Agent for distributions under the Plan.   Wamu has filed an objection to the Plan, claiming that the Plan fails to comply with section 1123(a) (5) of the Bankruptcy Code because it does not discuss how Debtor will pay Wamu's claim as described. This allegation is unfounded and without merit as is demonstrated by the ample financial information incorporated into the Plan.

f.  Paragraph (6) of section 1123(a) requires that a plan provide for the inclusion in the charter of a corporate debtor a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes. Any order confirming the Plan will contain such a provisions and the Reorganized Debtor's charter will be amended to so state.

g.  Paragraph (7) of section 1123(a) requires that a plan contain only provisions that are consistent with the interests of creditors, equity security holders and public policy with respect to the manner of selection of any officer, director or trustee under the plan and any successor thereto. The Debtor asserts that the Plan fulfills this requirement. I and Gary Hill, who are the Debtor's current officers and directors, have owned and operated the Debtor from the time of its formation. I and Mr. Hill are well-qualified and the best choice to serve as the Reorganized Debtor's officers and directors. We each have an extensive knowledge of the Debtor's business, and in particular, I have guided the Debtor through its reorganization, restructured the Debtor's business and, through his efforts, have improved the Debtor's financial condition and operating performance in order to enable the Debtor to propose the Plan. My experience with the Debtor and its restructuring make my continued involvement with the Reorganized Debtor invaluable and in the best interest of Creditors and other parties in interest.

h.  Paragraph (8) of section 1123(a) applies to cases involving individuals and, therefore, is not applicable to this Case.

5.       I am informed and believe that the Plan complies with the permissive provisions of Bankruptcy Code section 1123(b) as follows:

a.    Paragraph (1) of section 1123(b) provides that a plan may impair or leave unimpaired any class of claims, whether secured or unsecured. Article IX of the Plan specifies the treatment of each Class under the Plan.

b.    Paragraph (2) of section 1123(b) specifies that, subject to Bankruptcy Code section 365, a plan may provide for the assumption, rejection or assignment of any executory contract or unexpired lease not previously rejected. Article XVI of the Plan contains such provisions.

c.    Paragraph (3) of section 1123(b) specifies that a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate" or "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." Article XIX section (d) of the Plan contains such provisions.

d.    Paragraph (4) of section 1123(b) specifies that a plan may provide for the sale of all or substantially all of the property of the estates, and the distribution of the proceeds of such sale among holders of claims or interests. This provision is not applicable to this reorganization Plan.

e.    Paragraph (5) of section 1123(b) allows a plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." Article IX sections (c)-(g) of the Plan contains provisions which permissibly modify the rights of holders of secured and unsecured claims. Wamu has filed an objection to the Plan, asserting that the Plan fails to comply with section 1123(b)(5) of the Bankruptcy Code because it does not provide evidence in support of the Debtor's valuations of the Manhattan Beach property. This allegation is unfounded and without merit as Article XIV at page 71 describes in detail the source and

comparables for Debtor's valuation of this property.  Moreover, Wamu is incorrect in its assertion that the Debtor sought to reduce the principal on its loan under the Plan.

f.  Paragraph (6) of section 1123(b) specifies that a plan may include any other provisions not inconsistent with the applicable provisions of the Bankruptcy Code. The Plan contains many such provisions which are standard in chapter 11 plans. The Plan contains various definitions consistent with the purposes of the Bankruptcy Code.

6.  On February 1, 2011, the Court entered its order approving the Disclosure Statement (the "Disclosure Statement Order") (Docket No. 169) filed in support of the Plan. Pursuant to the Disclosure Statement Order, the Court determined that the Disclosure Statement contained "adequate information" as that term is defined in section 1125 of the Bankruptcy Code. Also pursuant to the Disclosure Statement Order, the Court approved solicitation, notice and voting procedures with respect to the solicitation of acceptances of the Plan (the "Solicitation Procedures"). Pursuant to the Solicitation Procedures, the Court required the Debtor to serve a copy of the Disclosure Statement and Plan, together with the Notice and the Ballot (the "Solicitation Package"), on all holders of Claims and on all interested parties. The Debtor complied with the Solicitation Procedures as evidenced by the proofs of service on file with the Court. No solicitation of acceptances of the Plan occurred before the Debtor mailed these documents.

7.  Only Wamu has challenged the Debtor's good faith in proposing the Plan in its Objection to the Plan based on the Plan allegedly lacking adequate information on how the Debtor will fund the Plan.  To the contrary, Article X and Exhibit C to the Plan provide extensive financial information on how the Plan will be funded, and the Court has found this information adequate pursuant to the Disclosure Statement Order.

8.  In this case, the circumstances show that the Debtor has proposed the Plan in good faith. The Debtor has worked diligently to continue its business, maximizing the total possible return under the circumstances and far exceeding the dividends available to unsecured creditors in a chapter 7 liquidation. The Plan deals fairly with all Creditors. All negotiations regarding the provisions of the Plan and the treatment of holders of Claims and Interests were at arms' length and the Plan provisions reflect the result of those negotiations.

9.  As provided in Article XV section (a) of the Plan, I, who will receive 49.5% of the stock of the Reorganized Debtor, will be paid $150,000 in annual compensation.

21

10.     As provided in Article IX of the Plan, the Debtor's Professionals are to be paid on the Effective Date, subject to the review and approval of the Court and no Professional will be paid by the Debtor or the Reorganized Debtor without the prior approval of the Court. .

11.     In Article XV section (a), the Plan states that the management of the reorganized Debtor will be myself and Marc Heenan[4], who managed the Debtor throughout the bankruptcy case, and includes their qualifications and affiliation with the Debtor. The continued service of the Debtor's current managers is in the best interest of the Reorganized Debtor and is consistent with the interests of creditors, equity security holders and public policy because I am the party most familiar with and capable of handling the operations of the Reorganized Debtor.

12.     No regulatory commission consents are necessary for the Plan.

13.     Article XIV Plan discusses the liquidation analysis of the Debtor in a chapter 7 case. The best interest of creditors test is met in this Case for the following reasons. First, the liquidation value of the company's assets is estimated to be less than its fair market value if sold in a Chapter 7 Trustee liquidation process because a number of these assets are incomplete and thus require the Debtor's construction, leasing and management expertise to generate higher values.  Furthermore, there is $9,854,000 of related assets held in separate, affiliated entities entitled Aviation Applications, Park 3000 and HC Finance that are separate of the plan that provide additional source of funds for the success of the plan of reorganization.

14.     Second, in a chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all moneys disbursed, 10% on any amounts over $5,000 and up to $50,000, 5% on all amounts over $50,000 and up to $1,000,000, and such reasonable compensation no more than 3% of moneys over $1,000,000. Also, a chapter 7 trustee would have additional administrative expense, such as professionals, which will increase cost. The cost of a trustee and its professionals would far exceed the amounts payable to myself and the Debtor's bankruptcy counsel under the terms of the Plan.

15.     Third, payment to unsecured creditors would be delayed under a chapter 7 than in comparison with the Debtor's Plan.  Here, unsecured creditors will be paid in full within 90 days following the

---

[4] Mr. Heenan is no longer employed by the Debtor.

22

Effective Date.  In a ch. 7, even if the trustee could sell assets promptly, it would take at least that long to close the asset sales and another estimated 12 months to get approval of final report and distribution to creditors.

16.    Finally, the Plan here is the result of negotiations with Bank Midwest, which allow for a waiver of over $500,000 in default interest.  It is unlikely that the bank would offer this same deal to a ch. 7 trustee. Moreover, delays in payment in chapter 7 would further expose the estate to additional interest and default interest

17.    As set forth more fully in the Ballot Summary, the following is a summary of how holders of Claims and Interests originally voted on the Plan:

| Class | % Accepted in Number | % Accepted in Amount | % Rejected in Number | % Rejected in Amount | Accept/ Reject |
|---|---|---|---|---|---|
| Class 1 – Secured Property Tax Claims | 0% | 0% | 0% | 0% | |
| Class 2 – Secured Claims of Wamu | 0% | 0% | 0% | 0% | |
| Class 3 – Secured Claim of Bank Midwest | 100% | 100% | 0% | 0% | Accept |
| Class 4 – General Unsecured Claims | 5% | 11.5% | 0% | 0% | Accept |
| Class 5 – Insider Claims | n/a | n/a | n/a | n/a | n/a |
| Class 6 – Shareholder Interests | n/a | n/a | n/a | n/a | n/a |

18.    Although Class 2 has objected to the Plan, it did not submit a ballot rejecting the Plan.  No ballots were received for Classes 1, 2 or 6.

23

19.     Pursuant to Articles IX sections (b) and (c), Allowed Administrative Claims will be paid in full, without interest, on the Effective Date.   Payment of Professional Fee Claims shall be subject to the approval of the Court, and paid on the later of the Effective Date or the entry of a final order approving fees.

20.     Pursuant to Article IX (c) of the Plan, there are no holders of Allowed Priority Tax Claims. Accordingly, the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

21.     Class 3 is impaired and has voted to accept the Plan, excluding the acceptance of any insider as defined in 11 U.S.C. § 101(31).

22.     The Debtor maintains that this aspect of feasibility is satisfied. The Debtor anticipates that the amount of cash the Debtor will have on hand from on the Effective Date will be approximately $820, 366 and the amount of Effective Date payments will be between $105,297-$170-297.

23.     The Debtor has successfully used the chapter 11 process to reorganize its secured debt with Bank Midwest, sell property and position itself to maintain strong, profitable operations going forward.

24.     Wamu has objected to the Plan, asserting Debtor's inability to satisfy §1129(a)(11) based on lack of evidence of feasibility.  However, the projected cash flow statements attached to the Plan as Exhibit C clearly demonstrate that the Debtor will have sufficient funds to pay its ongoing obligations under the Plan, satisfy its ordinary operating expenses, and maintain a solid financial footing.

25.     All fees payable to the Office of the United States Trustee will be paid prior to the Effective Date of the Plan.

26.     The Debtor does not have any "retirees" entitled to benefits. Accordingly, this requirement is inapplicable.

27.     The Debtor submits that no ballots were submitted for Classes 1 and 2, however Class 2 creditor . In this instance, Class 1 Claims will be paid in the full amount of their allowed claim on the Effective Date with 4% interest.   Further, Class 2 Claims will be paid in full at a market rate of interest monthly at 4%, with principal and interest to be paid in full upon the earlier of 4 years after the Effective Date or sale of the property. The only other Secured (Non-Tax) Claim is the Bank Midwest Secured Class 3 Claim, the Debtor's other prepetition lender.  Bank Midwest's claim is being treated pursuant to the court approved stipulation, and will receive 4.25% interest.  Class 4 (General Unsecured) receive 4% interest on their claims under the Plan, which falls in line with the treatment of Classes 1 and 2.  The Plan does not, therefore, discriminate unfairly

1  against claims in Classes 1 and 2 considering the nature of the claims, the fact that the claims are allowed

2  and paid in full with market rate interest, and their unaltered rights to the Debtor's assets.

3       28.    The treatment of Classes 1 and 2, as set forth in the plan, clearly meets the cram-down

4  requirements for a secured claim. The Debtor has, in effect, elected the treatment provided under option (iii)

5  as it will pay Class 1 and 2 claims in full, based the present value of the claims, with market rate interest at

6  4%.  Additionally, for Class 2 claims, the full amount of principal and interest will be paid in full upon the earlier

7  of 4 years after the Effective Date or sale of the property, and the liens securing such claims will not be

8  affected by the Plan.

9       29.    No governmental party in interest has requested the denial of confirmation on any of the

10  foregoing grounds, and they are not applicable here. As shown above in the "good faith" analysis, the principal

11  purpose of this Plan is to pay creditor claims -- the paramount chapter 11 goal.

12       I declare under penalty of perjury under the laws of the United States that the foregoing is true and

13  correct.

14  Executed on March 14, 2011 at  Santa Monica, California.

15

16

17  Stephen Collias

18

19

20

21

22

23

24

25

26

27

28

25

### DECLARATION OF J'AIME WILLIAMS

I, J'AIME WILLIAMS , declare as follows:

1.       I am an attorney duly licensed to practice law in the State of California and before the United States Bankruptcy Court for the Central District of California.

2.       I am an attorney at the law firm of Leslie Cohen Law, P.C., attorneys for Franklin Pacific Finance, LLLP, the above-captioned debtor and debtor in possession (the "Debtor").

3.       The facts set forth herein are based upon my personal knowledge, and, if called as a witness, I could and would testify competently thereto.

4.       Pursuant to the *Order Authorizing And Approving (A) The Adequacy Of The Disclosure Statement Describing Debtor's Chapter 11 Plan Of Reorganization; (B) Fixing Date For Filing Acceptances Or Rejections Of The Debtor's Plan Of Reorganization; (C) Fixing Deadline For Filing Objections To The Debtor's Plan Of Reorganization And (D) Fixing Date For Hearing On Confirmation Of The Debtor's Plan Of Reorganization* (the "Disclosure Statement Order"), all completed ballots were required to be mailed to my attention at Leslie Cohen Law PC, 506 Santa Monica Blvd., Suite 200, Santa Monica, CA 90403 no later than March 7, 2011. (the "Voting Deadline").

5.       I was primarily responsible for the tabulation of ballots (the "Ballots") received for acceptance or rejection of the Debtor's Disclosure Statement and Plan of Reorganization, as Amended January 28, 2011 (the "Plan").

6.       I have reviewed the Ballots and recorded the pertinent information on the Analysis of Ballots sheet.  The Analysis of Ballots sheet for those Ballots timely received is attached hereto, and established the following:

7.       <u>Class 1A (Secured Tax Claim – Richardson ISD and Dallas County)</u>

Total ballots received: 0

Total in dollar amount: 0.00

0       votes accepting Plan; totaling approximately $0.00.

0       votes rejecting Plan; totaling $0.00

8.       <u>Class 1B (Secured Tax Claim – Kenton county and City of Forth Mitchell)</u>

Total ballots received: 0

26

Total in dollar amount: 0.00

0    votes accepting Plan; totaling approximately $0.00.

0    votes rejecting Plan; totaling $0.00

9.    <u>Class 1C (Secured Tax Claim – Sunset Crossing, Shalamar)</u>

Not eligible to vote.

10.    <u>Class 1D (Secured Tax Claim – Colette Franklin Tax Assessor)</u>

Total ballots received: 0

Total in dollar amount: 0.00

0    votes accepting Plan; totaling approximately $0.00.

0    votes rejecting Plan; totaling $0.00

11.    <u>Class 1E (Secured Tax Claim – 2nd Street)</u>

Total ballots received: 0

Total in dollar amount: 0.00

0    votes accepting Plan; totaling approximately $0.00.

0    votes rejecting Plan; totaling $0.00

12.    <u>Class 1F (Secured Tax Claim - Villages)</u>

Total ballots received: 0

Total in dollar amount: 0.00

0    votes accepting Plan; totaling approximately $0.00.

0    votes rejecting Plan; totaling $0.00

13.    <u>Class 1G (Secured Tax Claim - National)</u>

Total ballots received: 0

Total in dollar amount: 0.00

0    votes accepting Plan; totaling approximately $0.00.

0    votes rejecting Plan; totaling $0.00

14.    <u>Class 1H (Secured Tax Claim - 21st Place)</u>

27

Total ballots received: 0

Total in dollar amount: 0.00

    0      votes accepting Plan; totaling approximately $0.00.

    0      votes rejecting Plan; totaling $0.00

15.    <u>Class 2A (Secured Claim – Washington Mutual)</u>

Total ballots received: 0

Total in dollar amount: 0.00

    0      votes accepting Plan; totaling approximately $0.00.

    0      votes rejecting Plan; totaling $0.00

16.    <u>Class 2B (Secured Claim – Washington Mutual)</u>

Total ballots received: 0

Total in dollar amount: 0.00

    0      votes accepting Plan; totaling approximately $0.00.

    0      votes rejecting Plan; totaling $0.00

17.    <u>Class 3 (Secured Claim – Bank Midwest)</u>

Total ballots received: 1

Total in dollar amount: 20,440,560.00

    1      votes accepting Plan; totaling $20,440,560.00.

    0      votes rejecting Plan; totaling $0.00.

<u>Acceptance</u>

100%    in number of votes accepting Plan.

100%    in dollar amount accepting Plan.

<u>Rejection</u>

0%    in number of votes rejecting Plan.

0%    in dollar amount rejecting Plan

18.   <u>Class 4 (General Unsecured Creditors)</u>

Total ballots received: 1

Total in dollar amount: 9,197.42

1       votes accepting Plan; totaling approximately $9,197.42.

0       votes rejecting Plan; totaling $0.00.

<u>Acceptance</u>

5%      in number of votes accepting Plan.

11.5%   in dollar amount accepting Plan.

<u>Rejection</u>

0%      in number of votes rejecting Plan.

0%      in dollar amount rejecting Plan

19.   <u>Class 5 (Insider Claims)</u>

N/A

20.   <u>Class 6 (Shareholder Claims)</u>

Ineligible to vote

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th  day of March 2011, at Santa Monica, California.

_____
Jaime Williams

Analysis of Ballots

| Class | Amount of Claim | Accepts | Rejects |
|---|---|---|---|
| Class 1A – Secured Tax Claim – Richardson ISD and Dallas County | | | |
| No ballot received | | | |
| Class 1B – Secured Tax Claim – Kenton county and City of Forth Mitchell | | | |
| No ballot received | | | |
| Class 1C – Secured Tax Claim – Sunset Crossing, Shalamar | | | |
| Not eligible to vote | | | |
| Class 1D – Secured Tax Claim – Colette Franklin Tax Assessor | | | |
| No ballot received | | | |
| Class 1E– Secured Tax Claim – 2nd Street | | | |
| No ballot received | | | |
| Class 1F – Secured Tax Claim - Villages | | | |
| No ballot received | | | |
| Class 1G – Secured Tax Claim - National | | | |
| No ballot received | | | |
| Class 1H – Secured Tax Claim  - 21st Place | | | |
| No ballot received | | | |
| Class 2A – Secured Claim – Washington Mutual | | | |
| No ballot received | | | |
| Class 2B – Secured Claim – Washington Mutual | | | |
| No ballot received | | | |
| Class 3 – Secured Claim – Bank Midwest | | | |
| Armed Forces Bank, N.A. successor by merger to Bank Midwest, N.A. | $20,440,560.00 | X | |
| Class 4 – General Unsecured Creditors | | | |
| Wyndelts & Gagnon, PLC | $9,197.42 | X | |
| Class 5 – Insider Claims | | | |
| n/a | | | |
| Class 6 – Shareholder Claims | | | |
| Not eligible to vote | | | |

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 506 Santa Monica Blvd., Ste 200, Santa Monica, CA 90401.  On March 14, 2011, I served the within document(s) described as: **NOTICE OF MOTION AND MOTION FOR  CONFIRMATION OF THE CHAPTER 11 PLAN, AS AMENDED DATED FEBRUARY 11, 2011; DECLARATION OF STEPHEN COLLIAS IN SUPPORT THEREOF; DECLARATION OF J'AIME WILLIAMS AND BALLOT TABULATION**

on the interested parties in this action as stated on the attached mailing list.

☒    (BY MAIL) By placing true copies of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list.  I am readily familiar with this firm's practice for collection and processing of correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing contained in affidavit.

☐    (BY EXPRESS MAIL) By placing true copies of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list.  I placed each such envelope for collection and overnight mailing following ordinary business practices.  I am readily familiar with this firm's practice for collection and processing of Express Mail to be sent overnight by the U.S. Postal Service.  Under that practice, it would be deposited on that same day in the ordinary course of business, with Express Mail postage thereon fully prepaid, in a post office, mailbox, sub-post office, substation, mail chute, or other like facility regularly maintained by the U.S. Postal Service for receipt of Express Mail.

☐    (BY OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, true copies of the foregoing document(s) in a sealed envelope or package designated by the express service carrier, addressed as set forth on the attached mailing list, with fees for overnight delivery paid or provided for.

☐    (BY FAX) By transmitting a true copy of the foregoing document(s) via facsimile transmission from this firm's facsimile machine, to each interested party at the facsimile machine telephone number(s) set forth on the attached mailing list.  Said transmission(s) were completed on the aforesaid date at the time stated on the transmission record issued by this firm's sending facsimile machine.  Each such transmission was reported as complete and without error and a transmission report was properly issued by this firm's sending facsimile machine for each interested party served.  A true copy of each transmission report is attached to the office copy of this proof of service and will be provided upon request.

☐    (BY E-MAIL) By transmitting true copies of the foregoing document(s) to the e-mail addresses set forth on the attached mailing list.

I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 14, 2011, at Los Angeles, California.

| Brian Link | /s/ Brian Link |
|:---:|:---:|
| (Type or print name) | (Signature) |

## SERVICE LIST

**By ECF:**

Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com
Sheri Kanesaka    sheri.kanesaka@bryancave.com
Dare Law    dare.law@usdoj.gov
William D May    dp@srwadelaw.com
Christopher M McDermott    ecfcacb@piteduncan.com
Hal M Mersel    mark.mersel@bryancave.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Stephen R Wade    dp@srwadelaw.com

**By Mail:**

Hon. Vincent Zurzolo
US Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

Dare Law
Office of United States Trustee
725 S Figueroa Street
26th Floor
Los Angeles, CA 90017
**U.S. Trustee**

Franklin Pacific Finance, LLLP
429 Santa Monica Blvd., Suite 625
Santa Monica, CA 90401
**Debtor**

Bank Midwest, N,.A.
c/o H. Mark Mersel, Esq.
BRYAN CAVE LLP
3161 Michelson Drive, Suite 1500
Irvine, CA 92612
**Attorneys for Secured Creditor and Voting Party**

Christopher McDermott
Eric Testan
Stephanie Schiff
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
**Attorneys for Objecting Party – Wamu**

Ace C. Van Patten, Esq.
Pite Duncan, LLP
701 E. Bridger Suite 700
Las Vegas, NV  89101
**Attorneys for Objecting Party – Wamu**

Wyndelts & Gagnon
4800 N Scottsdale Rd
Ste 1400
Scottsdale AZ 85251
**Voting Party**